# EXHIBIT

# 1

MARINA SHOPPING CENTER

# S U B L E A S E

LESSOR: BENEFICIAL STANDARD PROPERTIES, INC.
Formerly known as BENIFID REALTY CO.

LESSEE: UNITED STATES POSTAL SERVICE

THIS LEASE IS EXECUTED IN QUINTUPLICATE

| | |
|---|---|
| Lessor (Lease File) | |
| Lessor (Secretary's File) | |
| Lessee | |
| Ground Lessor (County) | |
| Lender | |

# TABLE OF CONTENTS


| Article | | Page |
|---|---|---|
| 1. | Leased Premises | 1 |
| 2. | Construction of Additional Improvements by Lessor | 3 |
| 3. | Commencement Date | 4 |
| 4. | Lease Year | 4 |
| 5. | Term | 4 |
| 6. | Payment of Rent | 4 |
| 7. | Fixed Rent | 4 |
| 8. | Rental Increase | 5 |
| 9. | Alteration | 5 |
| 10. | Repairs and Maintenance | 5 |
| 11. | Utilities | 6 |
| 12. | Community Parking Area | 7 |
| 13. | Assignment and Subletting | 8 |
| 14. | Taxes and Assessments | 8 |
| 15. | Indemnity Clause and Insurance by Lessee | 9 |
| 16. | Insurance by Lessor | 10 |
| 17. | Default by Lessee | 11 |
| 18. | Default by Lessor | 13 |
| 19. | Waiver | 13 |
| 20. | Lessor's Right to have Independent Operator | 13 |
| 21. | Lessee's Liability for Advances by Lessor | 13 |
| 22. | Estoppel Certificates | 14 |
| 23. | Lessee's Liability for Attorney's Fees, Costs and Expenses | 14 |
| 24. | Effect of Lessor's Conveyance | 14 |
| 25. | Damage or Destruction | 15 |
| 26 | Lessor's and Lessee's Work if Premises Rebuilt | 15 |
| 27. | Excuse for Non-performance | 15 |
| 28. | Condemnation | 16 |

| Article | | Page |
|---|---|---|
| 29. | Signs, Advertising Awnings, Utility Lines, Aerials and Antennae . . . . . . . . . . . . . . | 16 |
| 30. | Warranty and Quiet Enjoyment . . . . . . . . . . | 17 |
| 31. | Lease Binding on Heirs, Successors and Assigns . | 17 |
| 32. | Hazardous Substances . . . . . . . . . . . . . . | 17 |
| 33. | Nuisance . . . . . . . . . . . . . . . . . . . . | 17 |
| 34. | Reservations . . . . . . . . . . . . . . . . . . | 18 |
| 35. | Time . . . . . . . . . . . . . . . . . . . . . . | 18 |
| 36. | Month to Month Tenancy . . . . . . . . . . . . . | 18 |
| 37. | Equal Opportunity Clause . . . . . . . . . . . . | 18 |
| 38. | Officials not to Benefit . . . . . . . . . . . . | 19 |
| 39. | Overtime . . . . . . . . . . . . . . . . . . . . | 20 |
| 40. | Health and Safety Standards . . . . . . . . . . | 21 |
| 41. | Subcontract Provisions . . . . . . . . . . . . . | 21 |
| 42. | Clean Air Act; Water Pollution Control Act . . . | 21 |
| 43. | Exemption of Lessor from Liability . . . . . . . | 22 |
| 44. | Compliance with Government Regulation . . . . . | 22 |
| 45. | Right of Entry . . . . . . . . . . . . . . . . . | 23 |
| 46. | County of Los Angeles Master Lessor . . . . . . | 23 |
| 47. | Subordination . . . . . . . . . . . . . . . . . | 23 |
| 48. | Notices . . . . . . . . . . . . . . . . . . . . | 24 |
| 49. | Option To Extend. . . . . . . . . . . . . . . . | 24 |
| 50. | Miscellaneous Provisions. . . . . . . . . . . . | 25 |
| | Exhibit A - Legal Description | |
| | Exhibit B - Plot Plan | |
| | Exhibit C-2 - Lease Standards | |
| | Exhibit D - Master Ground Lease Rent Requirements | |
| | Exhibit E - Preliminary Plans and Specifications | |

# SUBLEASE

THIS SUBLEASE, (hereinafter referred to as "Lease", made and entered into on this 27th day of February 19 81, by and between BENEFICIAL STANDARD PROPERTIES, INC., formerly known as BENFID REALTY COMPANY, a California corporation dba MARINA SHOPPING CENTER, (hereinafter referred to as "Lessor") and the UNITED STATES POSTAL SERVICE (hereinafter referred to as "Lessee").

THIS LEASE is subject to the approval of the Director of the Department of Small Craft Harbors of the County of Los Angeles and bound by each and all of the terms and conditions of that certain Master Lease entered into on August 13, 1964, by the COUNTY OF LOS ANGELES, as Lessor, with SANDPIPER BUILDERS, a California corporation, and MICHAEL SIMS, an individual, as Lessee, whose rights and interests thereunder have been duly acquired by the Lessor herein.

## WITNESSETH:

1. LEASED PREMISES

That for and in consideration of the payment of the rent and the performance of covenants and conditions hereinafter set forth and in the manner herein stated, Lessor hereby leases unto Lessee and Lessee hereby rents from Lessor that portion of the real property upon which a store is ~~to be~~ constructed ~~in accordance with Paragraph 2~~ and located in the County of Los Angeles, State of California, and in the Marina Shopping Center developed by Lessor on that portion of Marina del Rey bounded by Lincoln Boulevard, Fiji Way, Admiralty Way and Mindanao Way, designated by the Department of Small Craft Harbors of the County of Los Angeles as Parcel 50-R, and legally described on Exhibit "A" attached hereto and made a part hereof, as though fully set forth. The portions of the real property described above, which are hereby leased to Lessee are hereinafter referred to as the "leased premises", shown shaded and labeled on the plot plan attached hereto as Exhibit "B" and made a part hereof. The leased premises are a portion of the Marina Shopping Center which is hereinafter referred to as the "Center".

Initials VPM

Initials VPM

In addition to the use and occupation by the Lessee of the leased premises Lessee shall have the use in common with others entitled therewith of the common areas, service roads, loading facilities, sidewalks and customer car parking areas, shown and depicted on Exhibit "B", and other facilities as may be designated from time to time by the Lessor; subject, however, to the terms and conditions of this agreement and to all rules and regulations for the use thereof as prescribed from time to time by the Lessor.

Lessee shall use the demised premises for the purpose of conducting therein and therefrom

a station of the UNITED STATES POSTAL SERVICE

and for no other purpose or purposes whatsoever without the prior written consent of Lessor. Lessee shall not use said premises for, nor conduct therein, any manufacturing or wholesale business.

Initials VPM

nor manufacture thereon or use said premises to supply any other business or place of business of Lessee other than the goods or merchandise returned to or transferred to another store owned by or affiliated with Lessee.

Lessee shall abide by the following basic rules and restrictions as a condition of Lessee's use of the premises:

(1) Lessee shall at all times during the term of this Lease conduct and carry on Lessee's business in the leased premises, and shall keep the premises open for business and cause Lessee's business to be conducted therein during such business hours in which Postal facilities of the United States of America are required to be open for business.

(2) Lessee shall store all trash in metal containers, so as not to create or permit any health or fire hazard, in such location or locations as designated from time to time by Lessor; and Lessee shall, at its sole expense, arrange for the regular removal thereof;

(3) Lessee shall refrain from burning any papers, trash or garbage of any kind in or about the leased premises and/or the Shopping Center.

(4) Lessee shall refrain from using the plumbing facilities for any purpose other than that for which they were constructed or dispose of any damaging or injurious substances therein;

(5) Lessee shall refrain from using or loading the electrical facilities in a manner not contemplated when they were constructed and installed;

(6) Lessee shall refrain from using or permitting the use of any portion of the leased premises as living quarters, sleeping apartments or lodging rooms;

(7) Lessee shall refrain from keeping or permitting the keeping of any animals of any kind in, about or upon the leased premises except as accepted and processed in accordance with normal Postal Service operations and procedures;

(8) Lessee shall refrain from soliciting or carrying on similar activities, outside the leased premises, and/or keeping or displaying any merchandise or other objects on or otherwise obstructing any sidewalks, or walkways or areaways in the Shopping Center;

(9) Lessee shall refrain from distributing any handbills or other publications or other written or printed matter on or about the sidewalks or streets or passageways or any of the areaways in or surrounding the Shopping Center;



Initials

JPM

(10) Lessee shall not at any time during the term of this Lease without first obtaining Lessor's written consent

a. conduct or permit any fire, or bankruptcy or auction or "going-out-of-business" or "loss-of-lease" sales, or sales similar thereto on the demised premises; nor,

b. change the exterior of the building, or any part thereof, of which the demised premises are a part, including, but not limited to, the color of the exterior walls; nor,

c. park or operate or load, or unload any truck or other delivery vehicle on any part of the Shopping Center other than the portion thereof from time to time designated by Lessor; nor,

d. install in, on or about the demised premises any exterior lighting or plumbing, or facilities, or shades, or awnings, or amplifiers, or similar or other devices; or use in, on or about the demised premises or the Shopping Center such devices as flashing lights, search lights, or loudspeakers, or phonographs, or radio broadcast.

2. Construction of Additional Improvements by Lessor. Lessor shall, in accordance with the following procedure, construct or cause to be constructed, in either case at Lessee's sole cost and expense, improvements to the leased premises substantially as described in the preliminary drawing(s) and specifications attached hereto as Exhibit E and made a part hereof. Prior to commencing work, Lessor shall prepare or cause to be prepared, in either case at Lessee's sole cost and expense, complete working drawings and final plans and specifications for the construction of such improvements (based upon the said preliminary drawings) and specifications and shall furnish such working drawings and final plans and specifications together with an estimate of the total cost of such improvements to the Postal Service for its review and approval. Within fifteen (15) days after receipt of such working drawings and final plans and specifications and cost estimate the Postal Service shall approve the working drawings and final plans and specifications and cost estimate or deliver to Lessor its specific objections thereto, together with its proposed solution to each objection. If the Postal Service fails to either approve or disapprove the working drawings and final plans and specifications and cost estimate within the said fifteen (15) day period, the Postal Service shall be deemed to have approved the working drawings and final plans and specifications and cost estimate.

Initials VPM

If the parties are unable to resolve the Postal Service objections to the working drawings or final plans and specifications or cost estimate within fifteen (15) days after Lessor has received notice of such objection, either party thereafter can terminate this Lease immediately by giving notice to the other party. Upon such termination the Postal Service shall pay Lessor the full actual cost of preparing the working drawings and final plans and specifications and the cost estimate.



Initials VPM

After approval by the Postal Service, a copy of the working drawings and final plans and specifications and cost estimate shall be initialed and dated by the parties and Lessor shall, at Lessee's sole cost and expense, obtain approval of the working drawings and final plans and specifications and the necessary building permits from all appropriate government agencies. Lessor shall exercise due diligence in attempting to obtain such approvals and permits and shall have thirty (30) days from the date the working drawings and final plans and specifications and cost estimates are approved by the Postal Service in which to obtain such government approvals and permits. If such approval and permits are not obtained within the said thirty (30) day period, either party thereafter can terminate this Lease immediately by giving notice to the other party and upon such termination the Postal Service shall pay Lessor for the full actual cost incurred by Lessor in attempting to obtain such government approvals and permits as well as the full actual cost of preparing the working drawings and final plans and specifications and the cost estimate.

Lessor shall commence construction of such improvements as soon as practicable after the necessary government approvals and building permits have been obtained and shall construct the improvements to the leased premises substantially in accordance with the working drawings and final plans and specifications approved by the Postal Service. Lessor shall notify Lessee (i) when the improvements are approximately 50% completed and (ii) when the improvements have been substantially completed but prior to the issuance of a Certificate of Occupancy. Upon the notice provided for in (i) and (ii) above, Lessee shall have the right to enter the leased premises and inspect the improvements so long as such entry does not interfere with Lessor or Lessor's contractor.

Subject to material shortages, labor shortages, strikes, lockouts, boycotts, other labor disruptions, delays by contractors or subcontractors, governmental actions, war, riot, insurrection, rebellion, Act of God, fire, flood, storm, earthquake or any and all causes beyond the reasonable control of Lessor, the improvements shall be completed on or before the commencement date of the term of this Lease as stated in Section 3 hereof.

It is expressly understood and agreed by the parties hereto, that Lessor shall not be required to provide any construction in addition to that set forth in the approved working drawings and final plans and specifications, except as may be necessary in order to secure the necessary governmental permits, and that Lessee shall not delay or impede said construction by making changes or alterations therein.

Said improvements shall be deemed completed and ready for occupancy by Lessee for purposes of this Article when a Certificate of Occupancy has been issued by the County of Los Angeles, California and Lessor has given Lessee written notice of the issuance of such certificate.

Within thirty (30) days of the issuance of such certificate, Lessee shall pay Lessor for the full, actual cost of such improvements including but not limited to the cost of preparing the working drawings, the final plans and specifications, and the cost estimate, the actual costs incurred by Lessor in obtaining the government approvals and permits, and the payments made to contractors and subcontractors performing construction work in connection with the improvements.



Initials

VPM

3. COMMENCEMENT DATE

The term of this Lease shall commence on July 1, 1981 and end on June 30, 1986. Notwithstanding said commencement date, if for any reason Lessor cannot deliver possession of the premises to Lessee on said date, Lessor shall not be subject to any liability therefor, nor shall such failure affect the validity of this Lease or the obligations of Lessee hereunder or extend the term hereof, but in such case Lessee shall not be obligated to pay rent until possession of the premises is tendered to Lessee; provided, however, that if Lessor shall not have delivered possession of the premises within sixty (60) days from said commencement date, Lessee may, at Lessee's option, by notice in writing to Lessor within ten (10) days thereafter, cancel this Lease, in which event the parties shall be discharged from all obligations hereunder. If Lessee occupies the premises prior to said commencement date, such occupancy shall be subject to all provisions hereof, such occupancy shall not advance the termination date, and Lessee shall pay rent for such period at the initial monthly rates set forth below.

4. LEASE YEAR

The term "lease year" as used herein shall mean each twelve (12) month period beginning as of January 1st following the commencement of this lease as hereinbefore determined in Section 3, unless the date of commencement of this lease shall be on January 1st, in which event, the term "lease year" shall mean the twelve (12) month period beginning as of that January 1st.

5. TERM

The term of this lease shall be for a period of five ( 5 ) years following the commencement of the term as provided in Section 3 hereof.

6. PAYMENT OF RENT

Lessee hereby covenants and agrees to pay rent to Lessor, which said rent shall be as hereinafter provided. The payment of said rent shall begin on the last day of the month in which the commencement date as provided in Section 3 hereof occurs. In the event the commencement date occurs on a day other than the first day of a month, Lessee shall pay rent for the fractional month on a per diem basis (calculated on the basis of a thirty (30) day month) until the last day of the month following the month in which the commencement date occurs. On the last day of the month following the month in which the commencement date occurs and thereafter, the rent shall be paid in equal monthly installments on the last day of each and every month in arrears. Said rent shall be paid at the office of the Lessor, located at 3700 Wilshire Boulevard, Los Angeles, California 90010, or at such other place as may be designated in writing from time to time by Lessor.

7. FIXED RENT

Lessee shall pay to Lessor, without any prior demand and without any deduction or set off (except as may be required by Federal law) rent, commencing on the last day of the month on which the commencement date occurs as provided in Section 3 and 6 hereof and thereafter continuing on the last day of each month of the term of this Lease in the amount of Two Thousand Eight Hundred Twelve Dollars and Fifty Cents ($2,812.50) per month.



Should the term of this lease end on a day other than the last day of a calendar month, then upon the last day of the term, Lessee shall pay rent for the fractional month on a per diem basis (calculated on the basis of a 30 day month).

Initials VPM

Initials VPM

8. RENTAL INCREASE

The parties have been informed and are aware that Lessor is the sublessee of LINCOLN ROSE COMPANY, a California corporation which is assignee of SANDPIPER BUILDERS, a California corporation, and MICHAEL SIMS, who, prior to the assignment, were Lessee under that certain Master Ground Lease dated May 8, 1964, to SANDPIPER BUILDERS, a California corporation and MICHAEL SIMS from the COUNTY OF LOS ANGELES, and that this lease is subject to the terms and conditions of said Master Lease as amended among which terms and conditions are Section 14 - "Rent Negotiations to Meet Legal Requirements", Section 15 - "General Rent Renegotiation and Arbitration", and Section 16 - "Controlled Prices". Sections 14, 15 and 16 of the Master Lease are attached hereto as Exhibit "D".

Lessee herein covenants and agrees that in the event the Board of Supervisors of the County of Los Angeles increases rentals under the provisions of the said Master Lease, as amended, including the increases under Sections 14, 15 and 16, ~~said~~ Lessee agrees that the fixed rent shall be increased by Lessee's ~~will pay its~~ proportionate share of the rental increase, such proportion being based on the ratio of square foot area of the leased premises to the total square foot area of all leased premises in the Shopping Center.

Initials VPM

Initials VDM

9. ALTERATION

Lessee shall not make any change or alteration to the said leased premises, or any part thereof, without the consent of Lessor in writing and the Director, and the County Engineer of the County of Los Angeles, being first had and obtained, except emergency repairs, and any addition or alteration of said premises, except furniture, equipment or trade fixtures. Lessee shall not, by its act of ommission, permit any mechanic's or materialmen's liens to be filed or enforced against said premises.

10. REPAIRS AND MAINTENANCE

Lessee covenants throughout the term hereof at its sole cost and expense to keep the premises, inside and outside, all fixtures and equipment therein, and all signs of Lessee erected outside thereof, in good repair, order and condition, making all repairs thereto as may be required or necessary, all repairs to be of the same quality, design and class as the original work; including, but not limited to, the maintenance of exterior entrances, all glass and plate glass, moulding, partitions, doors, fixtures, equipment and appurtenances and all heating, lighting, air conditioning, plumbing, reasonable periodic painting as may be required, but the provisions of this section shall not require Lessee to make repairs to the structural parts of the building, unless the condition necessitating such repairs to structural parts shall have been caused by Lessee, or its employees, it being agreed, however, that all repairs to plate glass, store fronts and bulkheads are ordinary repairs and within the meaning of this section are not structural parts to the building.

Lessee shall have the benefit of any guaranty or warranty that Lessor is entitled to under the construction contract, and the Lessee shall have the right to call upon the contractor to make such adjustments, replacements or repairs which are required to be made by the contractor under such contract.



Initials VPM

If Lessee refuses or neglects to repair properly the premises as required in a reasonable time after written demand by the Lessor, the Lessor may make such repairs without liability to Lessee for any loss or damage that may accrue to Lessee's merchandise, fixtures, and/or other property, or to the loss of business occasioned by reason thereof; and further, upon completion of such repairs, Lessee shall pay Lessor's incurred costs occasioned by such repairs upon presentation of the bill so incurred. It is further agreed and understood that said billing of costs so incurred shall include interest from the date of completion of the repairs by the Lessor at the rate then fixed by California law when contracts are silent as to the rate of interest to be paid under contracts providing for the payment of interest.

Lessor shall keep the foundations, exterior walls, canopy, roof, downspouts and gutters in good order, condition and repair and if necessary, or required by governmental authority, make modifications or replacements thereof, except that Lessee shall make all such repairs, modifications or replacements which become necessary or desirable by the reason of the negligence of Lessee, its agents, servants or employees, unless and to the extent the damage or loss resulting from such negligence is covered under any policy of insurance and such loss or damage is paid to or on the behalf of Lessor, pursuant to such insurance coverage.

Lessee shall keep the leased premises free and clear of mechanics', materialmen's and other liens, encumbrances and claims created by Lessee and shall at all times hold the Lessor harmless from and against all liens, encumbrances, claims, damages and expenses, including reasonable attorney's fees, caused or contributed to or by any act or omission of Lessee or its employees.

Lessee agrees not to commit any waste upon the leased premises during the term and to quit and surrender the leased premises to the Lessor at the expiration or other termination of the lease in the same condition as when received, reasonable wear and tear, and changes or alterations authorized by the Lessor excepted.

11. <u>UTILITIES</u>

Lessee shall pay when due all charges for heating, lighting, water, power, sewage disposal, telephone services, garbage and trash collections and all other utilities used by it on the leased premises during the term of the lease. All utilities used for the community areas such as electricity for lighting shall be on separate meters and included in the maintenance cost under article 12 hereof.

Title to all utility lines, switchboards, transformer vaults and all other service facilities constructed or installed by Lessee upon the leased premises shall vest in County upon construction or installation.



Initials

JPM

12. <u>COMMUNITY PARKING AREA</u>

Lessor shall maintain at all times during the term of this lease a parking area on that portion of the premises on which the Shopping Center is erected, designated as "Community Parking Area" on the plot plan hereto attached and marked Exhibit "B". Said parking area shall be for the joint use of all lessees of the Lessor in the Shopping Center and for the use of the customers, employees, visitors and invitees of said lessees for driveway, walkway or parking purposes.

Lessor shall designate an area in said parking area for the parking of employees' cars. Employees of the Lessee shall be permitted to park their cars only in the area designated for employee parking.

Lessee agrees that trailers and trucks shall pick up and deliver mail and parcels to the premises only through the access roads at the rear of the leased premises and all trucks and trailers will be expeditiously loaded and unloaded and not permitted to park in the rear of the premises except for such period of time as shall reasonably be necessary for loading and unloading.

Lessor shall keep said community parking area, any decor and landscaping as a part thereof in a neat, clean and orderly condition. The Lessor shall at all times, have the right and privilege of making rules and regulations for the orderly use of said area and of determining the nature and extent of the common area except that it must be sufficient at all times to provide unobstructed and adequate automobile parking facilities for Lessee, Lessor, other tenants, occupants, business invitees and eligible users.

Lessee agrees that the entire cost of repairing, maintaining and operating all areas and facilities outside the leased premises which are provided and designated by Lessor for the general use and convenience of the tenants of the Shopping Center, including but not limited to the automobile parking area, the mall area, streets, sidewalks, service drives (herein described as "Community Parking Area"), shall be apportioned among all tenants of the Shopping Center computed on the ratio that the [ground floor area] ~~square feet of building area~~ occupied by each tenant bears to the total ~~gross square footage~~ of [all buildings constituting a part] ~~the building area~~ of the Shopping Center. Lessee agrees to pay its proportionate share of such cost, as estimated by Lessor,* [with each monthly installment of rent,] who shall be charged with the collection, custody and disbursement of the funds so obtained.

Initials VPM

Initials VPM

Such cost shall include expenditures for labor, supplies and all other expenses incurred in connection with the common area, included but not limited to repairing, restriping, cleaning, policing, insurance, general, special and possessory interest taxes and assessments, lighting, landscaping, decorating, and removing trash, garbage and waste therefrom, so that said community parking area shall be maintained during the term of this lease in a condition substantially similar to its present construction. Statements for these expenses, together with appropriate exhibits showing Lessor's computation of Lessee's prorata share, shall be submitted monthly to Lessee and paid with each succeeding installment of rental.

Initials VPM



Initials VPM

*subject to an adjustment at the end of each calendar year based upon a comparison of sums theretofore paid by Lessee and Lessee's actual pro rata share of such costs

Initials VPM

13. ASSIGNMENT AND SUBLETTING

Lessee agrees not to sublet the premises or any part thereof, not to transfer, assign, hypothecate or encumber this lease or the leasehold estate created hereby or any part thereof, or license any other person to use the premises or any part thereof without first obtaining the written consent of Lessor [which consent shall not be unreasonably withheld,] and any assignment, hypothecation or sublease of the premises or any part thereof, either voluntary or involuntary whether by operation of law or otherwise without the written consent of Lessor shall be voidable at the option of Lessor. Lessee, however, without such consent may permit as a subordinate part of the operation of its business at the premises the operation of such concessions and license departments as it may from time to time permit in its other locations. Such permission as well as any assignment or subletting is subject to obtaining the necessary approval of the Director of the Department of Small Craft Harbors of the County of Los Angeles as required by the master lease.

Initials: VPM

14. TAXES AND ASSESSMENTS

Lessor shall pay all general, special and possessory interest taxes and assessments levied against the land, buildings and other improvements making up the Shopping Center, provided however, that Lessee shall pay Lessor for its share of the payment of all such general, special and possessory interest taxes and assessments.* Lessee's share of such costs shall be that fractional part of the total of such costs as the total ground floor areaof the premises herein leased bears to the total ground floor area of all buildings constituting a part of this Center which are not separately assessed. ~~Reimbursement by Lessee to Lessor for its share of such taxes and assessments shall be made on the basis of the tax year commencing with the taking of occupancy and ending the following June 30th. The tax year shall be based upon the period from July 1st to the following June 30th.~~ One-twelfth (1/12th) of the amount [as estimated by Lessor**] shall be payable on the [last] ~~first~~ day of each month and added to the monthly rental. Lessee shall be required to pay only such pro rata portion of such taxes and assessment up to the end of the term of this lease.

*or 111.11% thereof in the event the County of Los Angeles determines that such reimbursements constitute "gross receipts" of Lessor within the meaning of Lessor's master lease with the County.

Initials: VPM

In the event the leased premises are separately assessed, Lessee shall make all such tax payments direct to the proper tax collecting authority prior to their delinquency. If Lessee shall fail to make such payment, the Lessor may, at its option, pay the same and in such event, the Lessee shall, on demand, pay to the Lessor the amount so paid by Lessor, together with interest and penalties, all such payments shall be deemed to be charged in the nature of rent.

Initials: VPM

Lessee shall pay all taxes assessed for or during the term hereof against and on any or all property and improvements (including personal property, trade or business fixtures) in possession of Lessee, or installed by or for Lessee upon or about the demised premises. Said obligations are assumed by Lessee whether such assessment is made against Lessee in the first instance or is made against Lessor as the owner of said Shopping Center, either separately or as a part of the assessment of the Shopping Center.

*or 111.11% thereof in the event the County of Los Angeles determines that such reimbursements constitute "gross receipts" of Lessor within the meaning of Lessor's master lease with the County.

In addition thereto, Lessee shall pay to Lessor [monthly, as estimated by Lessor,**] its pro rata share of all such taxes or assessments levied on the parking and common area including the improvements thereon,* which shall be determined as the percentage which the ground floor area of ~~the building on~~ the demised premises is to the total ground floor area of all buildings in the Center.

Initials: VPM

Initials: VPM

3

** subject to an adjustment at the end of each calendar year based upon a comparison of sums [8] theretofore paid by Lessee and Lessee's share of such taxes and assessments.

It is agreed between the parties hereto that Lessee shall not be required to pay or discharged any of the following obligations or liabilities ~~should the same become a lien on the premises of which the demised premises are a part;~~ ~~namely~~, (a) any corporation franchise tax or corporation license fee which may be levied upon or against Lessor or any corporate assignee of the Lessor; (b) any inheritance or estate taxes or tax upon inheritance or the right of succession which may be levied upon or against any estate or interest of the Lessor or its successors or assigns; (c) any tax which may be levied by the United States or the State of California upon or against the income or profits for capital stock of any assignee of the Lessor; and (d) any taxes that may be levied upon or against any personal property of the Lessor or its successors or assigns not located or installed upon or appurtenant to demised premises.

the demised premises are not separately assessed,

Initials

In the event ~~no such allocation is feasible~~, Lessee ~~then~~ agrees to ~~reimburse~~ pay Lessor a prorata share of the taxes and assessments paid by Lessor in such lease year on the entire Center, and excluding therefrom any increase in such taxes or assessments that is the result of improvements in or additions to the Shopping Center, made either by Lessor or any other Lessee or Lessor after commencement of the lease term (other than those made by or directly attributable to Lessee). In such case Lessee's prorata share shall be computed by using the ratio that ground floor area of ~~the building of~~ the leased premises bears to the total ground floor area of all buildings in the Center.

Initials

15. INDEMNITY CLAUSE AND INSURANCE BY LESSEE

To the extent permitted by Federal law, Lessee shall at all times relieve, indemnify, protect and save harmless Lessor and County and its Boards, officers, agents, and employees from any and all claims and liability, including expenses incurred in defending against the same, for the death of or injury to person or damage to property, including property owned or controlled by or in the possession of Lessor or County, and any of its officers, agents, or employees, that may in whole or in part arise from or be caused by (a) the operation, maintenance, use or occupation of the herein leased premises by Lessee, (b) the acts, omission or negligence of Lessee, its agents, officers, employees or permitees, or (c) the failure of Lessee to comply with any provision of this lease or any applicable law, ordinance, rule or regulation; the obligation of Lessee to so relieve, indemnify, protect and save harmless Lessor and County, and each of its Boards, officers, and employees, shall continue during any periods of occupancy or of holding over by Lessee, its agents, officers, employees or permitees, beyond the expiration or other termination of this lease.

Initials

Initial

Lessee shall maintain in full force and effect during the term of this lease, comprehensive general liability insurance with bodily injury and property damage liability limits of not less than ~~One Hundred Thousand Dollars ($100,000.00) per person and~~ Five Hundred Thousand Dollars ($500,000.00) per occurrence for death or bodily injury and One Hundred Thousand Dollars ($100,000.00) per occurrence for property damage; and Lessee agrees that Lessor and County, its Board of Supervisors and members thereof, and County's and Board's officers, agents and employees, shall be named as additional insured under such liability insurance policy or policies. A duplicate policy evidencing such insurance coverage shall be filed with Director within (10) ten days of the execution of this lease by Lessor and prior to any entry upon the premises herein leased, and said policy shall provide that such insurance coverage shall not be cancelled or reduced without at least thirty (30) days prior written notice to Lessor and Director. At least thirty (30) days prior to the expiration of any such policy, a policy showing that such insurance coverage has been renewed or extended shall be filed with Lessor and Director.

Initials



Initials

The amounts of casualty insurance in this Section required shall be subject to renegotiation at the same time and in the same manner as the amounts of rent hereunder, under the Master Lease.

Lessee shall at its sole expense maintain fire and extended coverage insurance, including vandalism, malicious mischief and other perils, with coverage on a replacement cost basis upon its fixtures and equipment and upon the leasehold improvements described in Section 2 hereof and any alterations or additions thereto.

Lessee may, at its option, bring its obligation to insure under this Article within the coverage of any so-called self-insured policy or policies of insurance maintained by Lessee which it may now or hereafter carry, provided, however, that the interest of Lessor and the County of Los Angeles shall thereupon be as fully protected as they would be otherwise if this option to Lessee to use self-insured policies of insurance were not permitted. Lessee shall indemnify and hold Lessor harmless from any loss, liability, costs, damages and expenses, including reasonable attorney's fees, including without limitation reasonable attorney's fees to enforce this indemnity, resulting from any claim or demand or action or cause of action by the County of Los Angeles as a result of, arising out of or related in any manner to, the self insurance provision of this Article. All policies of insurance shall be issued in the name of Lessee and naming the Lessor and the County of Los Angeles as an additional insured, and for the mutual and joint benefit and protection of the parties and such policies of insurance or copies thereof shall be delivered to the Lessor and County of Los Angeles, and as often as any such policy or policies shall expire or terminate, renewal or additional policies shall be procured and maintained by Lessee in like manner and to like extent. All such policies shall contain a clause or endorsement to the effect that they may not be terminated or materially amended except after thirty (30) days written notice thereof to Lessor or to the County of Los Angeles.

16. INSURANCE BY LESSOR

Lessor shall procure at its own expense during the terms of this lease, fire, windstorm and extended coverage insurance on the buildings and improvements composing the Shopping Center; provided, however, Lessee shall ~~reimburse Lessor for~~ its share of the actual ~~net~~ cost ~~and expense~~ to Lessor of such insurance for that lease year.* Lessee's share of such cost shall be that fractional part of the total of such cost as the total ground floor area of the premises herein leased bears to the total ground floor area of all buildings and structures constituting a part of this Shopping Center.

Initials VPM

*or 111.11% thereof in the event the County of Los Angeles determines that such reimbursements constitute "gross receipts" of Lessor within the meaning of Lessor's master lease with the County.

Initials VPM

pay, based on Lessor's estimate,** with each monthly installment of rent.

Initials VPM

Lessor shall make not a claim for recovery against Lessee and expressly waives any right of recovery against Lessee for damage to or loss of the leased premises or improvements thereon which damage or loss may arise by fire or any other peril covered by any policy or insurance containing a waiver of subrogation right against the Lessee in which said policy the Lessor is or may be the assured and when said loss is caused by or results from any acts of carelessness or negligence of the Lessee, its officers, agents, employees or other persons under its control.

Lessor further covenants and agrees to apply to its insurance carriers for waiver of subrogation against Lessee, its agents and employees and to obtain same if Lessor's insurers will issue such waiver without cost; provided however, that if Lessor's insurers will not issue such waiver without cost but will issue same for a charge and the Lessee shall elect to pay such charge, Lessor will obtain such waiver and charge the additional cost thereof to Lessee.



**subject to an adjustment at the end of each calendar year based upon a comparison of sums theretofore paid by Lessee and Lessee's actual share of such costs.

Initials VPM

17. DEFAULT BY LESSEE

A. The occurrence of any of the following shall constitute a material default and breach of this Lease by Lessee whether caused, omitted or performed by Lessee or any assignee, sublessee, licensee or concessionaire of Lessee:

(i) Any failure by Lessee to pay the rent or to make any other payment required to be made by Lessee hereunder (whether payable directly to Lessor or to a third party) where, upon the initial occurrence of such failure, such failure continues for ten (10) days after written notice thereof by Lessor to Lessee, and, upon any subsequent failure, such failure continues for three (3) days after written notice thereof by Lessor to Lessee.

(ii) The abandonment or vacation of the leased premises by Lessee (absence from the leased premises for ten (10) consecutive days or more shall conclusively be deemed an abandonment or vacation of the leased premises).

(iii) A failure by Lessee to observe and perform any other term, covenant, condition or provision of this Lease to be observed or performed by Lessee, where such failure continues for ten (10) days after written notice thereof by Lessor to Lessee; provided, however, that if the nature of such default is such that the same cannot reasonably be cured within such ten (10) day period, Lessee shall not be deemed to be in default, if Lessee shall, within such period, commence such cure and thereafter diligently prosecute the same to completion. If the leased premises require emergency repairs, which Lessee is then unable or unwilling to make, Lessor may, without notice, elect to make such repairs for the account and at the sole cost and expense of Lessee. Failure of Lessee (or any of Lessee's sublessees, licensees, assignees, concessionaires, independent departments, or any other person or entity doing business within the leased premises) to keep, maintain, or retain any records required of it (them) for purposes of computing any rental payment hereunder shall, in all cases, at Lessor's option, constitute a material breach of this Lease. Notwithstanding the provisions of this paragraph 17 of the Lease, if Lessee is required to comply with any governmental regulation or order within a period less than that to which Lessee would otherwise be entitled to notice hereunder, Lessee shall not be entitled to notice from Lessor beyond the period within which such compliance may be required by such regulation or order.

B. In the event of any such default by Lessee, then, in addition to any other remedy(ies) available to Lessor at law or equity, Lessor shall have the immediate option to terminate this Lease and all rights of Lessee hereunder by giving written notice of such intention to terminate in the manner specified in Paragraph 49 of this Lease. In the event that Lessor shall elect to so terminate this Lease, then Lessor may recover from Lessee:

(i) The worth at the time of award of any unpaid rent which had been earned at the time of such termination; plus

(ii) The worth at the time of award of the amount by which the unpaid rent, which would have been earned after termination until the time of award, exceeds the amount of such rental loss Lessee proves could have been reasonably avoided; plus



Initials

VPM

(iii) The worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that Lessee proves could be reasonably avoided; plus

(iv) Any other amount necessary to compensate Lessor for all the detriment proximately caused by Lessee's failure to perform its obligations under this Lease or which in the ordinary course of events would be likely to result therefrom.

As used in subparagraphs (i) and (ii) above, the "worth at the time of award" is computed by allowing interest at the rate of ten percent (10%) per annum. As used in subparagraph (iii) above, the "worth at the time of award" is computed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award plus one percent (1%).

C. In the event of any abandonment by Lessee, Lessor shall also have the right, but not the obligation, with or without terminating this Lease, to re-enter the leased premises without terminating Lessee's right to possession and remove any persons and/or property from the leased premises then present or occupying them; any such property may be removed and stored in a public wareho se or elsewhere at the sole risk of, and at the sole cost and expense of, and for the account of, Lessee.

D. Even if Lessee has breached this Lease and abandoned the leased premises, this Lease shall continue in effect for so long as the Lessor shall not terminate this Lease as provided herein or terminate Lessee's right to possession, and Lessor may, during the entire time of any such period of default or abandonment, enforce all of its rights and remedies under this Lease including, without limitation, the right to recover all rent and other charges provided for herein as they become due.

E. No re-entry or taking possession of the leased premises by Lessor pursuant to subparagraph E of this Paragraph 17, nor the appointment of a receiver upon the initiation of Lessor to protect Lessor's interest under this Lease, shall be construed as an election by Lessor to terminate the Lease, nor shall it terminate Lessor's right to possession of the leased premises, unless a written notice of such intention be given to Lessee or unless the termination thereof be decreed by a court of competent jurisdiction. In all other instances, any re-entry by Lessor or taking possession of the leased premises by Lessor shall be deemed to be acts of maintenance or preservation to or for the leased premises by Lessor or in an effort to relet the leased premises. Notwithstanding the foregoing, however, Lessor may, and hereby reserves the right to terminate this Lease and Lessee's right to possession of the leased premises at any time during any period of any breach or abandonment by Lessee.



Initial: VAM

F. Any sum accruing to Lessor under the terms and provisions of this Lease which shall not be paid when due shall bear interest at the maximum lawful rate from the date the same becomes due and payable by the terms and provisions hereof until paid, unless otherwise specifically provided in this Lease. Each of Lessor's rights and remedies found herein shall be cumulative and not exclusive and shall be in addition to any and all other rights of Lessor.

18. DEFAULT BY LESSOR

Lessor shall in no event be charged with default in the performance of any of its obligations hereunder unless and until Lessor shall have failed to perform such obligations within thirty (30) days (or such additional time as is reasonably required to correct any such defaults) after notice by Lessee to Lessor properly specifying wherein Lessor has failed to perform any such obligations.

19. WAIVER

One or more waivers of any covenants, terms or conditions of this lease by either party shall not be construed by the other party as a waiver of a subsequent breach of the same covenant, term or condition. The consent or approval of either party to or of any act by the other party of a nature requiring consent or approval shall not be deemed to waive or render unnecessary consent to or approval of any subsequent similar act.

20. LESSOR'S RIGHT TO HAVE INDEPENDENT OPERATOR

At any time hereafter, if Lessor determines, in its sole judgment, that the best interest of the Shopping Center will be served by having the parking areas operated and maintained by a person, firm, or corporation other than Lessor, Lessor shall have the right to select and license or lease to any person, firm, or corporation the operation and maintenance of the parking areas on such terms and conditions and for such time as Lessor shall, in its sole judgment, deem reasonable and proper. Any such lease, license agreement, or contract shall require the lessee, licensee, or operator to be bound by and to perform all the obligations of Lessor relative to the maintenance and operation of the parking areas and shall make the lessee, licensee, or operator responsible to Lessee and all other tenants in the Shopping Center.

21. LESSEE'S LIABILITY FOR ADVANCES BY LESSOR *

In the event of Lessee's breach of any covenant in this lease, Lessor may at any time, without notice, cure such breach for the account and at the expense of Lessee. If Lessor at any time, by reason of such breach, is compelled to incur any expense, including reasonable attorney's fees, in instituting, prosecuting, or defending any actions or proceedings to enforce Lessor's rights under this lease or otherwise, the sum or sums so paid by Lessor, with all interest, costs, and damages shall be deemed to be additional rent under this lease and shall be due from Lessee to Lessor on the first day of the month following the incurring of such expenses.

Initials VPM



* To the extent Federal law may permit, the following provision of this Article shall apply.

Initials VPM

22. ESTOPPEL CERTIFICATES

Lessee shall, at any time, and from time to time upon not less than fifteen (15) days' prior request by Lessor, execute, acknowledge, and deliver to Lessor a statement in writing certifying that this lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and, if so, the dates to which the fixed rent and any other charges have been paid in advance, it being intended that any such statement delivered pursuant to this subparagraph may be relied upon by any prospective purchaser or encumbrancer (including assignees) of the premises.

23. ATTORNEY'S FEES, COSTS AND EXPENSES*

In the event either party brings or commences legal proceedings to enforce any of the terms of this lease, the successful party in such action shall then be entitled to receive and shall receive from the other of said parties in every such action commenced a reasonable sum for attorney's fees and costs to be fixed by the court in the same action.

Should either Lessor or Lessee be, without fault on its part, made a party to any litigation instituted by or against the other by reason of this lease, then said party so named as a party to said litigation shall be entitled to receive from the other party all costs, expenses and reasonable attorney's fees incurred in, or in connection with such litigation.

In the event Lessee is in default in the payment of rent and/or other charges on more than one separate occassion during any lease year, and Lessor is required to give notice to Lessee of each such default(s), and Lessee thereafter pays the rent and/or other charges due in response to such notice(s), Lessee shall pay to Lessor, as additional rent, the sum of $125.00 for the second and each succeeding notice given in such lease year to reimburse Lessor for its attorneys' fees and costs incurred in the preparation and service of the second and succeeding notice(s). Such sum shall be payable with the next succeeding installment of rent due after Lessee has brought the rent and other charges current in response to such notice(s).

24. EFFECT OF LESSOR'S CONVEYANCE

If during the term of this lease, Lessor shall sell its interest in the Shopping Center, or the premises, then from and after the effective date of the sale, Lessor shall be released and discharged from any and all obligations and responsibilities under this lease except those already accrued.



Initials VPM

* To the extent Federal law may permit, the following provision of this Article shall apply.

Initials VPM

25. DAMAGE OR DESTRUCTION

Lessor's obligation to repair or rebuild.

(a) Lessee's Premises. In case the premises shall be partially or totally destroyed by fire or other casualty insurable under full standard extended risk insurance so as to become partially or totally untenantable, the same shall be repaired or rebuilt as speedily as possible at the expense of Lessor, unless Lessor shall elect not to repair or rebuild as provided in subparagraph (b) and, should there be a substantial interference with Lessee's business, a just and proportionate part of the fixed rent shall be abated until the premises are repaired or rebuilt.

(b) If (1) more than 33 1/3% of the demised premises shall be destroyed or so damaged by fire or other casualty insurable under full standard extended risk insurance as to become wholly untenantable, or (2) the premises shall be partially or totally destroyed by a cause or casualty other than those covered by fire and extended coverage risk insurance, then in either event, Lessor may, if so elects, rebuild or put said building in good condition and fit or occupancy within a reasonable time after such destruction or damage, or it may give notice terminating this lease as of a date not later than 30 days after any such damage or destruction. If Lessor elects to repair or rebuild the building, it shall within fifteen (15) days after such damage or destruction, give Lessee notice of its intention to repair or rebuild and then shall proceed with reasonable speed to make the repairs or to rebuild. Unless Lessor elects to terminate this lease, the lease shall remain in full force and effect and the parties waive the provisions of any law to the contrary.

26. LESSOR'S AND LESSEE'S WORK IF PREMISES REBUILT

If Lessor should elect to be obligated to repair or rebuild because of any damage or destruction, Lessor's obligation shall be limited to the basic building, store front, interior work as covered in Exhibit C, and that part of Lessee's work shall fully repair or replace all exterior signs, trade fixtures, equipment, display cases, and other installations originally installed by Lessee at its expense.

27. EXCUSE FOR NONPERFORMANCE

Either party hereto shall be excused from performing any of or all of its obligations hereunder with respect to any repair and construction work required under the terms of this lease for so long as the performance of any such



Initials

VPM

obligations is prevented or delayed by act of God, fire, floods, explosion, the elements of war, invasion, insurrection, riot, mob violence, sabotage, inability to procure labor, equipment, facilities, materials or supplies in the open market, failure of transportation, strikes, lockouts, action by labor unions, or laws or order of governmental agencies, or any other cause whether similar or dissimilar to the foregoing which is not within the reasonable control of such party.

28. CONDEMNATION

If title to all of the premises is taken for any public or quasi-public use under any statute, or by right of eminent domain, or by private purchase in lieu of eminent domain, or if title of so much of the premises is so taken that a reasonable amount of reconstruction of the premises will not result in the premises' being a practical improvement and reasonably suitable for Lessee's continued occupancy for the uses and purposes for which the premises are leased, then, in either event, this lease shall terminate on the date that possession of the premises, or part of the premises, is taken.

If any part of the premises shall be so taken and the remaining part of the premises (after reconstruction of the then existing building in which the premises are located) is reasonably suitable for Lessee's continued occupancy for the purposes and uses for which the premises are leased, this lease shall, as to the part so taken, terminate as of the date that possession of such part is taken, and the fixed minimum rent shall be reduced in the same proportion that the floor area of the portion of the premises so taken (less any additions to premises by reconstruction) bears to the original floor area of the premises.

No compensation awarded or paid upon a total or partial taking of the premises shall belong to the Lessee; provided, however, that Lessee shall be entitled to any award made to Lessee for loss of business or depreciation to and cost of removal of stock and fixtures.

If twenty (20) percent or more of the total of the parking area in the Shopping Center is taken for any public or quasi-public use under any statute or by right of eminent domain or by private purchase in lieu of eminent domain, either with or independent of the taking of any portion of the premises leased to Lessee. If Lessor within one year after such taking does not substitute for the parking area so condemned an equal number of parking spaces in a location reasonably accessible to the premises leased to Lessee, then Lessee, upon ten (10) days' notice to Lessor, shall have the option to terminate this lease, and if before the effective date set forth in that notice substitute parking spaces shall not have been provided, this lease shall terminate, and rent shall be adjusted to the date of such termination.

29. SIGNS, ADVERTISING AWNINGS, UTILITY LINES, AERIALS AND ANTENNAE

After approval by the Director and Lessor, Lessee shall have the right to install, maintain, and display upon the leased premises such inside and outside signs that Lessee may deem necessary or desirable for carrying on its business. Such signs shall be the property of the Lessee and



Initials
VPM

may be removed by it at any time during the term of this lease. No signs or awnings shall be erected or maintained upon the leased premises (other than inside any buildings constructed by Lessee or Sublessee), except such signs as shown of the business or profession of Lessee or Sublessee. All such signs must be approved by the Director of Small Craft Harbors and Lessor. All utility lines shall be underground. Aerials and antennae shall conform to the minimum standards of construction and architectural treatment prescribed by the County of Los Angeles.

30. WARRANTY AND QUIET ENJOYMENT

The Lessor covenants and warrants that ~~prior to the commencement of construction of the building and improvements to be erected for Lessee's use, That Lessor shall have the full right and authority to enter into this lease for the full term set forth herein, and~~ Lessee upon performance of its obligations hereunder shall have the quiet and uninterrupted possession of said premises throughout the term of this lease.

Initials VPM

31. LEASE BINDING ON HEIRS, SUCCESSORS AND ASSIGNS

This lease shall be binding upon and inure to the benefit of the parties hereto; their heirs, legal representatives, successors and assigns.

32. HAZARDOUS SUBSTANCES

Except as accepted and processed in accordance with normal Postal Service operations and procedures, no goods, merchandise, or material shall be kept, stored or sold in or on said leased premises which are in any way explosive or hazardous; and no offensive or dangerous trade, business or occupation shall be carried on therein or thereon, and nothing shall be done on said premises, which will cause an increase in the rate of or cause a suspension or cancellation of the insurance upon said or other premises and the improvements thereon.

No machinery or apparatus shall be used or operated on said leased premises which will in any way injure said premises, or improvements thereon, or adjacent or other premises, or improvements thereon; provided, however, that nothing in this section contained shall preclude Lessee from bringing, keeping or using on or about said premises such materials, supplies, equipment and machinery as are appropriate or customary in carrying on its said business, or from carrying on its business in all usual respects.

Open flame welding or burning, gasoline or other fuel storage is expressly prohibited without prior written consent of the Director or Lessor.

33. NUISANCE

Lessee shall not permit the property hereby leased to be used for any unlawful purpose and shall not perform, permit or suffer any act of omission or commission upon or about said property or any buildings or construction thereon which would result in a nuisance or a violation of the laws and ordinances of the United States, State of California, or the County of Los Angeles, as the same may be now or hereafter in force and effect.



Initials VPM

34. RESERVATIONS

Lessee expressly agrees that this lease and all rights hereunder shall be subject to all prior exceptions, reservations, leases, licenses, easements, and rights-of-way of record now existing in, to, over or affecting the leased premises for any purpose whatsoever.

Lessee expressly agrees that this lease and all rights hereunder shall be subject to conditions, covenants, restrictions, rights-of-way and easements as shown on Los Angeles County Assessor's Map No. 88, recorded in Book 1, Pages 53 to 70 inclusive of Assessor's Maps in the office of the Recorder of the County of Los Angeles, including but not limited to the right of the County of Los Angeles to install, construct, maintain, service and operate sanitary sewers, fire access roads, storm drains, drainage facilities, electric power lines, telephone lines and access and harbor utility easements, together with the right of the County of convey such easements and transfer such rights to other.

35. TIME

Time is of the essence of this lease and applies to all times, restrictions, conditions and limitations contained herein; this lease shall bind Lessee and its Sublessees assigns, successors, heirs, administrators or legal representatives, as the case may be.

36. MONTH TO MONTH TENANCY

If Lessee holds over after the expiration of this lease for any cause, such holding over shall be deemed to be a tenancy from month to month only, at the same rental per month and upon the same terms, conditions, restrictions and provisions as herein contained.

Such holding over shall include any time employed by Lessee to remove machines, applicandes and other equipment during the thirty (30) day period hereinafter provided for such removal.

37. EQUAL OPPORTUNITY CLAUSE

(The following clause is applicable unless this contract is exempt under the rules, regulations, and relevant orders of the Secretary of Labor (41 CFR, ch. 60).)

During the performance of this contract, the Lessor agrees as follows:

(a) The Lessor will not discriminate against any employee or applicant for employment because of race, color, religion or national origin. The Lessor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex or national origin. Such action shall include, but not be limited to, the following: Employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training including apprenticeship. The Lessor agrees to post in conspicious places, available to employees and applicants for employment, notices to be provided by the Contracting Officer setting forth the provisions of this Equal Opportunity clause.



Initials
VPM

(b) The Lessor will, in all solicitations or advertisements for employees placed by or on behalf of the Lessor state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex or national origin.

(c) The Lessor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the agency Contracting Officer, advising the labor union or workers' representative of the Lessor's commitments under this Equal Opportunity clause, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(d) The Lessor will comply with all provisions of Executive Order No. 11246 of September 24, 1965, and of the rules, regulations, and relevant order of the Secretary of Labor.

(e) The Lessor will furnish all information and reports required by Executive Order No. 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(f) In the event of the Lessor's noncompliance with the Equal Opportunity clause of this contract or with any of the said rules, regulations, or orders, this contract may be canceled, terminated, or suspended, in whole or in part, and the Lessor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order No. 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order No. 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

(g) The Lessor will include the provisions of paragraphs (a) through (g) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary or Labor issued pursuant to section 204 of Executive Order No. 11246 of September 24, 1965, so that such provisions will be binding upon each subcontractor or vendor. The Lessor will take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing such provisions, including sanctions for noncompliance: Provided, however, That in the event the Lessor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the contracting agency, the Lessor may request the United States to enter into such litigation to protect the interests of the United States.

38. OFFICIALS NOT TO BENEFIT

No member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this agreement or to any benefit to arise therefrom. Nothing, however, herein contained shall be construed to extend to any incorporated company, if the agreement be for the general benefit of such corporation or company.



Initials

V.RM

39. OVERTIME

(a) The Lessor shall not require or permit any laborer or mechanic in any workweek in which he is employed on any work under this Agreement to work in excess of 8 hours in any calendar day or in excess of 40 hours in such workweek on work subject to the provisions of the Contract Work Hours and Safety Standards Act (40 U.S.C. 327-333) unless such laborer or mechanic receives compensation at a rate not less than one and one-half times his basic rate of pay for all such hours worked in excess of 8 hours in any calendar day or in excess of 40 hours in such workweek, whichever is the greater number of overtime hours. The "basic rate of pay", as used in this clause, shall be the amount paid per hour, exclusive of the Lessor's contribution or cost for fringe benefits and any cash payment made in lieu of providing fringe benefits, or the basic hourly rate contained in the wage determination (if applicable), whichever is greater.



Initials

VPM

(b) In the event of any violation of the provisions of paragraph (a), the Lessor shall be liable to any affected employee for any amounts due, and to the Postal Service for liquidated damages. Such liquidated damages shall be computed with respect to each individual laborer or mechanic employed in violation of the provisions of paragraph (a) in the sum of $10 for each calendar day on which employee was required or permitted to be employed on such work in excess of 8 hours or in excess of the standard workweek of 40 hours without payment of the overtime wages required by paragraph (a).

(c) The Contracting Officer may withhold from the Lessor, from any moneys payable under the lease, such sums as may administratively be determined to be necessary to satisfy any liabilities of the Lessor for unpaid wages and liquidated damages.

40. <u>HEALTH AND SAFETY STANDARDS</u>

(a) To the extent this agreement is for construction, alteration, and/or repair, including painting and decorating, the Lessor shall not require any laborer or mechanic employed in the performance of this agreement to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his health or safety as determined under standards promulgated by the Secretary of Labor under the authority of 40 U.S.C. 333 (see 29 CFR Part 1518).

(b) In the event it is determined that the Lessor has failed to comply with this provision regarding health and safety standards, the Postal Service, in its discretion, may cancel this agreement, contract for the balance of the work or term, and charge to the Lessor the additional cost, if any, incurred thereby.

41. <u>SUBCONTRACT PROVISIONS</u>

The Lessor agrees to insert Sections 40, 41 and 42 of this Lease in all subcontracts hereunder and to require their inclusion in all subcontracts of lower tier. The term "Lessor" as used in these clauses in any subcontract shall be deemed to refer to the subcontractor.

42. <u>CLEAN AIR ACT; WATER POLLUTION CONTROL ACT</u>

The Lessor agrees as follows:

(a) To comply with all the requirements of Section 114 of the Clean Air Act, as amended (42 U.S.C. 1857, et seq., as amended by Public Law 91604) and Section 308 of the Federal Water Pollution Control Act (33 U.S.C. 1251, as amended by Public Law 92-500), respectively and all regulations and guidelines issued hereunder.

(b) That no portion of the work required by this contract will be performed in a facility listed on the Environmental Protection Agency (EPA) <u>List of Violating Facilities</u> on the date when this contract was awarded, unless and until the EPA removes the name of such facility from such listing.



Initials

VPM

(c) To notify promptly the Contracting Officer of the receipt of any communication from the EPA indicating that any facility proposed for or in use under this contract is under consideration to be listed on the EPA List of Violating Facilities.

(d) To insert the substance (i) of any Clean Air and Water Certification contained in this solicitation and (ii) of the provisions of this clause into every nonexempt subcontract, including this paragraph, and to take such steps as the Postal Service may direct as a means of enforcing these provisions.

(e) That in the event the Contractor fails to comply with all the above requirements, his right to perform may be canceled, terminated for default, or suspended for such failure, in whole or in part.

43. EXEMPTION OF LESSOR FROM LIABILITY

Lessor shall not be liable to Lessee or to any other person whatsoever for any damage occasioned by plumbing, gas, water, steam, sprinkler, or other pipe and sewage system, or by the bursting, running, or leaking of any tank, washstand, closet, or waste or other pipes, in or about the leased premises or the building or which they are a part, or for any damage occasioned by water being upon or coming through the roof, skylight, vent, trapdoor, or otherwise, or for any damage arising from any acts or neglect of co-lessees or other occupants of the Center or of adjacent property, or the public. Lessor shall not be liable in damage or otherwise for any failure to furnish, or any interruption of service of any water, gas, electricity, heated water, steam, or chilled water, caused by fire, accident, riot, strike, labor disputes, acts of God, the making of any repairs or improvements, or other causes beyond the control of Lessor. Lessee recognizes that the Shopping Center is to be constructed in a number of stages and that other additions, replacements, and repairs to the Shopping Center will be made, and Lessee agrees that any construction work, alterations, or repairs undertaken by Lessor or anyone else in the Shopping Center after the start of the lease term shall not entitle Lessee to any rebate of rent or subject Lessor to liability for any loss of occupation or of quiet enjoyment of the leased premises, accommodation areas, parking areas, or loading areas.

44. COMPLIANCE WITH GOVERNMENT REGULATIONS.

Lessee shall conform to and abide by the rules and regulations adopted by the Los Angeles County or the Department of Small Craft Harbors of Los Angeles County all ordinances of the County of Los Angeles, and all statutes and administrative rules and regulations relating to use occupancy of the Federal Government and the State of California, applicable thereto, and where permits are required for such operations, the same must be first had and obtained from the regulatory body having jurisdiction thereof, before such operations are undertaken.



initials

It is specifically agreed as a condition of this lease that Lessee, its employees and other occupants of the leased premises, and all persons employed and permitted in or about said premises by Lessee, shall, at all times in connection with the use and occupancy of said premises and every part thereof, fully comply and faithfully carry out laws, ordinances and mandates of the Federal Government, the State of California, the County of Los Angeles, and the Municipal Government, and all other public authority, applicable to the use or occupancy of said leased premises, and will keep and comply with all conditions, regulations and restrictions imposed on the use and occupancy of said premises, and will comply with all regulations of all judicial, administrative or governmental bodies having jurisdiction over the use and occupancy of said premises, and Lessee shall neither do nor permit any act in, or about or in connection with said premises which shall be in any manner immoral, disorderly, result in a nuisance, or be in violation of said laws, ordinances, rules or mandates.

45. <u>RIGHT OF ENTRY</u>

Lessee shall permit Lessor and the County of Los Angeles and their respective duly authorized representatives or agents to enter upon the leased premises at any and all reasonable times during the term hereof, for the purpose of determining whether or not Lessee is complying with the terms and conditions of this lease, or for any other purpose incidental to the rights of Lessor and said County hereunder.

46. <u>COUNTY OF LOS ANGELES MASTER LESSOR</u>

It is understood and agreed between the Lessor and Lessee herein that the lease entered into hereunder is subject to the approval of the Director of the Department of Small Craft Harbors; and in the event that the Director shall fail to approve the within lease within ninety (90) days from the date hereof, said lease, at the option of Lessor, shall be deemed to be null and void from the beginning, and all sums paid by one party to the other hereunder shall be refunded.

47. <u>SUBORDINATION</u>

Lessee agrees that this Lease shall be subject and subordinate to any mortgage or trust deed that may hereafter be placed upon the leased premises or upon the real property of which the leased premises is a part, and to any and all advances to be made thereunder, and to the interest thereon, and all renewals, replacements and extensions thereof. If any mortgagee or trustee elects to waive priority of its lien over this Lease, upon written notice by said mortgage or trustee to Lessee of such election, this Lease shall be deemed to be superior to the lien of such mortgage or deed of trust whether the Lease was made prior or subsequent to the date of such mortgage or trust deed. Lessee shall upon written demand of Lessor, execute such instruments as may be required at any time and from time to time to subordinate the rights and interests of Lessee under this lease to the lien of any mortgage or deed of trust at any time placed upon the leased premises or upon the real property of which the leased premises is a part.



Initials

VPM

Notwithstanding anything contained herein to the contrary, in order to aid Lessor in the financing of the construction of said building and improvements, Lessee undertakes and agrees that in the event that the proposed mortgagee or beneficiary under any construction loan or issuing or proposing to issue a permanent mortgage loan commitment in connection therewith so requires or demands that it will enter into an amendment of the Lease in order to vary the language thereof in order to satisfy such requirements upon the express condition and understanding, however, that such variance in language will not be such as to alter in any way the rental obligations of Lessee under the Lease, and upon the further condition that such variance shall not substantially alter or impair any of the other rights or obligations of Lessee under the Lease.

48. NOTICES

Any notice or demand to be given hereunder shall be served by mailing same by certified mail in a sealed envelope postage prepaid, to Lessee addressed to Lessee's principal place of business at:

Los Angeles Field Office
U. S. Postal Service, RE & Bldgs. Dept.
Inglewood, Ca. 90311

and if to Lessor, addressed to Lessor at BENEFICIAL STANDARD PROPERTIES, INC., Attn: President, Beneficial Plaza, 3700 Wilshire Boulevard, Los Angeles, California 90010 or such other place as the parties hereto may designate in writing from time to time.

49. OPTION TO EXTEND

(a) Lessor hereby grants to Lessee an option to extend the term of this Lease for one additional three (3) year term (the "Option Period") at a monthly rent of Three Thousand Five Hundred Sixty Two Dollars and Fifty Cents ($3,562.50), but otherwise on the same terms and conditions as set forth for the primary term of this Lease, except for the provisions of this Article 49 relating to the option to extend the term of this Lease. 19 molds

(b) The option granted hereunder shall be exercised by Lessee by delivery of written notice to that effect to Lessor not less than One Hundred Eighty (180) days prior to the expiration of the primary term of this Lease. The option hereby granted may not be exercised at any time during which Lessee is in default under any of the terms, covenants, conditions and/or provisions of this Lease. Similarly, the Option Period shall automatically be forfeited if Lessee is in default under any of the terms, covenants, conditions and/or provisions of this Lease at the time such Option Period is to commence.



Initials
VPM

50. MISCELLANEOUS PROVISIONS

Whenever the singular number is used in this Lease and when required by the context, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders, and the word "person" shall include corporation, firm or association. If there be more than one Lessee, the obligations imposed under this Lease upon Lessee shall be joint and several.

This instrument contains all of the agreements and conditions made between the parties to this Lease and may not be modified orally or in any other manner than by an agreement in writing signed by all the parties to this Lease or their respective successors in interest.

Each term and each provision of this Lease performable by Lessee shall be construed to be both a covenant and a condition.

Except as otherwise expressly stated, each payment(s) required to be made by Lessee shall be in addition to and not in substitution for other payments to be made by Lessee.

Lessee warrants that it has not had any dealings with any realtor, broker, agent, or finder, in connection with the negotiation of this lease, excepting only None -, and Lessee agrees to pay and to hold harmless Lessor, from any and all costs, expense, or liability for any compensations, commissions or charges claimed by any realtor, broker, agent, or finder with respect to this lease or the negotiation of this lease, other than those named herein.

For the purposes of complying with and satisfying the so-called "Rule against Perpetuities", it is understood and agreed that this lease, should the commencement date not occur prior to December 31,1985 shall become automatically null and void and of no further force or effect whatsoever.

The obligation of Lessee to pay its pro rata share of community parking area expenses, taxes and assessments and fire, windstorm and extended coverage insurance, under this Lease shall collectively constitute an obligation to pay rent, and the failure by Lessee to pay any of such charges when due shall constitute a default in the payment of rent.

IN WITNESS WHEREOF, the parties hereto have executed this Lease in triplicate, as of the date first above written.

BENEFICIAL STANDARD PROPERTIES, INC., a California corporation (formerly known as Benefid Realty Company

UNITED STATES POSTAL SERVICE

By [signature] Harry Epstein, Its President

By [signature] By [signature] Marcus Loew, Authorized Agent

By

"LESSEE" "LESSOR"

LEGAL DESCRIPTION

Marina Del Rey
Lease Parcel No. 50R (Revised) (1st Amendment)

Parcels 787 to 805 inclusive, in the County of Los Angeles, State of California, as shown on Los Angeles County Assessor's Map No. 88, recorded in Book 1, pages 53 to 70 inclusive, of Assessor's Maps, in the office of the Recorder of said county.

Excepting therefrom that portion thereof within the following described boundaries:

Beginning at the westerly corner of said Parcel 796; thence northeasterly along the northwesterly line of said last mentioned parcel a distance of 140.00 feet; thence southeasterly at right angles from said northwesterly line 99.12 feet to the southeasterly boundary of said last mentioned parcel; thence southwesterly, westerly and northwesterly along the southeasterly, southerly, and southwesterly boundaries of said last mentioned parcel to the point of beginning.

Also excepting therefrom that portion thereof within the following described boundaries:

Commencing at the northeasterly terminus of a curve concave to the east, having a radius of 30 feet, tangent to a line parallel with and 2.5 feet southwesterly, measured at right angles, from the straight line in the southwesterly boundary of said Parcel 787 and reverse at the northeasterly terminus thereof to a curve concentric with and 3 feet northwesterly, measured radially, from that certain 1540 foot radius curve in the northwesterly boundary of said last mentioned parcel; thence southeasterly along a radial of said 30 foot radius curve 3.00 feet to a point in said northwesterly boundary, said point being the true point of beginning; thence northeasterly along said northwesterly boundary to a line parallel with and 2 feet northeasterly, measured at right angles, from said radial; thence southeasterly along said last mentioned parallel line 3.00 feet; thence southwesterly at right angles from said last mentioned parallel line to a curve concave to the east, having a radius of 25 feet, tangent to said northwesterly boundary and tangent to said straight line; thence southerly along said last mentioned curve to a line parallel with and 7 feet northeasterly, measured at right angles, from said straight line; thence southeasterly along said last mentioned parallel line to a line parallel with and 8 feet northwesterly, measured at right angles, from a radial of said 30 foot radius curve at the southeasterly terminus thereof; thence southwesterly along said last mentioned parallel line to said 25 foot radius curve; thence southeasterly along said last mentioned curve to said southwesterly boundary of Parcel 787; thence northwesterly, northerly and northeasterly along the southwesterly, westerly and northwesterly boundaries of said last mentioned parcel to said true point of beginning.

Also excepting therefrom that portion thereof which lies easterly of a curve concave to the west, having a radius of 25 feet, reverse to that certain 8050.17 foot radius curve in the northeasterly boundary of said Parcel 805 and tangent to the straight line in the southeasterly boundary of said last mentioned parcel.

Also excepting therefrom that portion thereof which lies northerly of a curve concave to the south, having a radius of 25 feet, reverse to that certain 8050.17 foot radius curve in the northeasterly boundary of said Parcel 797 and tangent to the straight line in the northwesterly boundary of said last mentioned parcel.



EXHIBIT "A"

Initials
VPM

Also excepting therefrom that portion thereof within a strip of land 2 feet wide, the northwesterly boundary of which is described as follows:

Beginning at a point in the straight line in the northwesterly boundary of said Parcel 797 distant northeasterly thereon 4.73 feet from the southwesterly terminus thereof; thence southwesterly along said last mentioned straight line 4.73 feet to said southwesterly terminus, said southwesterly terminus being the beginning of that certain 1540 foot radius curve in said last mentioned northwesterly boundary; thence southwesterly along said last mentioned certain 1540 foot radius curve 3.27 feet.

Reserving and excepting therefrom unto the County of Los Angeles rights of way for sanitary sewer, storm drain, access and harbor utility purposes over those portions thereof designated on said map as easements to be reserved by said county for such purposes.

DESCRIPTION APPROVED
February 8, 1967
JOHN A. LAMBIE
County Engineer

By ______________ Deputy



EXHIBIT "A"

Initials
VPM




MARINA SHOPPING CENTER
Marina del Rey, California

It is hereby mutually agreed between the parties that the following items as shown by this sketch are for purposes of identification and clarification only, as to work performed by Lessor and work performed by Lessee. Lessor reserves the right to relocate facilities as may be required.




EXHIBIT "C-2"

Initials

14. RENT RENEGOTIATION TO MEET LEGAL REQUIREMENTS.

Section 504 of the Bond Resolution described in Section 46 of this Lease requires that each Lease provide that the square foot rentals and percentage rentals be subject to increase if and when the Board of Supervisors shall find and determine that such increase is required to permit the County to meet its obligations under the terms of said Bond Resolution.

In the event that the Board of Supervisors determines that it is required to increase rentals to meet its obligations under the Bond Resolution, it may increase the square foot rentals and percentage rentals provided for in this Lease to the extent required to meet said obligations, except that the Lessee shall bear no more than his proportionate share of the total increase required to meet said obligations as reasonably determined by the Director, and in any event, the amount of any such increase shall not exceed ten per cent (10%) of the previously existing square foot rentals and percentage rentals. Rental increases under this secti shall not be made during the first five (5) years of the term here of nor more often than every ten (10) years thereafter.

15. GENERAL RENT RENEGOTIATION AND ARBITRATION.

Except as provided in Section 14, the square foot and percentage rentals hereinbefore provided for shall apply and be in effect for the first twenty-one (21) years of the term hereof. At the end of said period, and at the end of every ten (10) year peri thereafter, the said rentals shall be readjusted as provided hereinafter.

Such rentals shall be readjusted by Lessee and County, in accordance with standards of and for fair market value hereinafter set forth, at some time not more than nine (9) months and not less than six (6) months before the beginning of each such period, in the event Lessee and County cannot agree upon the readjustment of rentals, the same shall be determined by a board of three (3) real estate appraisers, one of whom shall be appointed by County, one by Lessee, and the third by the

EXHIBIT "D"

Initials

two (2) appraisers so appointed.

If the rentals have not been readjusted by mutual agreement within the three-month period above prescribed, County shall give to Lessee a written notice demanding submission to said board of real estate appraisers and nominating the person to act as real estate appraiser on behalf of County. Within fifteen (15) days from the service of such notice Lessee shall appoint its real estate appraiser and notify County of such appointment. If either party shall not have notified the other in writing of the appointment of its real estate appraiser, the Presiding Judge of the Superior Court of the State of California, in and for the County of Los Angeles, shall, upon request of either party, appoint the real estate appraiser for the party so in default. If the two (2) real estate appraisers so chosen shall be unable to agree upon the third real estate appraiser within ten (10) days after the appointment of the second real estate appraiser, the third real estate appraiser shall be appointed by the Presiding Judge of said Superior Court upon request of either party. Any vacancy in the board of real estate appraisers shall be filled by the party who or which made the original appointment to the vacant place. If not so filled within ten (10) days from commencement of said vacancy, the vacant position shall be filled by the said Presiding Judge upon request of either party.

The board of real estate appraisers shall, immediately upon the appointment of its members, enter upon the discharge of its duties and determine the amount of readjusted rentals and notify the parties thereof in writing within sixty (60) days after its appointment. A majority of the real estate appraisers who agree thereto may readjust such rentals, such readjustment to be based upon a determination of the fair market value of this lease, taking into consideration the uses permitted

EXHIBIT "D"

Initials
VPM

thereunder and all of its terms, conditions and restrictions, franchise value, earning power, and all of the factors and data relating to such value required or proper to be considered in determining the fair market value of leaseholds under the laws of eminent domain in the State of California; also provided that at all times during the term of this lease the total of such rentals shall be in such amount that the property hereby demised shall produce at least its proportionate share of the revenue required by Government Code, Section 26360 and the revenue required to meet the obligations of County under that certain Revenue Bond Resolution of the County Board of Supervisors referred to in Section 46; and, notwithstanding the renegotiation and arbitration provisions of this Section 15, the minimum rental under this lease shall never be lower than the product of ___ten___ cents ($__.10__) multipli by the square feet of the leased land and water area. In the event said real estate appraisers fail to determine and give notice of the amounts of readjusted rentals within sixty (60) days, a new board of real estate appraisers shall be appointed in the manner hereinbefore prescribed.

If for any reason said readjusted rentals shall not be finally determined until after the beginning of any period for which the same must be readjusted, Lessee shall continue to pay rentals at the former rate as a credit against the amount of the readjusted rentals when finally determined, provided, however, that the amounts fixed as the readjusted rentals shall accrue from the beginning of said period and proper adjustment shall be made for payments made by Lessee at the former rates during said interim. The costs and expenses of each of the two (2) real estate appraisers appointed by the parties shall be borne by the party so appointing. Costs and expenses of the third real estate appraiser shall be equally divided between th parties.

EXHIBIT "D"

initials
VPM

16. CONTROLLED PRICES.

The prices charged for all goods or services or combinations thereof, supplied to the public on or from the premises hereby demised, whether the same are supplied by Lessee or by its sublessees, assignees, concessionaires, permittees or licensees shall be fair and reasonable, based upon the following two (2) considerations:

First, that the property herein demised is intended to serve a public use and to provide needed facilities to the public at fair and reasonable cost; second, that Lessee is entitled to a fair and reasonable return upon his investment pursuant to this lease.

In the event that Director notifies Lessee that any of said prices are not fair and reasonable, Lessee shall have the right to confer with Director and to justify said prices. If, after reasonable conference and consultation, Director shall determine that any of said prices are not fair and reasonable, the same shall be modified by Lessee or its sublessees, assignees, concessionaires, permittees or licensees, as directed.

The Lessee may appeal the determination of the Director to the Board of Supervisors, whose decision shall be final and conclusive. Pending such appeal, the prices fixed by the Director, shall be the maximum charged by the Lessee.

EXHIBIT "D"

Initials

VPM

UNITED STATES POSTAL SERVICE

# Attachment One – Common Area Exclusions

Facility Name/Location
Marina del Rey Branch – 4766 (B-5) Admiralty Way, Marina del Rey, CA 90291-9998

Project: 058106-012

Common area charges will not include:

1. Leasing commissions, attorneys' fees, costs, disbursements and other expenses incurred in connection with negotiations or disputes with lessees or leasing, renovating, or improving space for lessees or occupants of the Center.
2. Costs, including permits, licenses and inspection fees incurred in renovating or otherwise improving, decorating, painting or redecorating vacant space or space for lessees or other occupants.
3. Lessor's costs of any service provided to lessees or other occupants for which Lessor is entitled to be reimbursed as an additional charge or rental over and above the Base Rent payable under the lease with such lessee or other occupant.
4. Costs incurred by Lessor for alterations or additions that are considered capital improvements and replacements under generally accepted accounting principles.
5. Any depreciation or amortization on the Center.
6. Cost of a capital nature, including, but not limited to, capital improvements, capital repairs, capital equipment and capital tools as determined in accordance with generally accepted accounting principles.
7. Cost incurred in conjunction with services or other benefits of the type that are not provided to Lessee but which are provided to other lessees or occupants.
8. Expenses in connection with services or other benefits of the type that are not provided to Lessee but which are provided to other lessees or occupants.
9. Costs incurred due to violations by Lessor of any of the terms and conditions of the Lease or any other lease relating to the Center.
10. Overhead and profit increments paid to subsidiaries or affiliates of Lessor for management or other services provided to the Center, or for supplies or other materials to the extent that the cost of such services, supplies, or materials exceed the cost that would have been paid had the services, supplies or materials been provided by unaffiliated parties on a competitive basis.
11. Interest on debt or amortization payments or increases in interest or debt of any mortgages or changes in deeds of trust or any other debt for borrowed money.
12. Rent or other payments under any ground lease or underlying lease.
13. Rentals or other related expenses incurred in leasing air conditioning systems, elevators or other equipment ordinarily considered to be a capital nature, except equipment used in providing janitorial services which is not affixed to any building in the Marketplace.
14. The cost of all items and services for which Lessee reimburses Lessor or buys from third persons or which Lessor provides selectively to one or more lessees without reimbursement.
15. Advertising or promotional expenditures.
16. The cost of repairs and other work occasioned by fire, windstorm or other casualty of an insurable nature and other work to the extent of insurance or condemnation proceeds.
17. If a charge, fee, or cost is imposed for using the parking facilities, costs incurred in operating the parking facilities of the Center.
18. Any costs, fines or penalties incurred due to violations by Lessor of any governmental rule or regulation.
19. Any costs for sculpture, paintings, or other objects of art.
20. Wages, salaries, or other compensation paid to any executive employees or building managers.
21. The cost of correcting any code violations which were violations prior to the commencement of the term of ~~this~~ the Lease.
22. Any other expense that under generally accepted accounting principles or practices would not be considered normal maintenance or operating expenses.
23. The cost of liability insurance in excess of $5 million per occurrence.
24. The cost of any earthquake and/or flood insurance.
25. Any increases in real property taxes if the Center is sold, exchanged or transferred, or if there is otherwise a change in ownership of the Center.
26. Any costs or expenses attributable to any merchants' association or other association of tenants of the Center.
27. The costs of repairing any part of the common areas that was negligently designed or defectively constructed.
28. Cost and expenses incurred by Lessor in performing Lessor's obligations to maintain and repair the Center's building.
29. Excess premiums for insurance covering the common areas and/or the Center caused by extra-hazardous or non-retail use or activity therein, except as may be caused by Lessee.
30. If Lessee is not in the enclosed mall portion of the Center, any enclosed mall costs and expenses.