**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| MARINA WATERSIDE, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 06-497C |
| v. | ) | (Judge Horn) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT</u>**

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MARK A. MELNICK
Assistant Director

JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 616-0341

Attorneys for Defendant

OF COUNSEL:

Michael Kiely
OGC
U.S. Postal Service

Dated: December 22, 2006

**TABLE OF CONTENTS**

STATEMENT OF THE ISSUE . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . 2

I. Nature Of The Case . . . . . . . . . . 2

II. Statement Of Facts . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . 8

I. Standard of Review . . . . . . . . . . 8

II. The Renewal Option Executed By The Postal Service Constituted An Offer To Exercise the Final Option Period For An Annual Rental Amount Of $166,380.00 . . . . . . . . . . 9

III. Marina Accepted The Postal Service's Offer For The Final Option Period From October 1, 2005 to September 30, 2010 Through Its Agent, Caruso Affiliated And Is Not Entitled To A Higher Rental Rate . . . . . . 11

IV. Marina Accepted The Amount Of Rent Offered By The Postal Service For The Final Option Period By Failing To Object To The Postal Service's Offer Or To Negotiate a Higher Rental Rate . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . 17

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

California Oregon Broadcasting, Inc. v. United States, 2006 WL 333376 (Fed. Cl.) . . . . . . . . . 10

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Ferro Concrete Construction Co. v. United States, 112 F.2d 488 (1st Cir. 1940) . . . . . . . . . . . . 13

Gateway Co. v. Charlotte Theatres, Inc., 297 F.2d 483 (1st Cir. 1961) . . . . . . . . . . . . . . . . . . . . 12

Ismert & Associates, Inc. v. New England Mut. Life Ins. Co., 801 F.2d 536 (1st Cir. 1986) . . . 11

Laredo National Bank v. Gordon, 61 F.2d 906 (5th Cir. 1932) . . . . . . . . . . . . . . . . . . . . . . . . . 15

M.G. Construction, Inc. v. United States, 67 Fed. Cl. 176 (2005) . . . . . . . . . . . . . . . . . . . . . . . . 9

Rachelle Enterprises, Inc. v. U nited States, 144 Ct. Cl. 701, 169 F. Supp. 266 (1959) . . . . . . . 13

Radioptics, Inc. v. United States, 223 Ct. Cl. 594, 621 F2d 1113 (1980) . . . . . . . . . . . . . . . . . . 15

Seal-Flex, Inc. v. Athletic Track and Court Const., 98 F.3d 1318 (Fed. Cir. 1996) . . . . . . . . . . . 8

Total Medical Mgmt., Inc. v. United States, 104 F.3d 1314 (Fed. Cir.), cert. denied 522 U.S. 857 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## COURT RULES

Rule of Court of Federal Claims 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## OTHER AUTHORITIES

Restatement (Second) Agency § 140 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Restatement (Second) Contracts § 19(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Restatement (Second) Contracts § 24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Restatement (Second) Contracts § 50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Restatement (Second) Contracts § 69 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1 S. Williston, A Treatise on the Law of Contracts § 22A (W. Jaeger 3d ed. 1957) . . . . . . . . . 11

1 S. Williston, A Treatise on the Law of Contracts §§91, 91a . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **MARINA WATERSIDE, LLC,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| **v.** | **)** | **No. 06-497C** |
| | **)** | **(Judge Horn)** |
| **THE UNITED STATES,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

**DEFENDANT'S CROSS MOTION**
**FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court grant summary judgment in favor of defendant and deny plaintiff's claim for increased rental payments. There are no genuine issues of material fact and defendant is entitled to judgment as a matter of law. In support of our motion, we rely upon plaintiff's amended complaint, the following brief, the parties' joint stipulation of facts, and the appendix supporting the joint stipulation of facts.

**STATEMENT OF THE ISSUE**

Whether plaintiff, Marina Waterside, LLC, accepted the Postal Service's offer to exercise the option contained in the Fourth Sublease Agreement at an annual rent of $166,380.00, where Marina's agent accepted the Postal Service's rental amount in writing, and where Marina otherwise failed either to object or attempt to negotiate a different rental amount before the beginning of the option period such that Marina is not entitled to additional rent for any part of the sublease period of October 1, 2005 through September 30, 2010.

## STATEMENT OF THE CASE

I. Nature Of The Case

This action concerns a lease between plaintiff, Marina Waterside, LLC ("Marina"), and the United States Postal Service ("Postal Service"). The Postal Service has leased space from Marina, or its predecessors in interest, since 1981. The present controversy involves the final option period provided in the fourth sublease amendment, that extended the lease term to September 30, 2010. The Postal Service executed the option in January, 2004, specifying that the annual rent for the option period would be $166, 380.00. Marina accepted the exercise of the option without challenging the Postal Service's proposed rental amount. Not until October 12, 2005, more than a year and a half after the Postal Service exercised the option, did Marina first demand from the Postal Service a different, and considerably higher, rental amount.

On November 3, 2005, pursuant to the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. § 601 et seq., Marina submitted a claim letter to Ron Borkgren, the Postal Service contracting officer, asserting a claim that the rent due under the fourth sublease amendment was $271,150.50 per year. On December 28, 2005, the contracting officer denied the claim. On July 5, 2006, Marina filed this action challenging the denial of its claim.

II. Statement of Facts[1]

On or about February 27, 1981, the United States Postal Service and Beneficial Standard Properties, Inc., doing business as Marina Shopping Center, entered into a sublease for commercial space at 4736-38 Admiralty Way, Marina del Rey, California, to be used by the Postal Service for a post office for the Venice and Marina del Rey communities. Stipulation of

[1] Pursuant to the Court's order, dated November 28, 2006, and RCFC 56(h)(3), defendant is basing its factual assertions in this motion upon the parties' accompanying joint stipulations of fact in lieu of filing proposed findings of uncontroverted fact.

Fact ("Stip.") ¶ 2. The original term of the sublease was for five years, commencing on July 1, 1981, and ending on June 30, 1986. Stip. ¶ 3. The rent for the original term was $33,750.00 per year, payable in monthly payments of $2,812.50. Id.

The sublease also granted the Postal Service an option to extend its tenancy for three years at a specified monthly rent of $3,562.50. Stip. ¶ 4. The sublease allowed the Postal Service to exercise the option "by delivery of written notice to that effect to Lessor not later than One Hundred Eighty (180) days prior to the expiration of the primary term of the lease." Id.

On September 11, 1981, the parties entered into a First Amendment of Sublease. Stip. ¶ 5. This amendment provided for a later commencement of the term of the sublease to account for delays in the construction of improvements to the subleased property. Stip. ¶ 6. The term of the sublease commenced on October 1, 1981, and was to end on September 30, 1986. Stip. ¶ 7. All other provisions of the original sublease remained in effect. Id.

At some undetermined point in time, the Postal Service exercised the option to extend the sublease for three years, i.e., from October 1, 1986, through September 30, 1989. Stip. ¶ 8.

On May 16, 1988, the Postal Service and Benequity Properties, a successor in interest to the original sublessor, Beneficial Standard Properties, Inc., entered into a Sublease Amendment. Stip. ¶ 9. This amendment extended the term of the sublease from October 1, 1989, to September 30, 1994, and provided for rental payments in the amount of $4,500 monthly, or $54,000 annually. Stip. ¶ 10. The Sublease Amendment did not contain any option provision. Id.

On July 23, 1990, the Postal Service and Carlisle Realty Holdings I, a successor in interest to Benequity Properties, entered into the Second Sublease Amendment. Stip. ¶ 11.

Pursuant to the Second Sublease Amendment, (1) the Postal Service relocated its operations from 4736-38 Admiralty Way to 4748 Admiralty Way; (2) the term of the sublease was extended for five years, commencing on October 1, 1990, and ending on September 30, 1995; (3) one five-year renewal option was added, commencing on October 1, 1995, and ending on September 30, 2000; and (4) the sublease's rent schedule was changed. Stip. ¶ 12.

Pursuant to the Second Sublease Amendment, the sublease's rental rate was revised as follows: from October 1, 1990, through September 30, 1993, the Postal Service would pay $11,750 per month for rent; from October 1, 1993, through September 30, 1995, the Postal Service would pay $13,865 per month for rent; in the event that the Postal Service exercised the five-year option, it would pay $13,865 per month for rent from October 1, 1995, through September 30, 1996, $16,300 per month for rent from October 1, 1996, through September 30, 1999, and $19,305 per month for rent from October 1, 1999, through September 30, 2000. Stip. ¶ 13.

The Second Sublease Amendment did not contain any express provision regarding exercise of the option by the Postal Service. Stip. ¶ 14. However, it did contain a provision that "[a]ll other provisions, terms and conditions of the Lease shall remain the same and in full force and effect." Id.

In 1996 and 1997, the parties signed two documents that were both titled "Third Sublease Amendment." Stip. ¶ 15. The first of these was signed on July 22, 1996 ("July Amendment"); the second was signed on January 30, 1997 ("January Amendment"). Id. Both amendments provided for a five-year lease extension commencing on October 1, 1995, and ending on September 30, 2000, with no option period. Id. The July Amendment was signed when the Postal Service was relocating its premises to 4766 Admiralty Way. Id.

On July 22, 1996, the parties also signed a separate “Binding Appraisal Agreement” in which the parties agreed to commission an appraisal that would establish the net annual fair market rent for the five-year lease term covered by the Third Sublease Agreement. Stip. ¶ 16.

The January Amendment provided a rental amount of $129,000.00 per year for the period beginning October 1, 1995, until the time the Postal Service accepted the new space at 4766 Admiralty Way. Stip. ¶ 17. Once the Postal Service accepted the new space, the rent would be $166,380.00 per year through the remainder of the sublease term that ended September 30, 2000. Id.

On November 16, 1999, the parties executed a Fourth Sublease Amendment, which added a five-year term beginning October 1, 2000, and ending September 30, 2005. Stip. ¶ 18. It also provided a five-year option period to begin October 1, 2005, and end September 30, 2010. Id. The Fourth Sublease Amendment provided that the option period would be renewed “on the same basic terms and conditions of the lease” and was to be “exercised by Lessee by delivery of written notice to Lessor one hundred and twenty (120) days prior to the expiration of this Lease.” Stip. ¶ 19.

The Fourth Sublease Amendment provided as follows regarding rental payments:

> Article 2 of the Third Sublease Agreement is hereby [amended] to provide for a fixed minimum annual rental rate of one hundred sixty thousand three hundred eighty dollars ($166,380.00). The fixed minimum annual rental rate for the above referenced five year option period to renew will be determined based on the fair market value.

Stip. ¶ 20.

On or about January 6, 2004, the contracting officer, Jack Davidson, notified the sublessor that the Postal Service was exercising the option to extend the sublease though September 30, 2010, specifying the rental amount as $166,380.00 per year. Stip. ¶ 22. The

sublessor, Carlisle Realty Holdings I, did not object to the annual rental amount specified by the Postal Service in the exercise of the option by the Postal Service nor did it specify an alternate amount of rent. Defendant's Statement of Controverted Issues ("DSCI") No. 29.

On or about January 20, 2004, Carlisle Realty Holdings I and Caruso Affiliated Holdings, "Caruso" assigned all of its rights, title and interests in the subleased premises to the plaintiff, Marina Waterside, LLC. Stip. 23. Following the assignment, Caruso acted as Marina's on-site property manager. As a part of the plaintiff's acquisition of the Marina Shopping Center, the defendant provided an estoppel certificate dated January 7, 2004. Stip. ¶ 24.

On January 20, 2004, Caruso, acting as Marina's agent, sent a letter to the Postal Service to advise it of the recent change in ownership. DSCI No. 29. The letter also stated "We are currently auditing the tenant billing records to ensure their accuracy; any discrepancies will be communicated to you within the next 30 days." Id. On August 4, 2004, Caruso, again acting as Marina's agent, sent a letter to the Postal Service regarding the Postal Service's "requirements for transfer of ownership." DSCI No. 31. In this letter, Marina stated that it had performed a "careful review of the sublease" regarding the documents required for such a transfer. Id.

On January 20, 2005, Caruso sent a letter on behalf of Marina, which directed the Postal Service to pay rent of $13,865.00 per month, which is the equivalent of $166,380.00 per year. DSCI No. 32.

On November 3, 2005, plaintiff's attorney, Ernie Zachary Park of Bewley, Lassleben & Miller, LLP, Whittier, California, submitted a letter to the Postal Service contracting officer on behalf of Marina Waterside in which he claimed that the annual rent for the premises was $271,150.50, not $166,380.00, and that the Postal Service therefore owed additional rent, as follows:

$271,150.50 (plaintiff's proposed annual rent)
- $166,380.00 (USPS annual rent)
$104,770.50
x 5 (years in the option)
$523,852.50

DSCI No. 33.

The contracting officer denied the claim in a letter dated December 28, 2005, stating that the chosen annual rate of $166,380.00 was a reasonable fair market value, and that in waiting to protest the annual rate of $166,380.00 for almost two years, the plaintiff agreed to the rate and waived its right to object. DSCI No. 34.

On February 1, 2006, Caruso sent a letter to the Postal Service with a memorandum setting out the monthly rental amount of $13,865.00, as well as additional amounts that the Postal Service owed for Common Area Maintenance, property taxes and other standard lease additions. DSCI No. 35. On February 13, 2006, the Postal Service sent to J.P. Morgan Chase Bank, N.A., an estoppel certificate for the subleased premises. DSCI No. 36. In the letter accompanying the estoppel certificate the Postal Service advised J.P. Morgan Chase Bank, N.A. that the annual rental rate for the subleased premises was $166,380.00. Id.

## SUMMARY OF ARGUMENT

When the Postal Service exercised the option authorized by the Fourth Sublease Amendment, it specified that it did so at an annual rental rate of $166,380.00. Marina has accepted the Postal Service’s offer through the overt acts of Marina’s agent, Caruso Affiliated, the on-site property management company for the Marina Waterside shopping center. Caruso Affiliated confirmed in writing to the Postal Service that it was Marina’s agent for purposes of managing tenant accounts at the Marina Waterside shopping center, that it had reviewed the

Postal Service's tenant account for 2005, and that the Postal Service's monthly rent for calendar year 2005 was $13,865.00, equivalent to an annual rate of $166,380.00.

Moreover, even if Caruso Affiliated's actions were somehow deemed not to constitute an acceptance of the Postal Service's offer, Marina failed to object to the amount of rent offered by the Postal Service at any time in the 19 months from the time the option was exercised until the option period began. Given the parties' course of dealing in the past, Marina's silence in these circumstances constituted an acceptance of the Postal Service's offer to extend the lease at the same rental amount as before. Marina may not now demand a higher amount of rent from the Postal Service because through its agent's overt acts, and its own silence, it has accepted the amount of rent offered by the Postal Service. Marina has no basis to make a unilateral change to the terms of the lease. The Government is entitled to judgment as a matter of law that it does not owe additional rent to Marina for any part of the final option period from October 1, 2005 through September 30, 2010.

## ARGUMENT

### I. Standard Of Review

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party bears the initial burden of establishing the absence of any disputes of material fact. Seal-Flex, Inc. v. Athletic Track and Court Const., 98 F.3d 1318, 1321 (Fed. Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When the movant has met its initial burden, the non-movant must respond with sufficient evidence to show that there is a material factual dispute and that, on the non-movant's evidence, the movant is not entitled to judgment as a matter of law." Id. Alternatively, if the

moving party can show that there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence. Celotex, 477 U.S. at 325. The Supreme Court has emphasized that the "[s]ummary judgment procedure is not properly regarded as a disfavored procedural shortcut but, rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action. . . .'" Celotex, 477 U.S. at 327 (citations omitted).

As set forth below, the undisputed facts establish that the Postal Service offered to exercise the option period at an annual rental amount of $166,380.00, and that Marina accepted this amount both through its agent, Caruso Holdings, as well as through its own failure to specify another amount of rent, or to raise any objection to the Postal Service’s stated rental amount. Having accepted the rental term offered by the Government, Marina is bound by that acceptance, and cannot now demand a higher level of rent. The Government’s cross-motion for summary judgment should be granted and plaintiff’s claim dismissed.

## II. The Renewal Option Executed By The Postal Service Constituted An Offer To Exercise the Final Option Period For An Annual Rental Amount Of $166,380.00

This case involves basic principles of contract formation, that is, offer and acceptance. In order to establish an express contract with the Government, the presence of certain elements must be established, i.e., mutuality of intent to contract, consideration, an unambiguous offer and acceptance, and actual authority to bind the Government. M.G. Construction, Inc. v. United States, 67 Fed. Cl. 176, 182 (2005) citing Total Medical Mgmt., Inc. v. United States, 104 F.3d 1314, 1319 (Fed. Cir.) (citations omitted), cert. denied, 522 U.S. 857 (1997). In the Postal Service’s exercise of the renewal option contained in the Fourth Sublease Amendment, three of these elements are indisputably present. Marina does not contest that there was mutuality of intent to contract, consideration, and actual authority to bind the Government, and it is clear that

the parties had a mutual intent to contract for an option period as evidenced by the presence in the Fourth Sublease Amendment of an option provision. Moreover, consideration for the option is demonstrated by the annual rental payments of $166,380.00. Finally, the fact that the Government representative was someone with authority to bind it is demonstrated by the fact that a contracting officer executed the Exercise of Renewal Option. App. 66.

The fourth necessary element, an unambiguous offer and acceptance, is also present in the Government's exercise of the Fourth Sublease Amendment option. The Restatement (Second) of Contracts § 24 defines "offer" as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Here, there is no question that the Postal Service was willing to enter into the final option period authorized in the Fourth Sublease Amendment; it executed the exercise of renewal option on January 6, 2004, in accordance with the terms of the Fourth Sublease Amendment. Moreover, as is evident from the fact that this was the fourth sublease amendment, the Postal Service had exercised several previous options to extend the original sublease signed in 1981.[2] App. 9, 10, 14, 15, 16.

Where the terms of a lease are disputed, the Court looks to the plain language of the contract and "gives reasonable meaning to all parts of the contract and does not render any portion meaningless, or interpret any provision so as to create a conflict with another provision." <u>California Oregon Broadcasting, Inc. v. United States</u>, 2006 WL 3333766 (Fed. Cl.) * 6 Moreover, the Court "must endeavor to discern the true intention of the contracting parties." <u>Id.</u> at * 8. Here, there can be no doubt that the Postal Service intended that the rental amount

[2]Despite the fact that it is called the Fourth Sublease Amendment, there were actually 5 previous amendments. As is noted in the record, there were two amendments labeled Third Sublease Amendment, and one that was not numbered. Stip. ¶¶ 9, 10, 15.

effective in the final option period was to be $166,380.00. The Exercise of Renewal Option is a document of few words, and is not subject to multiple interpretations. The operative language reads as follows:

> Pursuant to the contract with you covering this facility, the Postal Service hereby exercises its option to renew said contract as follows:
> Term: 5 years From (Date): 10/01/2005 To: (Date): 9/30/2010
> Annual Rate: $166,380.00
> There is/are 0 renewal option(s) remaining. In all other respects the said contract shall remain the same and is hereby confirmed.

App. 66.

Thus, just as there is no confusion as to the Postal Service's intent with respect to the fact that the Postal Service intended to Exercise of Renewal Option for the five-year period from October 1, 2005 to September 30, 2010, it should be clear that the Postal Service intended and understood that the rental amount for the final option period would be $166,380.00.

**III. Marina Accepted The Postal Service's Offer For The Final Option Period From October 1, 2005 to September 30, 2010 Through Its Agent, Caruso Affiliated And Is Not Entitled To A Higher Rental Rate**

Caruso, Marina's agent, accepted the Postal Service's offer through the overt act of corresponding with the Postal Service and adopting the rental amount proposed by the Postal Service. An offer may be accepted by overt acts. See Ismert & Associates, Inc. v. New England Mut. Life Ins. Co., 801 F.2d 536, 541 (1st Cir. 1986); 1 S. Williston, A Treatise on the Law of Contracts § 22A (W. Jaeger 3d ed. 1957) (modern law rightly construes both acts and words as having the meaning which a reasonable person would put upon them in view of the surrounding circumstances). Under certain circumstances, acceptance may come about as a result of silence, or of silence in conjunction with acts. See Gateway Co. v. Charlotte Theatres, Inc., 297 F.2d 483, 486 (1st Cir. 1961).

Here, the overt acts consist of the a series of correspondence between Marina's agent, Caruso, Affiliated ("Caruso"), the on-site property management company, and the Postal Service. On January 20, 2004, Marina took over ownership of the Postal Service's sublease pursuant to the "Assignment of Subleases and Security Deposits" executed between Carlisle Realty Holding, I as assignor, and Marina Waterside, LLC as assignee. Stip. ¶ 23. On that same day, January 20, 2004, Caruso sent a letter to the Postal Service, to advise it was now the on-site property management company and that all future rental payments should be sent to Marina. DSCI ¶ 30. The letter further stated that Caruso was "currently auditing the tenant billing records to ensure their accuracy; any discrepancies will be communicated to you within the next 30 days." Id. Despite this audit, Marina did not notify the Postal Service within 30 days that anything was amiss with the account.

On August 4, 2004, Marina, through its agent Caruso, sent another letter to the Postal Service, which addressed the Postal Service's "requirements for transfer of ownership." DSCI No. 31. In this letter, Marina stated that it had performed a "careful review of the sublease." Id. Nonetheless, Marina again did not notify the Postal Service of any problem regarding its exercise of the option.

Finally, on January 20, 2005, Caruso sent a letter to the Postal Service stating that the minimum monthly rent for 2005 was $13,865.00 per month, which is the equivalent of the $166,380.00 per year proposed by the Postal Service. DSCI No. 32. The time period that was the subject of this notice from the sublessor encompassed the first three months of the option period, which was to begin on October 1, 2005. In effect, this notice could reasonably have been, and was, read by the Postal Service as meaning that its proposed annual rent of $166,380.00 for the option period had been accepted by the sublessor. When Caruso sent the

January 20, 2005 letter, it was the latest in a series of correspondence indicating Caruso's active involvement in reviewing tenant accounts. Absent exercising the final option period, the Postal Service's lease would have expired on September 30, 2005, but Caruso's letter instructed the Postal Service to pay a minimum monthly rent of $13,865.00 for all twelve months of 2005. Thus, Caruso's January 20, 2005 letter was written at a time when Caruso knew that the option period would become effective, and that it had been exercised by the Postal Service. The Postal Service, therefore, had every reason to believe that the instructions concerning the rent for 2005 were based on Marina's acceptance of the Postal Service's proposed rental amount for the final option period starting October 1, 2005 and ending September 30, 2010.

Furthermore, given that Caruso was Marina's express agent for the stated purpose of managing the tenants' accounts at the Marina Waterside shopping center, there can be no doubt that Marina is bound by Caruso's representations to the Postal Service. Restatement (Second) Agency § 140 (1958) § 140 (general law of agency provides that a principal may be liable to a third party where the principal's agent was actually authorized to enter into the transaction). See also Rachelle Enterprises, Inc. v. United States, 144 Ct. Cl. 701, 169 F. Supp. 266, 267 (1959) (holding that where a corporation had held out an individual as having authority to act for it, the corporation was bound by the agent's acts.); Ferro Concrete Construction Co. v. United States, 112 F.2d 488 (1st Cir. 1940) ("such acts of an agent as are within the apparent scope of authority conferred upon him are binding upon the principal.").

Additionally, the Postal Service relied to its detriment on Caruso's statements concerning the amount of rent owing for 2005. Had the Postal Service known that Marina intended to raise the rent significantly, it might well have decided not to exercise the final option, especially considering it had a professional appraisal stating that the fair market rent for the premises was

only $179,658.00, roughly two-thirds of the amount now demanded by Marina. By exercising the option so far in advance of the start of the option period, the Postal Service left ample time to locate an alternative location in the event Marina's rental demand was too high. By waiting until the option period began to announce that the rent would increase by over a third, Marina deprived the Postal Service of the opportunity to find an alternate location at a more reasonable rent.

## IV. Marina Accepted The Amount Of Rent Offered By The Postal Service For The Final Option Period By Failing To Object To The Postal Service's Offer Or To Negotiate a Higher Rental Rate

In the event the Court does not consider Caruso's statements acceptance of the Postal Service's proposal, Marina's failure to otherwise object to the proposal should be deemed an acceptance. Section 50 of the Restatement (Second) of Contracts defines "acceptance" of an offer as "a manifestation of assent to the terms thereof made by the offeree in a manner invited by the offer." Generally, the acceptance of an offer "may be wholly or partly by written or spoken words or by other acts or by failure to act." Restatement (Second) of Contracts: Conduct as Manifestation of Assent § 19(l) (1979). Ordinarily, silence cannot be taken as manifestation of assent to an offer. However, the Restatement (Second) of Contracts, recognizes that where there are previous dealings or otherwise between the contracting parties, it may be reasonable to require the offeree to notify the offeror if he does not intend to accept the offer. Id., Acceptance by Silence or Exercise of Dominion § 69 (1979).

Moreover, "Where the relation between the parties is such that the offeror is justified in expecting a reply, the latter's silence will be regarded as acceptance." Laredo National Bank v. Gordon, 61 F.2d 906, 907 (5th Cir. 1932) (citing Williston on Contracts, §§ 91, 91a). The existing relationship between the Postal Service and the landlord of the Marina Shopping Center

provided "special circumstances" which reasonably led the Postal Service to conclude that its proposed rent was acceptable in the absence of any word to the contrary from Marina. Radioptics, Inc. v. United States, 223 Ct. Cl. 594, 621 F.2d 1113, 1121 (1980). As noted above, this was the fifth time the original sublease term had been extended by the Postal Service to exercise a 5-year option, but the first time that the rental amount in the extended period had not been set out by the lessor in the relevant sublease amendment. In all previous subleases, the effective rental amount was specified in the sublease by the sublessor. Stip. ¶¶ 3, 4, 10, 13, 16, 17, summarized in ¶ 21.

Unlike the prior sublease amendments, the Fourth Sublease Amendment did not provide a rental amount.[3] It provided that the option period would extend the lease according to the "same basic terms and conditions of the [existing] lease." Stip. ¶ 19. It also provided that the "fixed minimum annual rental rate for the above-referenced five-year option to renew will be determined based on fair market value." Stip. ¶ 20. The Fourth Sublease Amendment did not, however, state how or when fair market value would be determined for purposes of establishing the rental rate.

The Fourth Sublease Amendment says only that the rental amount during the option period will be based on fair market value. In the absence of any further guidance from the lease document, the Postal Service reasonably interpreted the rental provision to provide that the parties would negotiate the fair market rent for the premises. Thus, the Postal Service obtained a

[3] The Third Sublease Agreement provided that the rent would be established by a professional appraiser's opinion of the fair market value, and indeed, the parties signed a separate agreement binding themselves to that rental amount. Stip. ¶ 16-17. Similarly, in the Sublease Agreement and the Second Sublease Agreement the sublessor spelled out in detail the amount of rent that would be due for specific time periods. Stip. ¶¶ 10, 13. Thus, in all the previous subleases, there was no confusion or misinterpretation possible as to the rental amount.

professional appraisal of the premises in October, 2003 in order to have a basis for its negotiating position, and to determine whether to exercise the option or to seek other premises. Stip. ¶ 25. It then began the negotiation by offering to exercise the option at the same rate it was then paying, $166,380.00 per year. As Marina did not object to the Postal Service's proposal, or propose another amount, the Postal Service reasonably believed that Marina had accepted the existing rental amount as effective for the option period.

By contrast, Marina's interpretation of the contract is unreasonable. Under Marina's interpretation of the contract, it had the unilateral ability to specify a new rent for the final option period at any time, even if it were after the time the first rental payment would be due. Essentially, Marina argues that it alone could determine what constituted "fair market value" under the Fourth Sublease Agreement, and the Postal Service had no choice but to agree to whatever amount Marina wanted to specify. This is an unreasonable interpretation of the Fourth Sublease Agreement, unsupported by any language in the document itself or by anything in the existing relationship between Marina and the Postal Service, and the Court should reject it.

Instead, the Court should adopt the Postal Service's interpretation that the parties would negotiate an amount that both agreed constituted fair market value. That interpretation is completely reasonable and is supported by principles of fair dealing and the existing relationship between Marina and the Postal Service. In short, Marina failed to speak at a time when it owed the Postal Service an obligation to negotiate, especially if it objected to the rental amount offered by the Postal Service. Even if Caruso had not already overtly accepted the Postal Service's offer, Marina's silence in these circumstances would still constitute an acceptance.

Thus, there are two bases for concluding that Marina accepted the Postal Service's offer to exercise the final option period at an annual rental rate of $166,380.00. Both the

correspondence of Caruso that acknowledged the rental rate chosen by the Postal Service for the option period, and Marina's silence otherwise regarding the proposed rent for the option period, reveal that Marina unambiguously accepted the Postal Service's offer in January 2004 to exercise the option at the annual rental rate of $166,380.00.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court grant judgment in favor of defendant upon plaintiff's claim for increased rental payments.

Respectfully submitted,
PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MARK A. MELNICK
Assistant Director

/s/ Joan M. Stentiford
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street
Washington, D.C. 20530
Tele: (202) 616-0341
Fax: (202) 514-8624

December 22, 2006

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this _22_nd day of December, 2006, the foregoing “DEFENDANT’S CROSS MOTION FOR SUMMARY JUDGMENT” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

__/s/ Joan M. Stentiford___
JOAN M. STENTIFORD