MARINA SHOPPING CENTER

S U B L E A S E

LESSOR: BENEFICIAL STANDARD PROPERTIES, INC.
Formerly known as BENIFID REALTY CO.

LESSEE: UNITED STATES POSTAL SERVICE

THIS LEASE IS EXECUTED IN QUINTUPLICATE

| | |
|---|---|
| Lessor (Lease File) | |
| Lessor (Secretary's File) | |
| Lessee | |
| Ground Lessor (County) | |
| Lender | |

TABLE OF CONTENTS


| Article | | Page |
|---|---|---|
| 1. | Leased Premises | 1 |
| 2. | Construction of Additional Improvements by Lessor | 3 |
| 3. | Commencement Date | 4 |
| 4. | Lease Year | 4 |
| 5. | Term | 4 |
| 6. | Payment of Rent | 4 |
| 7. | Fixed Rent | 4 |
| 8. | Rental Increase | 5 |
| 9. | Alteration | 5 |
| 10. | Repairs and Maintenance | 5 |
| 11. | Utilities | 6 |
| 12. | Community Parking Area | 7 |
| 13. | Assignment and Subletting | 8 |
| 14. | Taxes and Assessments | 8 |
| 15. | Indemnity Clause and Insurance by Lessee | 9 |
| 16. | Insurance by Lessor | 10 |
| 17. | Default by Lessee | 11 |
| 18. | Default by Lessor | 13 |
| 19. | Waiver | 13 |
| 20. | Lessor's Right to have Independent Operator | 13 |
| 21. | Lessee's Liability for Advances by Lessor | 13 |
| 22. | Estoppel Certificates | 14 |
| 23. | Lessee's Liability for Attorney's Fees, Costs and Expenses | 14 |
| 24. | Effect of Lessor's Conveyance | 14 |
| 25. | Damage or Destruction | 15 |
| 26 | Lessor's and Lessee's Work if Premises Rebuilt | 15 |
| 27. | Excuse for Non-performance | 15 |
| 28. | Condemnation | 16 |

TABLE OF CONTENTS
Page 2


| Article | | Page |
|---|---|---|
| 29. | Signs, Advertising Awnings, Utility Lines, Aerials and Antennae | 16 |
| 30. | Warranty and Quiet Enjoyment | 17 |
| 31. | Lease Binding on Heirs, Successors and Assigns | 17 |
| 32. | Hazardous Substances | 17 |
| 33. | Nuisance | 17 |
| 34. | Reservations | 18 |
| 35. | Time | 18 |
| 36. | Month to Month Tenancy | 18 |
| 37. | Equal Opportunity Clause | 18 |
| 38. | Officials not to Benefit | 19 |
| 39. | Overtime | 20 |
| 40. | Health and Safety Standards | 21 |
| 41. | Subcontract Provisions | 21 |
| 42. | Clean Air Act; Water Pollution Control Act | 21 |
| 43. | Exemption of Lessor from Liability | 22 |
| 44. | Compliance with Government Regulation | 22 |
| 45. | Right of Entry | 23 |
| 46. | County of Los Angeles Master Lessor | 23 |
| 47. | Subordination | 23 |
| 48. | Notices | 24 |
| 49. | Option To Extend | 24 |
| 50. | Miscellaneous Provisions | 25 |
| | Exhibit A - Legal Description | |
| | Exhibit B - Plot Plan | |
| | Exhibit C-2 - Lease Standards | |
| | Exhibit D - Master Ground Lease Rent Requirements | |
| | Exhibit E - Preliminary Plans and Specifications | |

# SUBLEASE

THIS SUBLEASE, (hereinafter referred to as "Lease", made and entered into on this 27th day of February 19 81, by and between BENEFICIAL STANDARD PROPERTIES, INC., formerly known as BENFID REALTY COMPANY, a California corporation dba MARINA SHOPPING CENTER, (hereinafter referred to as "Lessor") and the UNITED STATES POSTAL SERVICE (hereinafter referred to as "Lessee").

THIS LEASE is subject to the approval of the Director of the Department of Small Craft Harbors of the County of Los Angeles and bound by each and all of the terms and conditions of that certain Master Lease entered into on August 13, 1964, by the COUNTY OF LOS ANGELES, as Lessor, with SANDPIPER BUILDERS, a California corporation, and MICHAEL SIMS, an individual, as Lessee, whose rights and interests thereunder have been duly acquired by the Lessor herein.

## WITNESSETH:

1. LEASED PREMISES

That for and in consideration of the payment of the rent and the performance of covenants and conditions hereinafter set forth and in the manner herein stated, Lessor hereby leases unto Lessee and Lessee hereby rents from Lessor that portion of the real property upon which a store is ~~to be~~ constructed ~~in accordance with Paragraph 2~~ and located in the County of Los Angeles, State of California, and in the Marina Shopping Center developed by Lessor on that portion of Marina del Rey bounded by Lincoln Boulevard, Fiji Way, Admiralty Way and Mindanao Way, designated by the Department of Small Craft Harbors of the County of Los Angeles as Parcel 50-R, and legally described on Exhibit "A" attached hereto and made a part hereof, as though fully set forth. The portions of the real property described above, which are hereby leased to Lessee are hereinafter referred to as the "leased premises", shown shaded and labeled on the plot plan attached hereto as Exhibit "B" and made a part hereof. The leased premises are a portion of the Marina Shopping Center which is hereinafter referred to as the "Center".

Initials: JPM

Initials: JPM

In addition to the use and occupation by the Lessee of the leased premises Lessee shall have the use in common with others entitled therewith of the common areas, service roads, loading facilities, sidewalks and customer car parking areas, shown and depicted on Exhibit "B", and other facilities as may be designated from time to time by the Lessor; subject, however, to the terms and conditions of this agreement and to all rules and regulations for the use thereof as prescribed from time to time by the Lessor.

Lessee shall use the demised premises for the purpose of conducting therein and therefrom

a station of the UNITED STATES POSTAL SERVICE

and for no other purpose or purposes whatsoever without the prior written consent of Lessor. Lessee shall not use said premises for, nor conduct therein, any manufacturing or wholesale business,

Initials: JPM

nor manufacture thereon or use said premises to supply any other business or place of business of Lessee other than the goods or merchandise returned to or transferred to another store owned by or affiliated with Lessee.

Lessee shall abide by the following basic rules and restrictions as a condition of Lessee's use of the premises:

(1) Lessee shall at all times during the term of this Lease conduct and carry on Lessee's business in the leased premises, and shall keep the premises open for business and cause Lessee's business to be conducted therein during such business hours in which Postal facilities of the United States of America are required to be open for business.

(2) Lessee shall store all trash in metal containers, so as not to create or permit any health or fire hazard, in such location or locations as designated from time to time by Lessor; and Lessee shall, at its sole expense, arrange for the regular removal thereof;

(3) Lessee shall refrain from burning any papers, trash or garbage of any kind in or about the leased premises and/or the Shopping Center.

(4) Lessee shall refrain from using the plumbing facilities for any purpose other than that for which they were constructed or dispose of any damaging or injurious substances therein;

(5) Lessee shall refrain from using or loading the electrical facilities in a manner not contemplated when they were constructed and installed;

(6) Lessee shall refrain from using or permitting the use of any portion of the leased premises as living quarters, sleeping apartments or lodging rooms;

(7) Lessee shall refrain from keeping or permitting the keeping of any animals of any kind in, about or upon the leased premises except as accepted and processed in accordance with normal postal service operations and procedures;

(8) Lessee shall refrain from soliciting or carrying on similar activities, outside the leased premises, and/or keeping or displaying any merchandise or other objects on or otherwise obstructing any sidewalks, or walkways or areaways in the Shopping Center;

(9) Lessee shall refrain from distributing any handbills or other publications or other written or printed matter on or about the sidewalks or streets or passageways or any of the areaways in or surrounding the Shopping Center;



Initials JPM

(10) Lessee shall not at any time during the term of this Lease without first obtaining Lessor's written consent

a. conduct or permit any fire, or bankruptcy or auction or "going-out-of-business" or "loss-of-lease" sales, or sales similar thereto on the demised premises; nor,

b. change the exterior of the building, or any part thereof, of which the demised premises are a part, including, but not limited to, the color of the exterior walls; nor,

c. park or operate or load, or unload any truck or other delivery vehicle on any part of the Shopping Center other than the portion thereof from time to time designated by Lessor; nor,

d. install in, on or about the demised premises any exterior lighting or plumbing, or facilities, or shades, or awnings, or amplifiers, or similar or other devices; or use in, on or about the demised premises or the Shopping Center such devices as flashing lights, search lights, or loudspeakers, or phonographs, or radio broadcast.

2. Construction of Additional Improvements by Lessor. Lessor shall, in accordance with the following procedure, construct or cause to be constructed, in either case at Lessee's sole cost and expense, improvements to the leased premises substantially as described in the preliminary drawing(s) and specifications attached hereto as Exhibit E and made a part hereof. Prior to commencing work, Lessor shall prepare or cause to be prepared, in either case at Lessee's sole cost and expense, complete working drawings and final plans and specifications for the construction of such improvements (based upon the said preliminary drawings and specifications) and shall furnish such working drawings and final plans and specifications together with an estimate of the total cost of such improvements to the Postal Service for its review and approval. Within fifteen (15) days after receipt of such working drawings and final plans and specifications and cost estimate the Postal Service shall approve the working drawings and final plans and specifications and cost estimate or deliver to Lessor its specific objections thereto, together with its proposed solution to each objection. If the Postal Service fails to either approve or disapprove the working drawings and final plans and specifications and cost estimate within the said fifteen (15) day period, the Postal Service shall be deemed to have approved the working drawings and final plans and specifications and cost estimate.

Initials VPM

If the parties are unable to resolve the Postal Service objections to the working drawings or final plans and specifications or cost estimate within fifteen (15) days after Lessor has received notice of such objection, either party thereafter can terminate this Lease immediately by giving notice to the other party. Upon such termination the Postal Service shall pay Lessor the full actual cost of preparing the working drawings and final plans and specifications and the cost estimate.



Initials VPM

After approval by the Postal Service, a copy of the working drawings and final plans and specifications and cost estimate shall be initialed and dated by the parties and Lessor shall, at Lessee's sole cost and expense, obtain approval of the working drawings and final plans and specifications and the necessary building permits from all appropriate government agencies. Lessor shall exercise due diligence in attempting to obtain such approvals and permits and shall have thirty (30) days from the date the working drawings and final plans and specifications and cost estimates are approved by the Postal Service in which to obtain such government approvals and permits. If such approval and permits are not obtained within the said thirty (30) day period, either party thereafter can terminate this Lease immediately by giving notice to the other party and upon such termination the Postal Service shall pay Lessor for the full actual cost incurred by Lessor in attempting to obtain such government approvals and permits as well as the full actual cost of preparing the working drawings and final plans and specifications and the cost estimate.

Lessor shall commence construction of such improvements as soon as practicable after the necessary government approvals and building permits have been obtained and shall construct the improvements to the leased premises substantially in accordance with the working drawings and final plans and specifications approved by the Postal Service. Lessor shall notify Lessee (i) when the improvements are approximately 50% completed and (ii) when the improvements have been substantially completed but prior to the issuance of a Certificate of Occupancy. Upon the notice provided for in (i) and (ii) above, Lessee shall have the right to enter the leased premises and inspect the improvements so long as such entry does not interfere with Lessor or Lessor's contractor.

Subject to material shortages, labor shortages, strikes, lockouts, boycotts, other labor disruptions, delays by contractors or subcontractors, governmental actions, war, riot, insurrection, rebellion, Act of God, fire, flood, storm, earthquake or any and all causes beyond the reasonable control of Lessor, the improvements shall be completed on or before the commencement date of the term of this Lease as stated in Section 3 hereof.

It is expressly understood and agreed by the parties hereto, that Lessor shall not be required to provide any construction in addition to that set forth in the approved working drawings and final plans and specifications, except as may be necessary in order to secure the necessary governmental permits, and that Lessee shall not delay or impede said construction by making changes or alterations therein.

Said improvements shall be deemed completed and ready for occupancy by Lessee for purposes of this Article when a Certificate of Occupancy has been issued by the County of Los Angeles, California and Lessor has given Lessee written notice of the issuance of such certificate.

Within thirty (30) days of the issuance of such certificate, Lessee shall pay Lessor for the full, actual cost of such improvements including but not limited to the cost of preparing the working drawings, the final plans and specifications, and the cost estimate, the actual costs incurred by Lessor in obtaining the government approvals and permits, and the payments made to contractors and subcontractors performing construction work in connection with the improvements.



Initials
JPM.

3. COMMENCEMENT DATE

The term of this Lease shall commence on July 1, 1981 and end on June 30, 1986. Notwithstanding said commencement date, if for any reason Lessor cannot deliver possession of the premises to Lessee on said date, Lessor shall not be subject to any liability therefor, nor shall such failure affect the validity of this Lease or the obligations of Lessee hereunder or extend the term hereof, but in such case Lessee shall not be obligated to pay rent until possession of the premises is tendered to Lessee; provided, however, that if Lessor shall not have delivered possession of the premises within sixty (60) days from said commencement date, Lessee may, at Lessee's option, by notice in writing to Lessor within ten (10) days thereafter, cancel this Lease, in which event the parties shall be discharged from all obligations hereunder. If Lessee occupies the premises prior to said commencement date, such occupancy shall be subject to all provisions hereof, such occupancy shall not advance the termination date, and Lessee shall pay rent for such period at the initial monthly rates set forth below.

4. LEASE YEAR

The term "lease year" as used herein shall mean each twelve (12) month period beginning as of January 1st following the commencement of this lease as hereinbefore determined in Section 3, unless the date of commencement of this lease shall be on January 1st, in which event, the term "lease year" shall mean the twelve (12) month period beginning as of that January 1st.

5. TERM

The term of this lease shall be for a period of five ( 5 ) years following the commencement of the term as provided in Section 3 hereof.

6. PAYMENT OF RENT

Lessee hereby covenants and agrees to pay rent to Lessor, which said rent shall be as hereinafter provided. The payment of said rent shall begin on the last day of the month in which the commencement date as provided in Section 3 hereof occurs. In the event the commencement date occurs on a day other than the first day of a month, Lessee shall pay rent for the fractional month on a per diem basis (calculated on the basis of a thirty (30) day month) until the last day of the month following the month in which the commencement date occurs. On the last day of the month following the month in which the commencement date occurs and thereafter, the rent shall be paid in equal monthly installments on the last day of each and every month in arrears. Said rent shall be paid at the office of the Lessor, located at 3700 Wilshire Boulevard, Los Angeles, California 90010, or at such other place as may be designated in writing from time to time by Lessor.

7. FIXED RENT

Lessee shall pay to Lessor, without any prior demand and without any deduction or set off (except as may be required by Federal law) rent, commencing on the last day of the month on which the commencement date occurs as provided in Section 3 and 6 hereof and thereafter continuing on the last day of each month of the term of this Lease in the amount of Two Thousand Eight Hundred Twelve Dollars and Fifty Cents ($2,812.50) per month.

4.

Should the term of this lease end on a day other than the last day of a calendar month, then upon the last day of the term, Lessee shall pay rent for the fractional month on a per diem basis (calculated on the basis of a 30 day month).

Initials VPM

Initials VPM

8. RENTAL INCREASE

The parties have been informed and are aware that Lessor is the sublessee of LINCOLN ROSE COMPANY, a California corporation which is assignee of SANDPIPER BUILDERS, a California corporation, and MICHAEL SIMS, who, prior to the assignment, were Lessee under that certain Master Ground Lease dated May 8, 1964, to SANDPIPER BUILDERS, a California corporation and MICHAEL SIMS from the COUNTY OF LOS ANGELES, and that this lease is subject to the terms and conditions of said Master Lease as amended among which terms and conditions are Section 14 - "Rent Negotiations to Meet Legal Requirements", Section 15 - "General Rent Renegotiation and Arbitration", and Section 16 - "Controlled Prices". Sections 14, 15 and 16 of the Master Lease are attached hereto as Exhibit "D".

Lessee herein covenants and agrees that in the event the Board of Supervisors of the County of Los Angeles increases rentals under the provisions of the said Master Lease, as amended, including the increases under Sections 14, 15 and 16, ~~said~~ Lessee ~~will pay its~~ agrees that the fixed rent shall be increased by Lessee's proportionate share of the rental increase, such proportion being based on the ratio of square foot area of the leased premises to the total square foot area of all leased premises in the Shopping Center.

Initials VPM

Initials VPM

9. ALTERATION

Lessee shall not make any change or alteration to the said leased premises, or any part thereof, without the consent of Lessor in writing and the Director, and the County Engineer of the County of Los Angeles, being first had and obtained, except emergency repairs, and any addition or alteration of said premises, except furniture, equipment or trade fixtures. Lessee shall not, by its act of ommission, permit any mechanic's or materialmen's liens to be filed or enforced against said premises.

10. REPAIRS AND MAINTENANCE

Lessee covenants throughout the term hereof at its sole cost and expense to keep the premises, inside and outside, all fixtures and equipment therein, and all signs of Lessee erected outside thereof, in good repair, order and condition, making all repairs thereto as may be required or necessary, all repairs to be of the same quality, design and class as the original work; including, but not limited to, the maintenance of exterior entrances, all glass and plate glass, moulding, partitions, doors, fixtures, equipment and appurtenances and all heating, lighting, air conditioning, plumbing, reasonable periodic painting as may be required, but the provisions of this section shall not require Lessee to make repairs to the structural parts of the building, unless the condition necessitating such repairs to structural parts shall have been caused by Lessee, or its employees, it being agreed, however, that all repairs to plate glass, store fronts and bulkheads are ordinary repairs and within the meaning of this section are not structural parts to the building.

Lessee shall have the benefit of any guaranty or warranty that Lessor is entitled to under the construction contract, and the Lessee shall have the right to call upon the contractor to make such adjustments, replacements or repairs which are required to be made by the contractor under such contract.



Initials VPM

If Lessee refuses or neglects to repair properly the premises as required in a reasonable time after written demand by the Lessor, the Lessor may make such repairs without liability to Lessee for any loss or damage that may accrue to Lessee's merchandise, fixtures, and/or other property, or to the loss of business occasioned by reason thereof; and further, upon completion of such repairs, Lessee shall pay Lessor's incurred costs occasioned by such repairs upon presentation of the bill so incurred. It is further agreed and understood that said billing of costs so incurred shall include interest from the date of completion of the repairs by the Lessor at the rate then fixed by California law when contracts are silent as to the rate of interest to be paid under contracts providing for the payment of interest.

Lessor shall keep the foundations, exterior walls, canopy, roof, downspouts and gutters in good order, condition and repair and if necessary, or required by governmental authority, make modifications or replacements thereof, except that Lessee shall make all such repairs, modifications or replacements which become necessary or desirable by the reason of the negligence of Lessee, its agents, servants or employees, unless and to the extent the damage or loss resulting from such negligence is covered under any policy of insurance and such loss or damage is paid to or on the behalf of Lessor, pursuant to such insurance coverage.

Lessee shall keep the leased premises free and clear of mechanics', materialmen's and other liens, encumbrances and claims created by Lessee and shall at all times hold the Lessor harmless from and against all liens, encumbrances, claims, damages and expenses, including reasonable attorney's fees, caused or contributed to or by any act or omission of Lessee or its employees.

Lessee agrees not to commit any waste upon the leased premises during the term and to quit and surrender the leased premises to the Lessor at the expiration or other termination of the lease in the same condition as when received, reasonable wear and tear, and changes or alterations authorized by the Lessor excepted.

11. UTILITIES

Lessee shall pay when due all charges for heating, lighting, water, power, sewage disposal, telephone services, garbage and trash collections and all other utilities used by it on the leased premises during the term of the lease. All utilities used for the community areas such as electricity for lighting shall be on separate meters and included in the maintenance cost under article 12 hereof.

Title to all utility lines, switchboards, transformer vaults and all other service facilities constructed or installed by Lessee upon the leased premises shall vest in County upon construction or installation.





Initials JPM

12. COMMUNITY PARKING AREA

Lessor shall maintain at all times during the term of this lease a parking area on that portion of the premises on which the Shopping Center is erected, designated as "Community Parking Area" on the plot plan hereto attached and marked Exhibit "B". Said parking area shall be for the joint use of all lessees of the Lessor in the Shopping Center and for the use of the customers, employees, visitors and invitees of said lessees for driveway, walkway or parking purposes.

Lessor shall designate an area in said parking area for the parking of employees' cars. Employees of the Lessee shall be permitted to park their cars only in the area designated for employee parking.

Lessee agrees that trailers and trucks shall pick up and deliver mail and parcels to the premises only through the access roads at the rear of the leased premises and all trucks and trailers will be expeditiously loaded and unloaded and not permitted to park in the rear of the premises except for such period of time as shall reasonably be necessary for loading and unloading.

Lessor shall keep said community parking area, any decor and landscaping as a part thereof in a neat, clean and orderly condition. The Lessor shall at all times, have the right and privilege of making rules and regulations for the orderly use of said area and of determining the nature and extent of the common area except that it must be sufficient at all times to provide unobstructed and adequate automobile parking facilities for Lessee, Lessor, other tenants, occupants, business invitees and eligible users.

Lessee agrees that the entire cost of repairing, maintaining and operating all areas and facilities outside the leased premises which are provided and designated by Lessor for the general use and convenience of the tenants of the Shopping Center, including but not limited to the automobile parking area, the mall area, streets, sidewalks, service drives (herein described as "Community Parking Area"), shall be apportioned among all tenants of the Shopping Center computed on the ratio that the ~~square feet of building area~~ ground floor area occupied by each tenant bears to the total ~~gross square footage~~ of ~~the building area~~ all buildings constituting a part of the Shopping Center. Lessee agrees to pay its proportionate share of such cost, as estimated by Lessor,* who shall be charged with the collection, custody and disbursement of the funds so obtained. with each monthly installment of rent,

Such cost shall include expenditures for labor, supplies and all other expenses incurred in connection with the common area, included but not limited to repairing, restriping, cleaning, policing, insurance, general, special and possessory interest taxes and assessments, lighting, landscaping, decorating, and removing trash, garbage and waste therefrom, so that said community parking area shall be maintained during the term of this lease in a condition substantially similar to its present construction. Statements for these expenses, together with appropriate exhibits showing Lessor's computation of Lessee's prorata share, shall be submitted monthly to Lessee and paid with each succeeding installment of rental.

Initials VPM  Initials VPM  Initials VPM

7

Initials VPM *subject to an adjustment at the end of each calendar year based upon a comparison of sums theretofore paid by Lessee and Lessee's actual pro rata share of such costs

Initials VPM

13. ASSIGNMENT AND SUBLETTING

Lessee agrees not to sublet the premises or any part thereof, not to transfer, assign, hypothecate or encumber this lease or the leasehold estate created hereby or any part thereof, or license any other person to use the premises or any part thereof without first obtaining the written consent of Lessor and any assignment, hypothecation or sublease of the premises or any part thereof, either voluntary or involuntary, whether by operation of law or otherwise without the written consent of Lessor shall be voidable at the option of Lessor. Lessee, however, without such consent may permit as a subordinate part of the operation of its business at the premises the operation of such concessions and license departments as it may from time to time permit in its other locations. Such permission as well as any assignment or subletting is subject to obtaining the necessary approval of the Director of the Department of Small Craft Harbors of the County of Los Angeles as required by the master lease.

Margin note: which consent shall not be unreasonably withheld,
Initials: JPM

14. TAXES AND ASSESSMENTS

Lessor shall pay all general, special and possessory interest taxes and assessments levied against the land, buildings and other improvements making up the Shopping Center, provided however, that Lessee shall pay Lessor for its share of the payment of all such general, special and possessory interest taxes and assessments.* Lessee's share of such costs shall be that fractional part of the total of such costs as the total ground floor areaof the premises herein leased bears to the total ground floor area of all buildings constituting a part of this Center which are not separately assessed. ~~Reimbursement by Lessee to Lessor for its share of such taxes and assessments shall be made on the basis of the tax year commencing with the taking of occupancy and ending the following June 30th. The tax year shall be based upon the period from July 1st to the following June 30th.~~ One-twelfth (1/12th) of the amount shall be payable on the ~~first~~ last day of each month and added to the monthly rental. Lessee shall be required to pay only such pro rata portion of such taxes and assessment up to the end of the term of this lease.

Margin notes: as estimated by Lessor** / last
Margin note: * or 111.11% thereof in the event the County of Los Angeles determines that such reimbursements constitute "gross receipts" of Lessor within the meaning of Lessor's master lease with the County.
Initials: JPM

In the event the leased premises are separately assessed, Lessee shall make all such tax payments direct to the proper tax collecting authority prior to their delinquency. If Lessee shall fail to make such payment, the Lessor may, at its option, pay the same and in such event, the Lessee shall, on demand, pay to the Lessor the amount so paid by Lessor, together with interest and penalties, all such payments shall be deemed to be charged in the nature of rent.

Lessee shall pay all taxes assessed for or during the term hereof against and on any or all property and improvements (including personal property, trade or business fixtures) in possession of Lessee, or installed by or for Lessee upon or about the demised premises. Said obligations are assumed by Lessee whether such assessment is made against Lessee in the first instance or is made against Lessor as the owner of said Shopping Center, either separately or as a part of the assessment of the Shopping Center.

In addition thereto, Lessee shall pay to Lessor its pro rata share of all such taxes or assessments levied on the parking and common area including the improvements thereon, which shall be determined as the percentage which the ground floor area of ~~the building on~~ the demised premises is to the total ground floor area of all buildings in the Center.

Margin note: monthly, as estimated by Lessor,**
Initials: JPM

** subject to an adjustment at the end of each calendar year based upon a comparison of sums theretofore paid by Lessee and Lessee's share of such taxes and assessments.

the demised premises are not separately assessed,

It is agreed between the parties hereto that Lessee shall not be required to pay or discharged any of the following obligations or liabilities ~~should the same become a lien on the premises of which the demised premises are a part;~~ namely, (a) any corporation franchise tax or corporation license fee which may be levied upon or against Lessor or any corporate assignee of the Lessor; (b) any inheritance or estate taxes or tax upon inheritance or the right of succession which may be levied upon or against any estate or interest of the Lessor or its successors or assigns; (c) any tax which may be levied by the United States or the State of California upon or against the income or profits for capital stock of any assignee of the Lessor; and (d) any taxes that may be levied upon or against any personal property of the Lessor or its successors or assigns not located or installed upon or appurtenant to demised premises.

Initials VPM

In the event ~~no such allocation is feasible~~, Lessee ~~then~~ agrees to ~~reimburse~~ pay Lessor a prorata share of the taxes and assessments paid by Lessor in such lease year on the entire Center, and excluding therefrom any increase in such taxes or assessments that is the result of improvements in or additions to the Shopping Center, made either by Lessor or any other Lessee or Lessor after commencement of the lease term (other than those made by or directly attributable to Lessee). In such case Lessee's prorata share shall be computed by using the ratio that ground floor area of ~~the building of~~ the leased premises bears to the total ground floor area of all buildings in the Center.

VPM

15. INDEMNITY CLAUSE AND INSURANCE BY LESSEE

To the extent permitted by Federal law, Lessee shall at all times relieve, indemnify, protect and save harmless Lessor and County and its Boards, officers, agents, and employees from any and all claims and liability, including expenses incurred in defending against the same, for the death of or injury to person or damage to property, including property owned or controlled by or in the possession of Lessor or County, and any of its officers, agents, or employees, that may in whole or in part arise from or be caused by (a) the operation, maintenance, use or occupation of the herein leased premises by Lessee, (b) the acts, omission or negligence of Lessee, its agents, officers, employees or permitees, or (c) the failure of Lessee to comply with any provision of this lease or any applicable law, ordinance, rule or regulation; the obligation of Lessee to so relieve, indemnify, protect and save harmless Lessor and County, and each of its Boards, officers, and employees, shall continue during any periods of occupancy or of holding over by Lessee, its agents, officers, employees or permitees, beyond the expiration or other termination of this lease.

Initials VPM

Initial VPW

Lessee shall maintain in full force and effect during the term of this lease, comprehensive general liability insurance with bodily injury and property damage liability limits of not less than ~~One Hundred Thousand Dollars ($100,000.00) per person and~~ Five Hundred Thousand Dollars ($500,000.00) per occurrence for death or bodily injury and One Hundred Thousand Dollars ($100,000.00) per occurrence for property damage; and Lessee agrees that Lessor and County, its Board of Supervisors and members thereof, and County's and Board's officers, agents and employees, shall be named as additional insured under such liability insurance policy or policies. A duplicate policy evidencing such insurance coverage shall be filed with Director within (10) ten days of the execution of this lease by Lessor and prior to any entry upon the premises herein leased, and said policy shall provide that such insurance coverage shall not be cancelled or reduced without at least thirty (30) days prior written notice to Lessor and Director. At least thirty (30) days prior to the expiration of any such policy, a policy showing that such insurance coverage has been renewed or extended shall be filed with Lessor and Director.

Initials VPM

Initials VPM

Th[illegible] [illegible]ts of casualty insurance [illegible] this Section required [illegible] be subject to renegotiation at the same time and in the same manner as the amounts of rent hereunder, under the Master Lease.

Lessee shall at its sole expense maintain fire and extended coverage insurance, including vandalism, malicious mischief and other perils, with coverage on a replacement cost basis upon its fixtures and equipment and upon the leasehold improvements described in Section 2 hereof and any alterations or additions thereto.

Lessee may, at its option, bring its obligation to insure under this Article within the coverage of any so-called self-insured policy or policies of insurance maintained by Lessee which it may now or hereafter carry, provided, however, that the interest of Lessor and the County of Los Angeles shall thereupon be as fully protected as they would be otherwise if this option to Lessee to use self-insured policies of insurance were not permitted. Lessee shall indemnify and hold Lessor harmless from any loss, liability, costs, damages and expenses, including reasonable attorney's fees, including without limitation reasonable attorney's fees to enforce this indemnity, resulting from any claim or demand or action or cause of action by the County of Los Angeles as a result of, arising out of or related in any manner to, the self insurance provision of this Article. All policies of insurance shall be issued in the name of Lessee and naming the Lessor and the County of Los Angeles as an additional insured, and for the mutual and joint benefit and protection of the parties and such policies of insurance or copies thereof shall be delivered to the Lessor and County of Los Angeles, and as often as any such policy or policies shall expire or terminate, renewal or additional policies shall be procured and maintained by Lessee in like manner and to like extent. All such policies shall contain a clause or endorsement to the effect that they may not be terminated or materially amended except after thirty (30) days written notice thereof to Lessor or to the County of Los Angeles.

16. INSURANCE BY LESSOR

Lessor shall procure at its own expense during the terms of this lease, fire, windstorm and extended coverage insurance on the buildings and improvements composing the Shopping Center; provided, however, Lessee shall ~~reimburse Lessor for~~ its share of the actual ~~net~~ cost ~~and expense~~ to Lessor of such insurance for that lease years Lessee's share of such cost shall be that fractional part of the total of such cost as the total ground floor area of the premises herein leased bears to the total ground floor area of all buildings and structures constituting a part of this Shopping Center.

[Left margin insertion:] pay, based on Lessor's estimate,** with each monthly installment of rent.

[Right margin insertion:] or 111.1% thereof in the event the County of Los Angeles determines that such reimbursements constitute "gross receipts" of Lessor within the meaning of Lessor's master lease with the County

Initials VPM

Lessor shall make not a claim for recovery against Lessee and expressly waives any right of recovery against Lessee for damage to or loss of the leased premises or improvements thereon which damage or loss may arise by fire or any other peril covered by any policy of insurance containing a waiver of subrogation right against the Lessee in which said policy the Lessor is or may be the assured and when said loss is caused by or results from any acts of carelessness or negligence of the Lessee, its officers, agents, employees or other persons under its control.

Lessor further covenants and agrees to apply to its insurance carriers for waiver of subrogation against Lessee, its agents and employees and to obtain same if Lessor's insurers will issue such waiver without cost; provided however, that if Lessor's insurers will not issue such waiver without cost but will issue same for a charge and the Lessee shall elect to pay such charge, Lessor will obtain such waiver and charge the additional cost thereof to Lessee.

10

Initials VPM

**subject to an adjustment at the end of each calendar year based upon a comparison of sums theretofore paid by Lessee and Lessee's actual share of such costs.

Initials VPM

17. DEFAULT BY LESSEE

A. The occurrence of any of the following shall constitute a material default and breach of this Lease by Lessee whether caused, omitted or performed by Lessee or any assignee, sublessee, licensee or concessionaire of Lessee:

(i) Any failure by Lessee to pay the rent or to make any other payment required to be made by Lessee hereunder (whether payable directly to Lessor or to a third party) where, upon the initial occurrence of such failure, such failure continues for ten (10) days after written notice thereof by Lessor to Lessee, and, upon any subsequent failure, such failure continues for three (3) days after written notice thereof by Lessor to Lessee.

(ii) The abandonment or vacation of the leased premises by Lessee (absence from the leased premises for ten (10) consecutive days or more shall conclusively be deemed an abandonment or vacation of the leased premises).

(iii) A failure by Lessee to observe and perform any other term, covenant, condition or provision of this Lease to be observed or performed by Lessee, where such failure continues for ten (10) days after written notice thereof by Lessor to Lessee; provided, however, that if the nature of such default is such that the same cannot reasonably be cured within such ten (10) day period, Lessee shall not be deemed to be in default, if Lessee shall, within such period, commence such cure and thereafter diligently prosecute the same to completion. If the leased premises require emergency repairs, which Lessee is then unable or unwilling to make, Lessor may, without notice, elect to make such repairs for the account and at the sole cost and expense of Lessee. Failure of Lessee (or any of Lessee's sublessees, licensees, assignees, concessionaires, independent departments, or any other person or entity doing business within the leased premises) to keep, maintain, or retain any records required of it (them) for purposes of computing any rental payment hereunder shall, in all cases, at Lessor's option, constitute a material breach of this Lease. Notwithstanding the provisions of this paragraph 17 of the Lease, if Lessee is required to comply with any governmental regulation or order within a period less than that to which Lessee would otherwise be entitled to notice hereunder, Lessee shall not be entitled to notice from Lessor beyond the period within which such compliance may be required by such regulation or order.

B. In the event of any such default by Lessee, then, in addition to any other remedy(ies) available to Lessor at law or equity, Lessor shall have the immediate option to terminate this Lease and all rights of Lessee hereunder by giving written notice of such intention to terminate in the manner specified in Paragraph 49 of this Lease. In the event that Lessor shall elect to so terminate this Lease, then Lessor may recover from Lessee:

(i) The worth at the time of award of any unpaid rent which had been earned at the time of such termination; plus

(ii) The worth at the time of award of the amount by which the unpaid rent, which would have been earned after termination until the time of award, exceeds the amount of such rental loss Lessee proves could have been reasonably avoided; plus



Initials
VPA

(iii) The worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that Lessee proves could be reasonably avoided; plus

(iv) Any other amount necessary to compensate Lessor for all the detriment proximately caused by Lessee's failure to perform its obligations under this Lease or which in the ordinary course of events would be likely to result therefrom.

As used in subparagraphs (i) and (ii) above, the "worth at the time of award" is computed by allowing interest at the rate of ten percent (10%) per annum. As used in subparagraph (iii) above, the "worth at the time of award" is computed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award plus one percent (1%).

C. In the event of any abandonment by Lessee, Lessor shall also have the right, but not the obligation, with or without terminating this Lease, to re-enter the leased premises without terminating Lessee's right to possession and remove any persons and/or property from the leased premises then present or occupying them; any such property may be removed and stored in a public warehouse or elsewhere at the sole risk of, and at the sole cost and expense of, and for the account of, Lessee.

D. Even if Lessee has breached this Lease and abandoned the leased premises, this Lease shall continue in effect for so long as the Lessor shall not terminate this Lease as provided herein or terminate Lessee's right to possession, and Lessor may, during the entire time of any such period of default or abandonment, enforce all of its rights and remedies under this Lease including, without limitation, the right to recover all rent and other charges provided for herein as they become due.

E. No re-entry or taking possession of the leased premises by Lessor pursuant to subparagraph E of this Paragraph 17, nor the appointment of a receiver upon the initiation of Lessor to protect Lessor's interest under this Lease, shall be construed as an election by Lessor to terminate the Lease, nor shall it terminate Lessor's right to possession of the leased premises; unless a written notice of such intention be given to Lessee or unless the termination thereof be decreed by a court of competent jurisdiction. In all other instances, any re-entry by Lessor or taking possession of the leased premises by Lessor shall be deemed to be acts of maintenance or preservation to or for the leased premises by Lessor or in an effort to relet the leased premises. Notwithstanding the foregoing, however, Lessor may, and hereby reserves the right to terminate this Lease and Lessee's right to possession of the leased premises at any time during any period of any breach or abandonment by Lessee.



Initials VAM

F. Any sum accruing to Lessor under the terms and provisions of this Lease which shall not be paid when due shall bear interest at the maximum lawful rate from the date the same becomes due and payable by the terms and provisions hereof until paid, unless otherwise specifically provided in this Lease. Each of Lessor's rights and remedies found herein shall be cumulative and not exclusive and shall be in addition to any and all other rights of Lessor.

18. DEFAULT BY LESSOR

Lessor shall in no event be charged with default in the performance of any of its obligations hereunder unless and until Lessor shall have failed to perform such obligations within thirty (30) days (or such additional time as is reasonably required to correct any such defaults) after notice by Lessee to Lessor properly specifying wherein Lessor has failed to perform any such obligations.

19. WAIVER

One or more waivers of any covenants, terms or conditions of this lease by either party shall not be construed by the other party as a waiver of a subsequent breach of the same covenant, term or condition. The consent or approval of either party to or of any act by the other party of a nature requiring consent or approval shall not be deemed to waive or render unnecessary consent to or approval of any subsequent similar act.

20. LESSOR'S RIGHT TO HAVE INDEPENDENT OPERATOR

At any time hereafter, if Lessor determines, in its sole judgment, that the best interest of the Shopping Center will be served by having the parking areas operated and maintained by a person, firm, or corporation other than Lessor, Lessor shall have the right to select and license or lease to any person, firm, or corporation the operation and maintenance of the parking areas on such terms and conditions and for such time as Lessor shall, in its sole judgment, deem reasonable and proper. Any such lease, license agreement, or contract shall require the lessee, licensee, or operator to be bound by and to perform all the obligations of Lessor relative to the maintenance and operation of the parking areas and shall make the lessee, licensee, or operator responsible to Lessee and all other tenants in the Shopping Center.

21. LESSEE'S LIABILITY FOR ADVANCES BY LESSOR *

In the event of Lessee's breach of any covenant in this lease, Lessor may at any time, without notice, cure such breach for the account and at the expense of Lessee. If Lessor at any time, by reason of such breach, is compelled to incur any expense, including reasonable attorney's fees, in instituting, prosecuting, or defending any actions or proceedings to enforce Lessor's rights under this lease or otherwise, the sum or sums so paid by Lessor, with all interest, costs, and damages shall be deemed to be additional rent under this lease and shall be due from Lessee to Lessor on the first day of the month following the incurring of such expenses.

Initials VPM



* To the extent Federal law may permit, the following provision of this Article shall apply.

Initials VPM

22. ESTOPPEL CERTIFICATES

Lessee shall, at any time, and from time to time upon not less than fifteen (15) days' prior request by Lessor, execute, acknowledge, and deliver to Lessor a statement in writing certifying that this lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and, if so, the dates to which the fixed rent and any other charges have been paid in advance, it being intended that any such statement delivered pursuant to this subparagraph may be relied upon by any prospective purchaser or encumbrancer (including assignees) of the premises.

23. ATTORNEY'S FEES, COSTS AND EXPENSES*

In the event either party brings or commences legal proceedings to enforce any of the terms of this lease, the successful party in such action shall then be entitled to receive and shall receive from the other of said parties in every such action commenced a reasonable sum for attorney's fees and costs to be fixed by the court in the same action.

Should either Lessor or Lessee be, without fault on its part, made a party to any litigation instituted by or against the other by reason of this lease, then said party so named as a party to said litigation shall be entitled to receive from the other party all costs, expenses and reasonable attorney's fees incurred in, or in connection with such litigation.

In the event Lessee is in default in the payment of rent and/or other charges on more than one separate occassion during any lease year, and Lessor is required to give notice to Lessee of each such default(s), and Lessee thereafter pays the rent and/or other charges due in response to such notice(s), Lessee shall pay to Lessor, as additional rent, the sum of $125.00 for the second and each succeeding notice given in such lease year to reimburse Lessor for its attorneys' fees and costs incurred in the preparation and service of the second and succeeding notice(s). Such sum shall be payable with the next succeeding installment of rent due after Lessee has brought the rent and other charges current in response to such notice(s).

24. EFFECT OF LESSOR'S CONVEYANCE

If during the term of this lease, Lessor shall sell its interest in the Shopping Center, or the premises, then from and after the effective date of the sale, Lessor shall be released and discharged from any and all obligations and responsibilities under this lease except those already accrued.

14

Initials VPM

* To the extent Federal law may permit, the following provision of this Article shall apply.

Initials VPM

25. DAMAGE OR DESTRUCTION

Lessor's obligation to repair or rebuild.

(a) Lessee's Premises. In case the premises shall be partially or totally destroyed by fire or other casualty insurable under full standard extended risk insurance so as to become partially or totally untenantable, the same shall be repaired or rebuilt as speedily as possible at the expense of Lessor, unless Lessor shall elect not to repair or rebuild as provided in subparagraph (b) and, should there be a substantial interference with Lessee's business, a just and proportionate part of the fixed rent shall be abated until the premises are repaired or rebuilt.

(b) If (1) more than 33 1/3% of the demised premises shall be destroyed or so damaged by fire or other casualty insurable under full standard extended risk insurance as to become wholly untenantable, or (2) the premises shall be partially or totally destroyed by a cause or casualty other than those covered by fire and extended coverage risk insurance, then in either event, Lessor may, if so elects, rebuild or put said building in good condition and fit or occupancy within a reasonable time after such destruction or damage, or it may give notice terminating this lease as of a date not later than 30 days after any such damage or destruction. If Lessor elects to repair or rebuild the building, it shall within fifteen (15) days after such damage or destruction, give Lessee notice of its intention to repair or rebuild and then shall proceed with reasonable speed to make the repairs or to rebuild. Unless Lessor elects to terminate this lease, the lease shall remain in full force and effect and the parties waive the provisions of any law to the contrary.

26. LESSOR'S AND LESSEE'S WORK IF PREMISES REBUILT

If Lessor should elect to be obligated to repair or rebuild because of any damage or destruction, Lessor's obligation shall be limited to the basic building, store front, interior work as covered in Exhibit C, and that part of Lessee's work shall fully repair or replace all exterior signs, trade fixtures, equipment, display cases, and other installations originally installed by Lessee at its expense.

27. EXCUSE FOR NONPERFORMANCE

Either party hereto shall be excused from performing any of or all of its obligations hereunder with respect to any repair and construction work required under the terms of this lease for so long as the performance of any such



Initials

VPM

obligations is prevented or delayed by act of God, fire, floods, explosion, the elements of war, invasion, insurrection, riot, mob violence, sabotage, inability to procure labor, equipment, facilities, materials or supplies in the open market, failure of transportation, strikes, lockouts, action by labor unions, or laws or order of governmental agencies, or any other cause whether similar or dissimilar to the foregoing which is not within the reasonable control of such party.

28. CONDEMNATION

If title to all of the premises is taken for any public or quasi-public use under any statute, or by right of eminent domain, or by private purchase in lieu of eminent domain, or if title of so much of the premises is so taken that a reasonable amount of reconstruction of the premises will not result in the premises' being a practical improvement and reasonably suitable for Lessee's continued occupancy for the uses and purposes for which the premises are leased, then, in either event, this lease shall terminate on the date that possession of the premises, or part of the premises, is taken.

If any part of the premises shall be so taken and the remaining part of the premises (after reconstruction of the then existing building in which the premises are located) is reasonably suitable for Lessee's continued occupancy for the purposes and uses for which the premises are leased, this lease shall, as to the part so taken, terminate as of the date that possession of such part is taken, and the fixed minimum rent shall be reduced in the same proportion that the floor area of the portion of the premises so taken (less any additions to premises by reconstruction) bears to the original floor area of the premises.

No compensation awarded or paid upon a total or partial taking of the premises shall belong to the Lessee; provided, however, that Lessee shall be entitled to any award made to Lessee for loss of business or depreciation to and cost of removal of stock and fixtures.

If twenty (20) percent or more of the total of the parking area in the Shopping Center is taken for any public or quasi-public use under any statute or by right of eminent domain or by private purchase in lieu of eminent domain, either with or independent of the taking of any portion of the premises leased to Lessee. If Lessor within one year after such taking does not substitute for the parking area so condemned an equal number of parking spaces in a location reasonably accessible to the premises leased to Lessee, then Lessee, upon ten (10) days' notice to Lessor, shall have the option to terminate this lease, and if before the effective date set forth in that notice substitute parking spaces shall not have been provided, this lease shall terminate, and rent shall be adjusted to the date of such termination.

29. SIGNS, ADVERTISING AWNINGS, UTILITY LINES, AERIALS AND ANTENNAE

After approval by the Director and Lessor, Lessee shall have the right to install, maintain, and display upon the leased premises such inside and outside signs that Lessee may deem necessary or desirable for carrying on its business. Such signs shall be the property of the Lessee and



Initials VPM