may be removed by it at any time during the term of this lease. No signs or awnings shall be erected or maintained upon the leased premises (other than inside any buildings constructed by Lessee or Sublessee), except such signs as shown of the business or profession of Lessee or Sublessee. All such signs must be approved by the Director of Small Craft Harbors and Lessor. All utility lines shall be underground. Aerials and antennae shall conform to the minimum standards of construction and architectural treatment prescribed by the County of Los Angeles.

30. WARRANTY AND QUIET ENJOYMENT

The Lessor covenants and warrants that ~~prior to the commencement of construction of the building and improvements to be erected for Lessee's use, that~~ Lessor shall have the full ~~right and~~ authority to enter into this lease for the ~~full term set forth herein, and~~ Lessee upon performance of its obligations hereunder shall have the quiet and uninterrupted possession of said premises throughout the term of this lease.

31. LEASE BINDING ON HEIRS, SUCCESSORS AND ASSIGNS

This lease shall be binding upon and inure to the benefit of the parties hereto; their heirs, legal representatives, successors and assigns.

32. HAZARDOUS SUBSTANCES

Except as accepted and processed in accordance with normal Postal Service operations and procedures, no goods, merchandise, or material shall be kept, stored or sold in or on said leased premises which are in any way explosive or hazardous; and no offensive or dangerous trade, business or occupation shall be carried on therein or thereon, and nothing shall be done on said premises, which will cause an increase in the rate of or cause a suspension or cancellation of the insurance upon said or other premises and the improvements thereon.

No machinery or apparatus shall be used or operated on said leased premises which will in any way injure said premises, or improvements thereon, or adjacent or other premises, or improvements thereon; provided, however, that nothing in this section contained shall preclude Lessee from bringing, keeping or using on or about said premises such materials, supplies, equipment and machinery as are appropriate or customary in carrying on its said business, or from carrying on its business in all usual respects.

Open flame welding or burning, gasoline or other fuel storage is expressly prohibited without prior written consent of the Director or Lessor.

33. NUISANCE

Lessee shall not permit the property hereby leased to be used for any unlawful purpose and shall not perform, permit or suffer any act of omission or commission upon or about said property or any buildings or construction thereon which would result in a nuisance or a violation of the laws and ordinances of the United States, State of California, or the County of Los Angeles, as the same may be now or hereafter in force and effect.



INITIALS VAM

34. RESERVATIONS

Lessee expressly agrees that this lease and all rights hereunder shall be subject to all prior exceptions, reservations, leases, licenses, easements, and rights-of-way of record now existing in, to, over or affecting the leased premises for any purpose whatsoever.

Lessee expressly agrees that this lease and all rights hereunder shall be subject to conditions, covenants, restrictions, rights-of-way and easements as shown on Los Angeles County Assessor's Map No. 88, recorded in Book 1, Pages 53 to 70 inclusive of Assessor's Maps in the office of the Recorder of the County of Los Angeles, including but not limited to the right of the County of Los Angeles to install, construct, maintain, service and operate sanitary sewers, fire access roads, storm drains, drainage facilities, electric power lines, telephone lines and access and harbor utility easements, together with the right of the County of convey such easements and transfer such rights to other.

35. TIME

Time is of the essence of this lease and applies to all times, restrictions, conditions and limitations contained herein; this lease shall bind Lessee and its Sublessees assigns, successors, heirs, administrators or legal representatives, as the case may be.

36. MONTH TO MONTH TENANCY

If Lessee holds over after the expiration of this lease for any cause, such holding over shall be deemed to be a tenancy from month to month only, at the same rental per month and upon the same terms, conditions, restrictions and provisions as herein contained.

Such holding over shall include any time employed by Lessee to remove machines, appliances and other equipment during the thirty (30) day period hereinafter provided for such removal.

37. EQUAL OPPORTUNITY CLAUSE

(The following clause is applicable unless this contract is exempt under the rules, regulations, and relevant orders of the Secretary of Labor (41 CFR, ch. 60).)

During the performance of this contract, the Lessor agrees as follows:

(a) The Lessor will not discriminate against any employee or applicant for employment because of race, color, religion or national origin. The Lessor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex or national origin. Such action shall include, but not be limited to, the following: Employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The Lessor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the Contracting Officer setting forth the provisions of this Equal Opportunity clause.

Initials

(b) The Lessor will, in all solicitations or advertisements for employees placed by or on behalf of the Lessor state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex or national origin.

(c) The Lessor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the agency Contracting Officer, advising the labor union or workers' representative of the Lessor's commitments under this Equal Opportunity clause, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(d) The Lessor will comply with all provisions of Executive Order No. 11246 of September 24, 1965, and of the rules, regulations, and relevant order of the Secretary of Labor.

(e) The Lessor will furnish all information and reports required by Executive Order No. 11246 of September 24, 1965, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(f) In the event of the Lessor's noncompliance with the Equal Opportunity clause of this contract or with any of the said rules, regulations, or orders, this contract may be canceled, terminated, or suspended, in whole or in part, and the Lessor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order No. 11246 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order No. 11246 of September 24, 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

(g) The Lessor will include the provisions of paragraphs (a) through (g) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to section 204 of Executive Order No. 11246 of September 24, 1965, so that such provisions will be binding upon each subcontractor or vendor. The Lessor will take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing such provisions, including sanctions for noncompliance: Provided, however, That in the event the Lessor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the contracting agency, the Lessor may request the United States to enter into such litigation to protect the interests of the United States.

38. OFFICIALS NOT TO BENEFIT

No member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this agreement or to any benefit to arise therefrom. Nothing, however, herein contained shall be construed to extend to any incorporated company, if the agreement be for the general benefit of such corporation or company.



Initials

39. OVERTIME

(a) The Lessor shall not require or permit any laborer or mechanic in any workweek in which he is employed on any work under this Agreement to work in excess of 8 hours in any calendar day or in excess of 40 hours in such workweek on work subject to the provisions of the Contract Work Hours and Safety Standards Act (40 U.S.C. 327-333) unless such laborer or mechanic receives compensation at a rate not less than one and one-half times his basic rate of pay for all such hours worked in excess of 8 hours in any calendar day or in excess of 40 hours in such workweek, whichever is the greater number of overtime hours. The "basic rate of pay", as used in this clause, shall be the amount paid per hour, exclusive of the Lessor's contribution or cost for fringe benefits and any cash payment made in lieu of providing fringe benefits, or the basic hourly rate contained in the wage determination (if applicable), whichever is greater.



Initials VPM

(b) In the event of any violation of the provisions of paragraph (a), the Lessor shall be liable to any affected employee for any amounts due, and to the Postal Service for liquidated damages. Such liquidated damages shall be computed with respect to each individual laborer or mechanic employed in violation of the provisions of paragraph (a) in the sum of $10 for each calendar day on which employee was required or permited to be employed on such work in excess of 8 hours or in excess of the standard workweek of 40 hours without payment of the overtime wages required by paragraph (a).

(c) The Contracting Officer may withhold from the Lessor, from any moneys payable under the lease, such sums as may administratively be determined to be necessary to satisfy any liabilities of the Lessor for unpaid wages and liquidated damages.

40. HEALTH AND SAFETY STANDARDS

(a) To the extent this agreement is for construction, alteration, and/or repair, including painting and decorating, the Lessor shall not require any laborer or mechanic employed in the performance of this agreement to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his health or safety as determined under standards promulgated by the Secretary of Labor under the authority of 40 U.S.C. 333 (see 29 CFR Part 1518).

(b) In the event it is determined that the Lessor has failed to comply with this provision regarding health and safety standards, the Postal Service, in its discretion, may cancel this agreement, contract for the balance of the work or term, and charge to the Lessor the additional cost, if any, incurred thereby.

41. SUBCONTRACT PROVISIONS

The Lessor agrees to insert Sections 40, 41 and 42 of this Lease in all subcontracts hereunder and to require their inclusion in all subcontracts of lower tier. The term "Lessor" as used in these clauses in any subcontract shall be deemed to refer to the subcontractor.

42. CLEAN AIR ACT; WATER POLLUTION CONTROL ACT

The Lessor agrees as follows:

(a) To comply with all the requirements of Section 114 of the Clean Air Act, as amended (42 U.S.C. 1857, et seq., as amended by Public Law 91604) and Section 308 of the Federal Water Pollution Control Act (33 U.S.C. 1251, as amended by Public Law 92-500), respectively and all regulations and guidelines issued hereunder.

(b) That no portion of the work required by this contract will be performed in a facility listed on the Environmental Protection Agency (EPA) List of Violating Facilities on the date when this contract was awarded, unless and until the EPA removes the name of such facility from such listing.



Initials VPM

(c) To notify promptly the Contracting Officer of the receipt of any communication from the EPA indicating that any facility proposed for or in use under this contract is under consideration to be listed on the EPA List of Violating Facilities.

(d) To insert the substance (i) of any Clean Air and Water Certification contained in this solicitation and (ii) of the provisions of this clause into every nonexempt subcontract, including this paragraph, and to take such steps as the Postal Service may direct as a means of enforcing these provisions.

(e) That in the event the Contractor fails to comply with all the above requirements, his right to perform may be canceled, terminated for default, or suspended for such failure, in whole or in part.

43. EXEMPTION OF LESSOR FROM LIABILITY

Lessor shall not be liable to Lessee or to any other person whatsoever for any damage occasioned by plumbing, gas, water, steam, sprinkler, or other pipe and sewage system, or by the bursting, running, or leaking of any tank, washstand, closet, or waste or other pipes, in or about the leased premises or the building or which they are a part; or for any damage occasioned by water being upon or coming through the roof, skylight, vent, trapdoor, or otherwise, or for any damage arising from any acts or neglect of co-lessees or other occupants of the Center or of adjacent property, or the public. Lessor shall not be liable in damage or otherwise for any failure to furnish, or any interruption of service of any water, gas, electricity, heated water, steam, or chilled water, caused by fire, accident, riot, strike, labor disputes, acts of God, the making of any repairs or improvements, or other causes beyond the control of Lessor. Lessee recognizes that the Shopping Center is to be constructed in a number of stages and that other additions, replacements, and repairs to the Shopping Center will be made, and Lessee agrees that any construction work, alterations, or repairs undertaken by Lessor or anyone else in the Shopping Center after the start of the lease term shall not entitle Lessee to any rebate of rent or subject Lessor to liability for any loss of occupation or of quiet enjoyment of the leased premises, accommodation areas, parking areas, or loading areas.

44. COMPLIANCE WITH GOVERNMENT REGULATIONS.

Lessee shall conform to and abide by the rules and regulations adopted by the Los Angeles County or the Department of Small Craft Harbors of Los Angeles County all ordinances of the County of Los Angeles, and all statutes and administrative rules and regulations relating to use occupancy of the Federal Government and the State of California, applicable thereto, and where permits are required for such operations, the same must be first had and obtained from the regulatory body having jurisdiction thereof, before such operations are undertaken.

22

Initials
NPM

It is specifically agreed as a condition of this lease that Lessee, its employees and other occupants of the leased premises, and all persons employed and permitted in or about said premises by Lessee, shall, at all times in connection with the use and occupancy of said premises and every part thereof, fully comply and faithfully carry out laws, ordinances and mandates of the Federal Government, the State of California, the County of Los Angeles, and the Municipal Government, and all other public authority, applicable to the use or occupancy of said leased premises, and will keep and comply with all conditions, regulations and restrictions imposed on the use and occupancy of said premises, and will comply with all regulations of all judicial, administrative or governmental bodies having jurisdiction over the use and occupancy of said premises, and Lessee shall neither do nor permit any act in, or about or in connection with said premises which shall be in any manner immoral, disorderly, result in a nuisance, or be in violation of said laws, ordinances, rules or mandates.

45. RIGHT OF ENTRY

Lessee shall permit Lessor and the County of Los Angeles and their respective duly authorized representatives or agents to enter upon the leased premises at any and all reasonable times during the term hereof, for the purpose of determining whether or not Lessee is complying with the terms and conditions of this lease, or for any other purpose incidental to the rights of Lessor and said County hereunder.

46. COUNTY OF LOS ANGELES MASTER LESSOR

It is understood and agreed between the Lessor and Lessee herein that the lease entered into hereunder is subject to the approval of the Director of the Department of Small Craft Harbors; and in the event that the Director shall fail to approve the within lease within ninety (90) days from the date hereof, said lease, at the option of Lessor, shall be deemed to be null and void from the beginning, and all sums paid by one party to the other hereunder shall be refunded.

47. SUBORDINATION

Lessee agrees that this Lease shall be subject and subordinate to any mortgage or trust deed that may hereafter be placed upon the leased premises or upon the real property of which the leased premises is a part, and to any and all advances to be made thereunder, and to the interest thereon, and all renewals, replacements and extensions thereof. If any mortgagee or trustee elects to waive priority of its lien over this Lease, upon written notice by said mortgage or trustee to Lessee of such election, this Lease shall be deemed to be superior to the lien of such mortgage or deed of trust whether the Lease was made prior or subsequent to the date of such mortgage or trust deed. Lessee shall upon written demand of Lessor, execute such instruments as may be required at any time and from time to time to subordinate the rights and interests of Lessee under this lease to the lien of any mortgage or deed of trust at any time placed upon the leased premises or upon the real property of which the leased premises is a part.



Initials VRM

Notwithstanding anything contained herein to the contrary, in order to aid Lessor in the financing of the construction of said building and improvements, Lessee undertakes and agrees that in the event that the proposed mortgagee or beneficiary under any construction loan or issuing or proposing to issue a permanent mortgage loan commitment in connection therewith so requires or demands that it will enter into an amendment of the Lease in order to vary the language thereof in order to satisfy such requirements upon the express condition and understanding, however, that such variance in language will not be such as to alter in any way the rental obligations of Lessee under the Lease, and upon the further condition that such variance shall not substantially alter or impair any of the other rights or obligations of Lessee under the Lease.

48. NOTICES

Any notice or demand to be given hereunder shall be served by mailing same by certified mail in a sealed envelope postage prepaid, to Lessee addressed to Lessee's principal place of business at:

Los Angeles Field Office
U. S. Postal Service, RE & Bldgs. Dept.
Inglewood, Ca. 90311

and if to Lessor, addressed to Lessor at BENEFICIAL STANDARD PROPERTIES, INC., Attn: Vice President, Beneficial Plaza, 3700 Wilshire Boulevard, Los Angeles, California 90010 or such other place as the parties hereto may designate in writing from time to time.

49. OPTION TO EXTEND

(a) Lessor hereby grants to Lessee an option to extend the term of this Lease for one additional three (3) year term (the "Option Period") at a monthly rent of Three Thousand Five Hundred Sixty Two Dollars and Fifty Cents ($3,562.50), but otherwise on the same terms and conditions as set forth for the primary term of this Lease, except for the provisions of this Article 49 relating to the option to extend the term of this Lease.

(b) The option granted hereunder shall be exercised by Lessee by delivery of written notice to that effect to Lessor not less than One Hundred Eighty (180) days prior to the expiration of the primary term of this Lease. The option hereby granted may not be exercised at any time during which Lessee is in default under any of the terms, covenants, conditions and/or provisions of this Lease. Similarly, the Option Period shall automatically be forfeited if Lessee is in default under any of the terms, covenants, conditions and/or provisions of this Lease at the time such Option Period is to commence.

24

Initials

50. MISCELLANEOUS PROVISIONS

Whenever the singular number is used in this Lease and when required by the context, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders, and the word "person" shall include corporation, firm or association. If there be more than one Lessee, the obligations imposed under this Lease upon Lessee shall be joint and several.

This instrument contains all of the agreements and conditions made between the parties to this Lease and may not be modified orally or in any other manner than by an agreement in writing signed by all the parties to this Lease or their respective successors in interest.

Each term and each provision of this Lease performable by Lessee shall be construed to be both a covenant and a condition.

Except as otherwise expressly stated, each payment(s) required to be made by Lessee shall be in addition to and not in substitution for other payments to be made by Lessee.

Lessee warrants that it has not had any dealings with any realtor, broker, agent, or finder, in connection with the negotiation of this lease, excepting only None, and Lessee agrees to pay and to hold harmless Lessor, from any and all costs, expense, or liability for any compensations, commissions or charges claimed by any realtor, broker, agent, or finder with respect to this lease or the negotiation of this lease, other than those named herein.

For the purposes of complying with and satisfying the so-called "Rule against Perpetuities", it is understood and agreed that this lease, should the commencement date not occur prior to December 31, 1985 shall become automatically null and void and of no further force or effect whatsoever.

The obligation of Lessee to pay its pro rata share of community parking area expenses, taxes and assessments and fire, windstorm and extended coverage insurance, under this Lease shall collectively constitute an obligation to pay rent, and the failure by Lessee to pay any of such charges when due shall constitute a default in the payment of rent.

IN WITNESS WHEREOF, the parties hereto have executed this Lease in triplicate, as of the date first above written.

BENEFICIAL STANDARD PROPERTIES, INC., a California corporation (formerly known as Benefic Realty Company

UNITED STATES POSTAL SERVICE

By [signature]

By ____________________

Harry Epstein, Its President

By [signature]
Marcus Loew, Authorized Agent

"LESSEE" "LESSOR"

LEGAL DESCRIPTION

Marina Del Rey
Lease Parcel No. 50R (Revised) (1st Amendment)

Parcels 787 to 805 inclusive, in the County of Los Angeles, State of California, as shown on Los Angeles County Assessor's Map No. 88, recorded in Book 1, pages 53 to 70 inclusive, of Assessor's Maps, in the office of the Recorder of said county.

Excepting therefrom that portion thereof within the following described boundaries:

Beginning at the westerly corner of said Parcel 796; thence northeasterly along the northwesterly line of said last mentioned parcel a distance of 140.00 feet; thence southeasterly at right angles from said northwesterly line 99.12 feet to the southeasterly boundary of said last mentioned parcel; thence southwesterly, westerly and northwesterly along the southeasterly, southerly, and southwesterly boundaries of said last mentioned parcel to the point of beginning.

Also excepting therefrom that portion thereof within the following described boundaries:

Commencing at the northeasterly terminus of a curve concave to the east, having a radius of 30 feet, tangent to a line parallel with and 2.5 feet southwesterly, measured at right angles, from the straight line in the southwesterly boundary of said Parcel 787 and reverse at the northeasterly terminus thereof to a curve concentric with and 3 feet northwesterly, measured radially, from that certain 1540 foot radius curve in the northwesterly boundary of said last mentioned parcel; thence southeasterly along a radial of said 30 foot radius curve 3.00 feet to a point in said northwesterly boundary, said point being the true point of beginning; thence northeasterly along said northwesterly boundary to a line parallel with and 2 feet northeasterly, measured at right angles, from said radial; thence southeasterly along said last mentioned parallel line 3.00 feet; thence southwesterly at right angles from said last mentioned parallel line to a curve concave to the east, having a radius of 25 feet, tangent to said northwesterly boundary and tangent to said straight line; thence southerly along said last mentioned curve to a line parallel with and 7 feet northeasterly, measured at right angles, from said straight line; thence southeasterly along said last mentioned parallel line to a line parallel with and 8 feet northwesterly, measured at right angles, from a radial of said 30 foot radius curve at the southeasterly terminus thereof; thence southwesterly along said last mentioned parallel line to said 25 foot radius curve; thence southeasterly along said last mentioned curve to said southwesterly boundary of Parcel 787; thence northwesterly, northerly and northeasterly along the southwesterly, westerly and northwesterly boundaries of said last mentioned parcel to said true point of beginning.

Also excepting therefrom that portion thereof which lies easterly of a curve concave to the west, having a radius of 25 feet, reverse to that certain 8050.17 foot radius curve in the northeasterly boundary of said Parcel 805 and tangent to the straight line in the southeasterly boundary of said last mentioned parcel.

Also excepting therefrom that portion thereof which lies northerly of a curve concave to the south, having a radius of 25 feet, reverse to that certain 8050.17 foot radius curve in the northeasterly boundary of said Parcel 797 and tangent to the straight line in the northwesterly boundary of said last mentioned parcel.



EXHIBIT "A"

Initials
VPM
1/3

Also excepting therefrom that portion thereof within a strip of land 2 feet wide, the northwesterly boundary of which is described as follows:

Beginning at a point in the straight line in the northwesterly boundary of said Parcel 797 distant northeasterly thereon 4.73 feet from the southwesterly terminus thereof; thence southwesterly along said last mentioned straight line 4.73 feet to said southwesterly terminus, said southwesterly terminus being the beginning of that certain 1540 foot radius curve in said last mentioned northwesterly boundary; thence southwesterly along said last mentioned certain 1540 foot radius curve 3.27 feet.

Reserving and excepting therefrom unto the County of Los Angeles rights of way for sanitary sewer, storm drain, access and harbor utility purposes over those portions thereof designated on said map as easements to be reserved by said county for such purposes.

DESCRIPTION APPROVED
February 8, 1967
JOHN A. LAMBIE
County Engineer

By ______________ Deputy



EXHIBIT "A"

Initials


MARINA SHOPPING CENTER
Marina del Rey, California
COMMON AREA PARKING
COMMON AREA PARKING
COMMON AREA PARKING
THE PREMISES
4736-38 Admiralty Way
Marina del Rey, Ca
Initials
EXHIBIT

It is hereby mutually agreed between the parties that the following items as shown by this sketch are for purposes of identification and clarification only, as to work performed by Lessor and work performed by Lessee. Lessor reserves the right to relocate facilities as may be required.




EXHIBIT "C-2"

Initials

14. RENT RENEGOTIATION TO MEET LEGAL REQUIREMENTS.

Section 504 of the Bond Resolution described in Section 46 of this Lease requires that each Lease provide that the square foot rentals and percentage rentals be subject to increase if and when the Board of Supervisors shall find and determine that such increase is required to permit the County to meet its obligations under the terms of said Bond Resolution.

In the event that the Board of Supervisors determines that it is required to increase rentals to meet its obligations under the Bond Resolution, it may increase the square foot rentals and percentage rentals provided for in this Lease to the extent required to meet said obligations, except that the Lessee shall bear no more than his proportionate share of the total increase required to meet said obligations as reasonably determined by the Director, and in any event, the amount of any such increase shall not exceed ten per cent (10%) of the previously existing square foot rentals and percentage rentals. Rental increases under this secti shall not be made during the first five (5) years of the term here of nor more often than every ten (10) years thereafter.

15. GENERAL RENT RENEGOTIATION AND ARBITRATION.

Except as provided in Section 14, the square foot and percentage rentals hereinbefore provided for shall apply and be in effect for the first twenty-one (21) years of the term hereof. At the end of said period, and at the end of every ten (10) year peri thereafter, the said rentals shall be readjusted as provided hereinafter.

Such rentals shall be readjusted by Lessee and County, in accordance with standards of and for fair market value hereinafter set forth, at some time not more than nine (9) months and not less than six (6) months before the beginning of each such period, in the event Lessee and County cannot agree upon the readjustment of rentals, the same shall be determined by a board of three (3) real estate appraisers, one of whom shall be appointed by County, one by Lessee, and the third by the

EXHIBIT "D"

Initials

two (2) appraisers so appointed.

If the rentals have not been readjusted by mutual agreement within the three-month period above prescribed, County shall give to Lessee a written notice demanding submission to said board of real estate appraisers and nominating the person to act as real estate appraiser on behalf of County. Within fifteen (15) days from the service of such notice Lessee shall appoint its real estate appraiser and notify County of such appointment. If either party shall not have notified the other in writing of the appointment of its real estate appraiser, the Presiding Judge of the Superior Court of the State of California, in and for the County of Los Angeles, shall, upon request of either party, appoint the real estate appraiser for the party so in default. If the two (2) real estate appraisers so chosen shall be unable to agree upon the third real estate appraiser within ten (10) days after the appointment of the second real estate appraiser, the third real estate appraiser shall be appointed by the Presiding Judge of said Superior Court upon request of either party. Any vacancy in the board of real estate appraisers shall be filled by the party who or which made the original appointment to the vacant place. If not so filled within ten (10) days from commencement of said vacancy, the vacant position shall be filled by the said Presiding Judge upon request of either party.

The board of real estate appraisers shall, immediately upon the appointment of its members, enter upon the discharge of its duties and determine the amount of readjusted rentals and notify the parties thereof in writing within sixty (60) days after its appointment. A majority of the real estate appraisers who agree thereto may readjust such rentals, such readjustment to be based upon a determination of the fair market value of this lease, taking into consideration the uses permitted

EXHIBIT "D"

Initials
JPM

thereunder and all of its terms, conditions and restrictions, franchise value, earning power, and all of the factors and data relating to such value required or proper to be considered in determining the fair market value of leaseholds under the laws of eminent domain in the State of California; also provided that at all times during the term of this lease the total of such rentals shall be in such amount that the property hereby demised shall produce at least its proportionate share of the revenue required by Government Code, Section 26360 and the revenue required to meet the obligations of County under that certain Revenue Bond Resolution of the County Board of Supervisors referred to in Section 46; and, notwithstanding the renegotiation and arbitration provisions of this Section 15, the minimum rental under this lease shall never be lower than the product of ten cents ($ .10) multiplied by the square feet of the leased land and water area. In the event said real estate appraisers fail to determine and give notice of the amounts of readjusted rentals within sixty (60) days, a new board of real estate appraisers shall be appointed in the manner hereinbefore prescribed.

If for any reason said readjusted rentals shall not be finally determined until after the beginning of any period for which the same must be readjusted, Lessee shall continue to pay rentals at the former rate as a credit against the amount of the readjusted rentals when finally determined, provided, however, that the amounts fixed as the readjusted rentals shall accrue from the beginning of said period and proper adjustment shall be made for payments made by Lessee at the former rates during said interim. The costs and expenses of each of the two (2) real estate appraisers appointed by the parties shall be borne by the party so appointing. Costs and expenses of the third real estate appraiser shall be equally divided between the parties.

EXHIBIT "D"

Initials
VPM

16. CONTROLLED PRICES.

The prices charged for all goods or services or combinations thereof, supplied to the public on or from the premises hereby demised, whether the same are supplied by Lessee or by its sublessees, assignees, concessionaires, permittees or licensees shall be fair and reasonable, based upon the following two (2) considerations:

First, that the property herein demised is intended to serve a public use and to provide needed facilities to the public at fair and reasonable cost; second, that Lessee is entitled to a fair and reasonable return upon his investment pursuant to this lease.

In the event that Director notifies Lessee that any of said prices are not fair and reasonable, Lessee shall have the right to confer with Director and to justify said prices. If, after reasonable conference and consultation, Director shall determine that any of said prices are not fair and reasonable, the same shall be modified by Lessee or its sublessees, assignees, concessionaires, permittees or licensees, as directed.

The Lessee may appeal the determination of the Director to the Board of Supervisors, whose decision shall be final and conclusive. Pending such appeal, the prices fixed by the Director, shall be the maximum charged by the Lessee.

EXHIBIT "D"

Initials

JPM

UNITED STATES POSTAL SERVICE.

## Attachment One – Common Area Exclusions

Facility Name/Location
Marina del Rey Branch – 4766 (B-5) Admiralty Way, Marina del Rey, CA 90291-9998

Project: 058106-012

Common area charges will not include:

1. Leasing commissions, attorneys' fees, costs, disbursements and other expenses incurred in connection with negotiations or disputes with lessees or leasing, renovating, or improving space for lessees or occupants of the Center.
2. Costs, including permits, licenses and inspection fees incurred in renovating or otherwise improving, decorating, painting or redecorating vacant space or space for lessees or other occupants.
3. Lessor's costs of any service provided to lessees or other occupants for which Lessor is entitled to be reimbursed as an additional charge or rental over and above the Base Rent payable under the lease with such lessee or other occupant.
4. Costs incurred by Lessor for alterations or additions that are considered capital improvements and replacements under generally accepted accounting principles.
5. Any depreciation or amortization on the Center.
6. Cost of a capital nature, including, but not limited to, capital improvements, capital repairs, capital equipment and capital tools as determined in accordance with generally accepted accounting principles.
7. Cost incurred in conjunction with services or other benefits of the type that are not provided to Lessee but which are provided to other lessees or occupants.
8. Expenses in connection with services or other benefits of the type that are not provided to Lessee but which are provided to other lessees or occupants.
9. Costs incurred due to violations by Lessor of any of the terms and conditions of the Lease or any other lease relating to the Center.
10. Overhead and profit increments paid to subsidiaries or affiliates of Lessor for management or other services provided to the Center, or for supplies or other materials to the extent that the cost of such services, supplies, or materials exceed the cost that would have been paid had the services, supplies or materials been provided by unaffiliated parties on a competitive basis.
11. Interest on debt or amortization payments or increases in interest or debt of any mortgages or changes in deeds of trust or any other debt for borrowed money.
12. Rent or other payments under any ground lease or underlying lease.
13. Rentals or other related expenses incurred in leasing air conditioning systems, elevators or other equipment ordinarily considered to be a capital nature, except equipment used in providing janitorial services which is not affixed to any building in the Marketplace.
14. The cost of all items and services for which Lessee reimburses Lessor or buys from third persons or which Lessor provides selectively to one or more lessees without reimbursement.
15. Advertising or promotional expenditures.
16. The cost of repairs and other work occasioned by fire, windstorm or other casualty of an insurable nature and other work to the extent of insurance or condemnation proceeds.
17. If a charge, fee, or cost is imposed for using the parking facilities, costs incurred in operating the parking facilities of the Center.
18. Any costs, fines or penalties incurred due to violations by Lessor of any governmental rule or regulation.
19. Any costs for sculpture, paintings, or other objects of art.
20. Wages, salaries, or other compensation paid to any executive employees or building managers.
21. The cost of correcting any code violations which were violations prior to the commencement of the term of ~~this~~ the Lease.
22. Any other expense that under generally accepted accounting principles or practices would not be considered normal maintenance or operating expenses.
23. The cost of liability insurance in excess of $5 million per occurrence.
24. The cost of any earthquake and/or flood insurance.
25. Any increases in real property taxes if the Center is sold, exchanged or transferred, or if there is otherwise a change in ownership of the Center.
26. Any costs or expenses attributable to any merchants' association or other association of tenants of the Center.
27. The costs of repairing any part of the common areas that was negligently designed or defectively constructed.
28. Cost and expenses incurred by Lessor in performing Lessor's obligations to maintain and repair the Center's building.
29. Excess premiums for insurance covering the common areas and/or the Center caused by extra-hazardous or non-retail use or activity therein, except as may be caused by Lessee.
30. If Lessee is not in the enclosed mall portion of the Center, any enclosed mall costs and expenses.

UNITED STATES POSTAL SERVICE

**Lease Amendment**

| Facility Name/Location | Amendment Number |
|---|---|
| Marina del Rey Branch - 4766 (B-5) Admiralty Way, Marina del Rey, CA 90291-9998 Project: 058106-012 | 4 |

This refers to the Lease accepted by the United States Postal Service, hereinafter called the Postal Service, under date of 02/27/1981 whereby there is leased to the United States Postal Service the above-described postal facility.

WHEREAS the Postal Service desires and Landlord is willing to:
1. Add two five-year renewal options
2. Clarify USPS reimbursement of real estate taxes, CAM, insurance and ground lease to Landlord.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein set forth, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties do hereby agree to amend the Lease as follows, effective 05/20/1999
1. First renewal option beginning 10/01/2000 and ending 09/30/2005 at an annual rate of $159,696.00.
2. Second renewal option beginning 10/01/2005 and ending 09/30/2010 at an annual rate to be determined in accordance with Attachment A.
3. The USPS will be responsible for reimbursement of real estate taxes, CAM, insurance, and ground lease in Accordance with Attachment One and Addendum.
4. Attachment A
5. Attachment One
6. Addendum
7. Year 2000 Warranty

In all other respects, the Lease shall remain the same and is hereby confirmed.

Date: ____________

| | |
|---|---|
| Carlisle Realty Holdings I<br>Print Landlord's Name | Signature |
| Print Landlord's Name | Signature |
| Print Landlord's Name | Signature |
| Print Landlord's Name | Signature |
| Print Landlord's Name | Signature |
| Print Landlord's Name | Signature |

c/o Marina Waterside, 4745 Lincoln Blvd., Marina del Rey, CA 90292-6901
Number and Street Name, City, State and ZIP+4 Address of Landlord

310-823-0145
Telephone Number

**Acceptance By The Postal Service**

| Contracting Officer | Signature of Contracting Officer | Date |
|---|---|---|
| | | |

DUPLICATE

SUBLEASE AMENDMENT

This Sublease Amendment made and entered into this 16th day of May, 1988, by and between United States Postal Services ("Tenant") and Benequity Properties, a California Limited Partnership as successor in interest to Beneficial Standard Properties, Inc. ("Landlord").

Whereas, Landlord and Tenant have entered into a Sublease dated February 27, 1981 for the premises known as 4735-38 Admiralty Way, Marina del Rey, California ("Lease"); and

Whereas, Landlord and Tenant are desirous of amending certain provisions of the Lease:

NOW, THEREFORE in consideration of their mutual covenants herein set forth the parties agree as follows:

1. Article 5 is amended to extend the term of the Lease for an additional five (5) year period which shall commence on October 1, 1989 and shall terminate on September 30, 1994.

2. Article 7 is hereby amended to provide for Fixed Rent payable monthly as therein set forth of $4,500.00.

3. Article 49 is hereby deleted in its entirety.

All other provisions, terms and conditions of the Lease shall remain the same and in full force and effect.

IN TESTIMONY WHEREOF, Landlord and Tenant have caused this Lease Amendment to be signed, as of the 16th day of May, 1988.

TENANT

United States Postal Service

By: [signature]

LANDLORD

Benequity Properties, a California Limited Partnership

By: [signature]





5/16/88

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES )

PERSONALLY APPEARED before me, the undersigned authority in and for the jurisdiction aforesaid, the within named CHARLES D. LAWSHE who acknowledged that he is VICE PRESIDENT and that for and on behalf of said BENE EQUITY PROPERTIES he signed and delivered the above and foregoing instrument of writing on the day and year therein mentioned, he having been first duly authorized so to do.

GIVEN under my hand and official seal, this 11th day of MAY, 1988.

Patricia Galante
NOTARY PUBLIC

My Commission Expires:

OFFICIAL SEAL
PATRICIA GALANTE
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My comm. expires FEB 15, 1991

STATE OF California )
COUNTY OF Los Angeles )

PERSONALLY APPEARED before me, the undersigned authority in and for the jurisdiction aforesaid, the within named ______ and V.P. [illegible] ______ who severally acknowledged that they are [illegible] and ______, respectively of [illegible], a government corporation, and that for and on behalf of said corporation and as its act and deed, they signed, sealed and delivered the above and foregoing instrument of writing on the day and year therein mentioned, they having been first duly authorized so to do.

GIVEN under my hand and official seal, this the 5th day of October, 1988.

[signature]
NOTARY PUBLIC

My Commission Expires:

OFFICIAL
MONA S[illegible]
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES [illegible]
My comm. expir[illegible] 1991

OFFICIAL SEAL
MONA SAID
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My comm. expires MAY 23, 1991

2