Ernie Zachary Park, #082616
Bewley Lassleben & Miller
13215 E. Penn Street, Ste. 510
Whittier, California 90602
(562) 698-9771; (562) 696-6357 (fax)

Attorneys for Plaintiff
Marina Waterside, LLC

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARINA WATERSIDE, LLC | ) | No. 06-497C |
| | ) | (Judge Horn) |
| Plaintiff | ) | |
| | ) | PLAINTIFF'S REPLY BRIEF FILED |
| v. | ) | IN SUPPORT OF ITS MOTION FOR PARTIAL |
| | ) | SUMMARY JUDGMENT DETERMINING |
| United States, | ) | DEFENDANT'S LIABILITY UNDER THE |
| | ) | LEASE AND IN OPPOSITION TO DEFENDANT'S |
| Defendant | ) | CROSS-MOTION FOR PARTIAL SUMMARY |
| ______________________________ | ) | JUDGMENT |

TABLE OF CONTENTS

I. INTRODUCTION..........5

II. SUMMARY OF PLAINTIFF'S REPLY ARGUMENT..........5

III. THE DEFENDANT DOES NOT CONTEST PLAINTIFF'S CONSTRUCTION OF THE OPERATIVE LEASE PROVISION SUCH THAT PLAINTIFF'S INTERPRETATION THEREOF SHOULD BE ADOPTED BY THE COURT..........6

IV. EITHER THE DEFENDANT ACCEPTED THE OFFER TO ENTER INTO THE OPTION ON THE TERMS SET FORTH WITHIN THE FOURTH AMENDED SUBLEASE OR A QUESTION OF FACT EXISTS AS TO THE INTENT OF THE PARTIES AND THE TERMS OF THE CONTRACT..........6

A. AN OPTION TO EXERCISE A LEASE CREATES AN IRREVOCABLE OFFER ON THE PART OF THE LANDLORD WHICH THE TENANT ACCEPTS BY EXERCISING THE OPTION..........7

B. ALTERNATIVELY, IF THE EXERCISE BY THE DEFENDANT WAS A NEW OFFER THEN THE INTENT OF THE PARTIES AND WHETHER IT WAS ACCEPTED BECOME FACT QUESTIONS..........9

V. DEFENDANT IS BOUND BY THE ESTOPPEL CERTIFICATE..........13

VI. CONCLUSION..........15

# TABLE OF AUTHORITIES

CASES


Bourque v FDIC 42 F. 3d 704, 708 (1st Cir., 1994)....................9

California Oregon Broadcasting, Inc. v. United States 2006 WL 3333766 (Fed. Cl.) 6 (p.8) ....................9

Indianapolis Life Ins. Co. v. Lucky Stores, Inc. 1993 U.S. Dist. Lexis 10777 (N.D. Ill., 1993) ................14

Ismert & Associates, Inc. v. New England Mut. Life Ins Co., 801 F. 2d 536..........................................9

Palo Alto Town and Country Village, Inc. v. Bbtc Company (1974) 11 Cal. 3d 494, 499-500; 113 Cal. Rptr. 705....................8

Plaza Freeway Limited Partnership v. First Mountain Bank (2000) 81 Cal. App. 4th 616; 96 Cal. Rptr. 2d 865....................14

RCI Northeast Services Division v. Boston Edison Co., 822 F.2d 199, 202 (1st Cir. 1987).........................9

Resolution Trust Corporation v. District of Columbia 78 F. 3d 606 (316 U.S.D.C. 245, 1996) ................14

TREATISES AND OTHER AUTHORITIES

Black's Law Dict. (6th ed. 1990) p. 551, col. 2. (p.p. 626-627)....................15

Corbin on Contracts (1963 ed.) § 264, pp. 508-509....................8

Greenwald & Asimow, Cal. Practice Guide: Real Property Transactions (The Rutter Group 1999) p.7.292, p. 7-73 (rev. # 1 1997)....................14

Miller and Starr, California Real Estate, § 19:37, p.p. 102-103....................8

INTRODUCTION

As noted in plaintiff's opening brief, the Court first fashioned its order providing for these cross-motions when the parties mutually advised the Court that the issue of liability was purely a matter of contract interpretation. Since that time, the government's position has changed so that its position now presents a series of fact questions that cannot be resolved in the current procedural posture; in particular this is clear given that the parties proceeded by way of a set of stipulated facts rather than the ordinary process of discovery and then motion for summary judgment based on competing declarations, etc. In light of the foregoing, plaintiff respectfully submits that one of two things are the case, to wit, either the plaintiff has established the existence of the proper construction of the lease as a matter of law, such that it is entitled to partial summary, as requested in its motion, or that issues of fact exist as to the issues raised by the defendant in its cross-motion such that the case must be fully litigated. In any event, the record does not permit the granting of the defendant's alternative cross-motion.

SUMMARY OF PLAINTIFF'S
REPLY ARGUMENT

Based on the papers now before the Court, plaintiff submits the following:

1. Given that the defendant does not contest plaintiff's construction of the Fourth Amended Sublease, the Court should adopt the clear and unambiguous meaning thereof as urged in plaintiff's moving papers;

2. Either the defendant accepted the irrevocable offer represented by the option to extend the lease term or triable issues of fact exist as to the intent of the parties and whether, in fact, a contract was formed and the terms thereof; and,

3. In any event, the defendant is bound by the estoppel certificate it executed when the plaintiff acquired the subject shopping center.

/////

THE DEFENDANT DOES NOT CONTEST PLAINTIFF'S
CONSTRUCTION OF THE OPERATIVE LEASE PROVISION
SUCH THAT PLAINTIFF'S INTEPRETATION THEREOF
SHOULD BE ADOPTED BY THE COURT

The defendant's opposition to plaintiff's cross-motion does not contest the latter's interpretation of the lease provision itself. Thus, to the extent the court rejects the defendant's arguments as set forth within its cross-motion, the Court should adopt the clear and unambiguous language of the Fourth Sublease Amendment and declare that, as of October 1, 2005, rent was to be determined based upon the fair market value of the property. Such a conclusion leaves only the issues of the date of valuation[1] and the amount of rent during the option term.

EITHER THE DEFENDANT ACCEPTED THE OFFER TO
ENTER INTO THE OPTION ON THE TERMS SET FORTH
WITHIN THE FOURTH AMENDED SUBLEASE OR A
QUESTION OF FACT EXISTS AS TO THE INTENT
OF THE PARTIES AND THE TERMS OF
THE CONTRACT

The defendant poses the argument that the exercise of the option by the government created an offer which the plaintiff then accepted on the terms set forth within the exercise. For the reasons discussed herein, that argument misstates the clear law with respect to the law of contracts as pertains to options. In the alternative, the issue of the parties' intent raises a fact question which this court must try after the case is fully developed. In neither case can the government's motion be granted. Finally, the Court may well conclude that there was not an offer and acceptance in

---

[1] Plaintiff urged in its motion that the date of valuation should be the date of the effective date of the option term, i.e., October 1, 2005. Defendant does not address this issue in its moving papers.

which case the defendant should be held to pay rent based on a reasonable rental value for the premises. Each of these issues is more fully discussed herein.

A. An Option to Exercise a Lease Creates an Irrevocable Offer on the Part of the Landlord which the Tenant Accepts by Exercising the Option.

The government's characterization of the exercise of the option as having made an offer that the plaintiff then accepted mischaracterizes the law of contracts with respect to an option to extend the term of a lease. While the defendant poses the issue as one of it having made an offer which the plaintiff accepted, the principles of law are to the contrary. In adopting Professor Corbin's analysis of the issue, the California Supreme Court extensively commented on the underlying contract principles as follows:

> "An option, as a matter of legal theory, is considered to have a dual nature: on the one hand it is an irrevocable offer, which upon acceptance ripens into a bilateral contract, and on the other hand, it is a unilateral contract which binds the optionor to perform an underlying agreement upon the optionee's performance of a condition precedent. Professor Corbin explains the option as follows: '[The option] is a binding unilateral contract, since it is a promise exchanged for a sufficient cash consideration. It is also commonly called an offer . . . . This usage is not at all objectionable, if we realize that an offered promise may also be a binding promise. It certainly creates a power in B to be exercised . . . by giving notice of consent . . . . And on the giving of such notice within the time limit, the legal result is almost identical with that of the acceptance of an ordinary revocable offer . . . . It is a 'binding' promise, because a consideration was paid for it; it is an 'offer', because it invites a second and different exchange of equivalents. [para. ] . . . O's [optionor's] promise is from the very beginning a

binding contract, his duty to convey being conditional on notice by B within the stated time. The sending of such a notice by B is not merely the acceptance of an offer; it is also the performance of a condition precedent to O's duty of immediate performance.' Corbin on Contracts (1963 ed.) § 264, pp. 508-509, fn. omitted.)" Palo Alto Town and Country Village, Inc. v. Bbtc Company (1974) 11 Cal. 3d 494, 499-500; 113 Cal. Rptr. 705; See also Miller and Starr, California Real Estate, § 19:37, p.p. 102-103: "The renewal option in a lease is an irrevocable offer by the landlord that binds the landlord in advance to make a contract if the tenant exercises its option and accepts the offer."

The facts before the Court clearly establish that the parties agreed to an option to extend the lease term with rent during that period to be established based on the fair market value of the premises. Thus, under the Fourth Sublease Amendment, the parties agreed to extend the lease term from October 1, 2000 through September 30, 2005. See App. 64, para. 1. Under the same paragraph, they agreed to the defendant having an option to extend the term of the lease for the five year period of October 1, 2005 through September 30, 2010.

The amendment went on to establish the rent obligation of the defendant. Thus, for the term ending September 30, 2005, rent was to be $166,380.00. For the subsequent option period, if the latter was exercised by the defendant, rent was to be fixed based upon the fair market value of the property. See App. 64, para. 2.

Applying the foregoing law to these facts, when the parties entered into the Fourth Sublease Amendment, the landlord is deemed to have made an irrevocable offer that the tenant could accept or not accept. When the defendant exercised the option, it was accepting that offer.

B. Alternatively, if the Exercise by the Defendant was a New Offer then the Intent of the Parties and Whether It was Accepted Become Fact Questions.

As the defendant properly points out, the issue of contract formation is ultimately a question of intent. California Oregon Broadcasting, Inc. v. United States 2006 WL 3333766 (Fed. Cl.) 6 (p. 8). Determining that intent is a question of fact, i.e., it is "…a mere matter of interpretation of their expressions to one another, a question of fact." See 1 Corbin, § 29, p.p. 87-88. "It is the fact finder 'who must ferret out the intent of the parties.'" RCI Northeast Services Division v. Boston Edison Co., 822 F.2d 199, 202 (1st Cir. 1987); Bourque v FDIC 42 F. 3d 704, 708 (1st Cir., 1994).

In reviewing the instant record, one must begin with the procedural context of this motion, i.e., a motion for summary judgment. In that regard, defendant's citation to authority is instructive. See Ismert & Associates, Inc. v. New England Mut. Life Ins Co., 801 F. 2d 536, to the effect that to successfully oppose a motion for summary judgment, the opposing party must establish the "…a genuine issue of material fact requiring a trial." Thus, summary judgment is proper only if "…there is but one reasonable conclusion." Finally, the facts must be construed most favorably to the party opposing the motion. Ismert, supra, p. 537. As discussed herein, given the facts that are before the court, it is clear that the defendant's motion cannot be granted.

Before addressing those facts, however, it is important to restate the procedural posture by which the matter is before the Court. The parties have not conducted discovery and the parties have not filed declarations as to the underlying facts. To the contrary, the Court entered its order that the parties proceed by way of these cross-motions when the parties represented to the Court that the issue of contract liability

was a question of interpretation of the lease language and that there were no factual disputes. As counsel for the government candidly pointed out during the status conference of November 28, 2006, the defendant's position has changed such that this has become far more of a factual dispute that cannot be decided within the confines of the current motion. This point is highlighted because a number of the "facts" now relied upon by the defendant clearly require examination by way of discovery, e.g., when the government included the annual amount of "$166,380.00" in the option exercise, was it intending to create a new offer or was this merely an error? Since the exercise of the option took place at virtually the same time as the plaintiff's acquisition of the property, was the inclusion of the "$166,380.00" just missed as opposed to intending to accept the alleged counter-offer? Similarly, in that the government now argues "detrimental reliance,"[2]the plaintiff is clearly entitled to examine what the government intended when it exercised the option and whether, in fact, it would have adopted a different course if the contract is as plaintiff contends.[3] Furthermore, a number of "facts" now asserted by the defendant would be adequately addressed by the plaintiff during a full trial.[4] Again, these are all fact questions that cannot be

---

[2] Defendant's Opening Brief, p. 13.

[3] The government's position of detrimental reliance is dubious at best when one considers that the rent for the property was adjusted upward for each of the prior rent extensions. Did the government truly expect that rent would not be increased for the subject option term? When it had always agreed to rent increases in the past, would it really not have renewed the contract? These are clearly fact questions that only can be determined after discovery and a full hearing on the merits.

[4] Merely by way of example, the government points out that the plaintiff's letter of February 1, 2006, affirmed rent based on the prior rental amount. App. 84. A trial on the merits would make clear that this was a form letter sent out to tenants at the center on an annual basis and this was merely an error. Moreover, in that the government had already been apprized of plaintiff's position on the amount of rent due in correspondence from plaintiff's counsel, dated November 3, 2005 (App. 68-70), this letter is of little or no consequence to the outcome of this case

resolved without discovery and a full trial before the court. Thus, at a minimum, the motion must be denied so these factual issues can be resolved.

Notwithstanding the foregoing procedural problems with the motion, an analysis of the facts now before the Court dooms the defendant's position. Any such survey of the facts must start with the agreement itself. As discussed above, the language of the agreement unquestionably afforded the defendant an option for the five-year option term; with rent during that term to be predicated upon the property's fair market value. Secondly, the parties have stipulated to the fact that, on January 6, 2004, the defendant executed and delivered an estoppel certificate when the center was acquired by plaintiff. See Stip. Fact 24. Under the terms thereof, the government expressly affirmed that the lease and the amendments, including the operative Fourth Sublease Amendment, were in full force and effect. See App. 86. Significantly, at no place in the estoppel did the government assert that there was any other agreement in place or that the lease (particularly the Fourth Sublease Amendment) had been altered. Indeed, as noted, paragraph 1 of the certificate affirms that "...the Lease...is in full force and effect."[5]

Furthermore, plaintiff has asserted as "controverted" facts that the intent of the parties in entering into the Fourth Sublease Amendment was to have rent determined based on its then fair market value and that said amendment was not modified or altered (clearly transforming the acceptance of an irrevocable offer into a new offer would constitute a modification or alteration of that amendment) PSCFs 26, 27.

---

[5] As discussed below, the defendant is bound by that estoppel certificate.

The remaining "facts" that the government points to are of little or no consequence to the issue at hand. Thus, by way of example, the defendant points to the fact that, upon the plaintiff acquiring the center, on about January 20, 2004, it conducted a "careful audit" of the tenant's obligations. See App. DSCI 30. The obvious point of the defendant's position is that the plaintiff did not object to the rent being paid by the defendant. However, there is nothing to this argument in that, at the time of the letter, the option was not yet in effect so that there was no default or any reason for the plaintiff to say or do anything about the rent being paid as, **at that time**, the defendant was paying the correct rent as the option was not to commence until October 2005.

Similarly, the defendant points to correspondence from the plaintiff dated January 20, 2005. DSCI 32. A review of that letter, however, makes clear that it is simply a letter to the tenant wherein the plaintiff was affirming the charges for the upcoming year. See App. 73. Again, at the time of the letter, the statements contained therein were correct.

Defendant legitimately points out that a similar standard annual letter was sent out at the outset of 2006 purporting to confirm rent at $166,380.00. App. 84. Nevertheless, by that date, the government had already received correspondence from plaintiff's counsel asserting the amount due under the exercised option. App. 68-70. That letter, sent thirty-four days after the option term had commenced, reflects that the plaintiff was diligently safeguarding its rights and had not relinquished the same or agreed to some modification of the Fourth Sublease Amendment. Clearly, in light of that position by the plaintiff, the 2006 rent statement letter was merely an error on the

part of an employee of plaintiff.

The foregoing record dooms the defendant's cross-motion. That record raises a number of fact questions that go to the core issue of the parties' intent and whether a contract was formed and on what terms.

Three final comments are in order. First, defendant cites various authorities for proposition that acceptance can be found in either acquiescence or silence. While not disputed as a legal proposition, this determination is clearly fact-specific to the case at bar. Under the procedural posture of this case, plus the record as it currently exists, the Court simply cannot make such a finding in this case.

Secondly, plaintiff notes the defendant's argument as to detrimental reliance. A number of comments are in order as to this assertion. First, of course, whether the defendant, in fact, detrimentally relied on the exercise of the option (on the terms now being claimed by it) is a fact question and the plaintiff is entitled to cross-examine the defendant's representatives as to this issue. Secondly, the various "facts" cited by defendant all occurred after January 6, 2004, the date on which the government exercised the option (See Stip. Fact 22); hence, the defendant cannot claim reliance.

Finally, the facts may well give rise to the possibility that the Court could determine that a contract was not formed at all. In that case, the defendant may well be a tenant at sufferance bound to pay the reasonable rental value of the property and without any right to long-term possession of the premises. Of course, the point is that there are a host of fact questions that must be discovered and fully litigated before the Court can make the appropriate determinations.

DEFENDANT IS BOUND BY THE ESTOPPEL CERTIFICATE

Plaintiff acquired the center where the premises is located on or about January 20,

2004. Stip. Fact 23. As a part of that transaction, the defendant executed and provided an estoppel certificate. Stip. Fact. 24. App. 86. That document affirmed the status of the agreement between the parties. In particular, it provided that the lease, including the Fourth Sublease Amendment were "...in full force and effect..." (para. 1,2).

The position now taken by the government is in direct opposition to its own estoppel certificate, i.e., under the lease, rent during the option period is to be fixed by ascertaining the fair market value of the property. Contrary to that position, the government now claims that there was a separate contract fixing the rent at the amount now contended by the defendant; a separate contract that the defendant did not assert in executing the estoppel certificate. As discussed herein, the government is estopped from asserting any position contrary to the contents of the estoppel certificate.

The effect of an estoppel certificate was before the court in Resolution Trust Corporation v. District of Columbia 78 F. 3d 606 (316 U.S.D.C. 245, 1996). Based on the estoppel certificate, the party who had executed the same was foreclosed from taking a position contrary thereto. (p.p. 608-609). See also Indianapolis Life Ins. Co. v. Lucky Stores, Inc. 1993 U.S. Dist. Lexis 10777 (N.D. Ill., 1993).

The effect of an estoppel certificate under California law was discussed by the court in Plaza Freeway Limited Partnership v. First Mountain Bank (2000) 81 Cal. App. 4th 616; 96 Cal. Rptr. 2d 865, as follows:

> “An 'estoppel certificate' (or 'offset statement') is a signed certification of various matters with respect to a lease [citation]. An estoppel certificate binds the signatory to the statements made and estops that party from claiming to the contrary at a later time." (Greenwald & Asimow, Cal.

Practice Guide: Real Property Transactions (The Rutter Group 1999) p. 7.292, p. 7-73 (rev. # 1 1997).) Black's Law Dictionary defines "estoppel certificate" as "[a] signed statement by a party, such as a tenant or a mortgagee, certifying for the benefit of another party that a certain statement of facts is correct as of the date of the statement, such as that a lease exists, that there are no defaults and that rent is paid to a certain date. Delivery of the statement by the tenant prevents (estops) the tenant from later claiming a different state of facts." (Black's Law Dict. (6th ed. 1990) p. 551, col. 2.)" (p.p. 626-627).

In light of the estoppel certificate executed by the defendant, the latter is estopped from asserting any claim contrary to the provisions of that certificate. Since the defendant unequivocally confirmed that the lease, including the Fourth Sublease Amendment, and made no reference to the counter-offer and alleged acceptance by the plaintiff which the government now alleges, the defendant is precluded from asserting any position contrary to the estoppel certificate.

CONCLUSION

This proceeding came about when the parties represented to the Court that the issue of liability could be determined based upon the construction of the lease documents. The government has now elected to assert various factual issues not contemplated when the Court entered its order as to these cross-motions.

Given the record at hand, plaintiff respectfully submits that the lease language is clear and should be interpreted as urged by plaintiff. It further contends that the various fact issues raised by the defendant are precluded by the estoppel certificate executed by the latter.

As to the various issues raised by the defendant, those issues cannot be resolved absent discovery and, based on the outcome thereof, a trial on the merits. Thus, either plaintiff's motions should be granted or both motions should be denied.

Respectfully submitted,

BEWLEY, LASSLEBEN AND MILLER

By *s/*Ernie Zachary Park_
Ernie Zachary Park,
Attorney for Plaintiff