**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| MARINA WATERSIDE, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 06-497C |
| v. | ) | (Judge Horn) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S AMENDED REPLY BRIEF**

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MARK A. MELNICK
Assistant Director

JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 616-0341

Attorneys for Defendant

OF COUNSEL:

Michael Kiely
OGC
U.S. Postal Service

Dated: January 26, 2007

# TABLE OF CONTENTS

ARGUMENT

A. Marina's Interpretation of the Fourth Sublease Amendment Is Unreasonable . . . . . 2

B. The Parties Intended To Negotiate The Rental Amount For the The Final Option Period . . . . . 3

C. Marina's Interpretation of the Fourth Sublease Amendment Is Contrary To The Prior Conduct Of The Parties . . . . . 5

D Marina Is Bound By Its Acceptance Of The Amount Of Rent Offered When The Government Exercised The Final Option Period . . . . . 6

CONCLUSION . . . . . 7

## TABLE OF AUTHORITIES

### CASES

California Oregon Broadcasting, Inc. v. United States, 2006 WL 333376 (Fed. Cl.) . . . . . . . . . . 5

Con't Collection & Disposal, Inc. v. United States, 29 Fed. Cl. 644 (1993) . . . . . . . . . . . . . . . . 5

David Nassif Associates v. United States, 214 Ct. Cl. 407; 557 F.2d 249 (1977) . . . . . . . . . . . . 4

General Electric v. United States, 60 Fed. Cl. 782 t Cir. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

### COURT RULES

Rule of Court of Federal Claims 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **MARINA WATERSIDE, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 06-497C** |
| | ) | **(Judge Horn)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S AMENDED REPLY BRIEF**

Pursuant to Rule 56(c) of the Rules of the United States Court of Federal Claims ("RCFC") and the Court's scheduling order, dated November 28, 2006, defendant, United States, respectfully submits this opposition and reply to plaintiff's motion for partial summary judgment. In support of our opposition, we rely upon our previously-filed cross motion for summary judgment, the following brief, the parties' joint stipulation of facts ("Stip"), and the appendix supporting the joint stipulation of facts.

In its motion, plaintiff Marina Waterside, LLC ("Marina"), argues that Section 2 of the Fourth Sublease Amendment provided that the rental rate for the final option period was to be based upon the fair market value of the property, which, the parties contemplated, according to Marina, would be established by "some mechanism," that it now asks the Court to provide. P. Mot. at 4-6. Marina next contends that, for the purposes of determining the fair market value for the property, the valuation date of the property should be October 1, 2005, the onset of the final option period, rather than the time at which the Postal Service exercised the option. Id. at 5-6.

Marina's position as to the meaning of the Fourth Sublease Amendment is unreasonable. Moreover, it is contradicted by the actions of the parties and provides no basis for any recovery by plaintiff. Furthermore, it runs afoul of the Anti-Deficiency Act, 31 U.S.C. § 1341(a)(1), and is therefore contrary to law, because it would obligate the Government to an open-ended rental

amount. The undisputed facts in this case support the position of the United States, and the Court should enter judgment in favor of the Government.

A. Marina's Interpretation Of The Fourth Sublease Amendment Is Unreasonable

Marina's interpretation of Fourth Sublease Agreement is unreasonable, and is not supported either by the language of the Fourth Sublease Agreement, the Exercise of Renewal Option executed by the Postal Service, or the prior relationship of the parties. Marina argues, incorrectly, that the language of the Fourth Sublease Agreement is clear as to how the parties intended to establish the rental amount for the final option period. In fact, however, all the Fourth Sublease Agreement says is that the rental amount for the final option period would be based on fair market value. It says nothing about how that amount will be arrived at, or at what point it would be established. Marina interprets it to mean that the Fourth Sublease Amendment gave it the ability to set the rental amount, unilaterally, after the beginning of the option period. In other words, Marina asks this Court to find that the Postal Service agreed to obligate itself to five years on the final option period without knowing how much money it was obligating itself to pay. As explained more fully below, this interpretation is precluded by the Anti-Deficiency Act. Additionally, it is patently unreasonable, and the Court should reject Marina's argument.

The Government, on the other hand, has established that the Fourth Sublease Amendment to mean that the parties would negotiate a rental amount that constituted fair market value at the time it exercised the option agreement. Thus, when the Government exercised the option and specified the rental amount of $166,034.00 it was opening the negotiations to establish the rental amount. This interpretation of the contract is reasonable, is supported by the language of the Fourth Sublease Agreement, the prior dealings of the parties, and principles of

fair dealing. Moreover, unlike Marina's interpretation, the Government's interpretation does not require the Court to ignore the conduct of the parties, including the actions of Marina's agent, in the 19 months following the time the Government exercised the option period.

B. The Parties Intended To Negotiate The Rental Amount For The Final Option Period

Marina argues that the Fourth Sublease Amendment clearly and unambiguously provides that the rent during the option period would be adjusted based on the fair market value of the premises. It is not clear or unambiguous, however, as to the method by which the parties intended to establish the fair market value of the premises, nor as of what date fair market value would be considered. Thus, Marina's argument misses the issue here, which is not whether the parties agreed that the rental amount in the final option period would be based on fair market value, but rather how the parties intended to reach an agreement as to what constituted fair market value for the premises.

Marina's interpretation of the contract is that the parties "clearly" intended some kind of "mechanism" by which to fix the rent, but Marina does not state what it believes that mechanism was, nor do its actions demonstrate the pursuit of any mechanism. Pl. Mot. at 6. Marina offers no evidence whatsoever to support its position that the parties intended some unspoken method to determine fair market value and establish the rental amount for the final option period. It is difficult to say what the basis for Marina's position is; nevertheless, it asks the Court to provide the mechanism it claims the parties intended. While the Court has the authority to supply "a missing, but essential, term" of an otherwise enforceable contract, this authority does not allow the Court to read into a contract new obligations that are totally unsupported by any document or conduct indicating the intent of the parties. David Nassif Associates v. United States, 557 F.2d

249, 258 (1977). Here, Marina can hardly argue that litigation was the mechanism contemplated by the parties when they signed the Fourth Sublease Amendment, and Marina has identified no other mechanism to which the Government supposedly agreed.

Far more reasonable is the Government's demonstration that the parties intended simply to negotiate the rental amount for the final option period based on the parties' respective views of what constituted fair market value of the property. This is supported by the past conduct of the parties. For example, in the Third Sublease Amendment, the parties specifically provided for future rent to be computed on a per-foot basis pursuant to a binding agreement for an MAI (Member Appraisal Institute) Appraisal. Stip. ¶ 16. Thus, the parties knew how to prescribe a specific mechanism for determining future rent when they were negotiating a lease extension but could not agree upon a figure at the time of executing an agreement. With the Fourth Sublease Amendment, the parties were clearly able to negotiate one final five-year option period, but left the negotiation of the actual rent term for another time. Negotiation being the usual method by which contracting parties reach agreement, it is not surprising that the parties did not consider it necessary to explicitly provide that as the method for establishing the new rental amount. This is the process initiated by the Postal Service's contracting officer when he exercised the renewal option on January 6, 2004, and offered an annual rent of $166,380.00, and completed when Marina's agent, Caruso Affiliated Holdings, accepted that amount in writing by letter dated January 20, 2005. Stip. ¶¶ 22, 32.

This interpretation is consistent with both the Postal Service's and Marina's actions with respect to the Fourth Sublease Amendment, as well as with the past dealings between the parties in earlier lease periods, and it does not require the Court to discern any undefined, unstated

mechanism purportedly intended by the parties. Moreover, this interpretation of the lease, unlike Marina's interpretation, affords all terms a reasonable meaning, and requires the Court, at most, to draw the inference that the parties intended to negotiate the rental amount for the final option period. General Electric v. United States, 60 Fed. Cl. 782, 791 (2004).

C. Marina's Interpretation of the Fourth Sublease Amendment Is Contrary To The Prior Conduct Of The Parties

The Fourth Sublease Amendment must be interpreted to mean that fair market value would be determined as of the time the Postal Service executed the exercise of the option document. This interpretation would have afforded the parties time to come to an agreement as to the rental amount and allow the Postal Service the chance to reject the option if no agreement on fair market value could be reached.

Moreover, it is the only interpretation that is consistent with the prior dealings of the parties. In previous lease extensions, the rental amount was specified in the lease or the document providing the option period. Stipulation ¶ 21. "A contract should be viewed in its entirety and given the plain meaning which would be derived by a reasonably intelligent person acquainted with the contemporaneous circumstances." California Oregon Broadcasting, Inc. v. United States, 2006 WL 3333766 (Fed. Cl.) citing Con't Collection & Disposal, Inc. v. United States, 29 Fed. Cl. 644, 649 (1993). Thus, at all times in the past, the Postal Service knew at the time it exercised the lease option, as it would have to under the Anti-Deficiency Act, how much rent it would be agreeing to pay if it exercised the lease option.

D. <u>Marina Is Bound By Its Acceptance of The Amount Of Rent Offered When The Government Exercised the Final Option Period</u>

As the Government demonstrated in its opening brief, Marina has already accepted the rental amount offered by the Postal Service at the time it exercised the final option period. Thus, not only does the Anti-Deficiency Act prevent the Court from adopting Marina's interpretation of the lease documents, Marina's own conduct precludes its theory.

When the Postal Service executed the Exercise of Lease Option, therefore, and specified the amount of rent it would pay, it had every reason to believe that Marina would also expect the rental amount to be established at the time of executing the option, as it had always had been in the past. The conduct of Marina's agent, Caruso Affiliated Holdings, confirmed the Postal Service's expectations, when it sent the two letters, one on January 20, 2004, and one on January 20, 2005, both agreeing that the rental amount was $166,380.00 per year, the same amount offered by the Postal Service in the Exercise of Renewal Option. As set out in the Government's opening brief, this constituted an acceptance of the rental amount offered by the Government, and established the amount of rent for the final option period as a matter of law. Marina has cited no authority to allow it to retract its agent's earlier acceptance of the Government's offer, and its attempt now to achieve a higher rental amount should be denied.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court grant judgment in favor of defendant upon plaintiff's claim for increased rental payments.

Respectfully submitted,
PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MARK A. MELNICK
Assistant Director

/s/ Joan M. Stentiford
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street
Washington, D.C. 20530
Tele: (202) 616-0341
Fax: (202) 514-8624

January 26, 2007

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this _26th_ day of January, 2007, the foregoing "DEFENDANT'S REPLY BRIEF" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

__/s/ Joan M. Stentiford___

JOAN M. STENTIFORD